UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARC WOLSTENHOLME,<br>PLAINTIFF-APPELLANT,<br> vs. <br>RIOT GAMES, INC., ET AL.,<br>DEFENDANTS-APPELLEES. | *Case No. 25-3163*<br><br>DECLARATION OF MARC<br>WOLSTENHOLME<br><br>APPELLANT'S OPENING BRIEF |

Dated this: June 11th, 2025

*M.WOLSTENHOLME.*

[MARC WOLSTENHOLME]

DECLARATION OF MARC WOLSTENHOLME (28 U.S.C. § 1746)

I, Marc Wolstenholme, declare under penalty of perjury that the facts set out in this brief and supporting excerpts of record are true and correct to the best of my knowledge and belief. Executed 10 June 2025, Coventry, England.

Marc Wolstenholme

5 Shetland Close

Coventry, England CV5 7LS

Telephone: 044 7827964404

Email: marc@mwwolf-fiction.co.uk

Plaintiff in Pro Per

TABLE OF CONTENTS

Introduction............................................................ 1-2

Jurisdictional Statement......................................... 3

Statement of the Issues........................................... 4-6

Table of Authorities............................................... 7

Statement of the Case............................................. 8-9

   A. Factual Background........................................... 10

   B. Procedural History........................................... 11

Standard of Review................................................. 12-13

Summary of Argument............................................ 14-15

Argument............................................................... 16

I. Premature Rule 12(b)(6) Dismissal Violated Liberal Pleading Standards and Precluded Necessary Discovery 16

II. Spoliation, Ambush Evidence, and Fraud on the Court Require Reversal or, at Minimum, an Evidentiary Hearing 16

III. Denial of Reasonable Accommodations to a Disabled Pro Se Litigant Was an Abuse of Discretion and a Due-Process Error 17

IV. Substantial Similarity and Access Are Fact Questions the District Court Could Not Resolve on the Pleadings 17

V. The Public-Interest Implications of the Decision Below 17

VI. Thematic and Structural Copying Demonstrates Substantial Similarity 18

Other Developments and Investigations……………………… 19-20

Conclusion............................................................ 21

Form 8 Certificate of Compliance..................................... 22

Certificate of Service................................................ 23

Declaration (28 U.S.C. § 1746)…………… 24

**INTRODUCTION**

This appeal arises from the allegedly premature dismissal of Appellant Marc Wolstenholme's Second Amended Complaint (SAC), which alleged substantial and supported claims of copyright infringement, access, spoliation, fraud on the court, and misuse of trauma-related content by Riot Games, Inc.

These cases, including the main access route of Jonny Geller and Felicity Blunt of Curtis Brown Group and UTA, are linked to a much deeper patten of anti-competitive practices, fraudulent misuse, business fraud and IP infringements of the M.W. Wolf Catalogue of Fiction which has crippled the Plaintiff's brand and life. The Plaintiff has raised serious concerns and complaints with many authorities in both the US and UK. The Police Intellectual Property Crime Unit (PIPCU) and The UK Intellectual Property Office have long been notified and informed of the wider infringements and of these proceedings. I am in contact with their Enforcement Team and I hope to soon have others backing me in this fight for justice, for myself and others they have harmed and for the safety of the public.

The DA's office cannot intervene until the LAPD has investigated. The LAPD is obviously very busy right now dealing with protests. I will be pressing under this channel and many more in the coming months. I have widely documented concerns about Riot Games and the threats they present to US and UK creative industries, cultures and public.

As a pro se litigant with Complex PTSD, a brain injury, comorbid conditions, dyslexia, and no formal legal training, the dismissal without discovery or substantive review of sealed evidence has caused significant procedural harm and the appearance of bias. Moreover,

1

given the conditions of these cases, and the wider concerns raised and under investigation, there is a real chance of the court undermining the perception of fairness and may cause members of the public to become disaffected with the US justice system, given that it is clear that Arcane used Bloodborg, but a rich and powerful company are playing the justice system to gain results over a disabled and disadvantaged litigant in person. This Court must reverse the dismissal and remand for discovery and factual development.

Moreover, the Plaintiff has raised wider concerns of harm to the US and UK economics and public, which have also not been addressed and could cause unspeakable loss and damage to whole industries and whole generations of gamers.

**JURISDICTIONAL STATEMENT**

Jurisdiction in the district court was based on 28 U.S.C. §1331. Final judgment was entered on May 12, 2025. The notice of appeal was filed on May 15, 2025. This Court has jurisdiction under 28 U.S.C. §1291.

**STATEMENT OF RELATED CASES**

Under Ninth Circuit Rule 28-2.6, Appellant is aware of no related cases currently pending in this Court.

**STATEMENT OF ISSUES ON APPEAL**

Whether the district court erred in dismissing the SAC without granting any discovery, despite unresolved questions of fact and credible access allegations.

Whether access was proved, and whether the dismissal of such on these grounds would, and has, caused a demonstrable appearance of bias in the law towards originations against disadvantaged Plaintiffs.

Whether ruling on Access before any discovery is in itself anti-competitive, as this would mean every unsolicited creative is vulnerable to the abuse, misuse and theft of their work submitted to any talent and literary agency in the whole world. This is common practice, it's how people get agents and it's being abused. This ruling would mean that all agencies are free to abuse work with impunity so long as they don't tell anyone.

Whether the district court failed to apply liberal pleading standards and procedural protections afforded to pro se and disabled litigants.

Whether Riot Games' submission of allegedly falsified evidence, including manipulated Wayback Machine entries (illegally presented on ambush during a settlement concealed conference) and hiding of evidence and stonewalling vital discovery disclosures surrounding access, constituted fraud on the court.

4

Whether allegations of spoliation and whistleblower-reported evidence destruction through Chronodisk warranted factual development and evidentiary review.

Whether whistleblower tips and evidence should have been investigated, including tips that in the first trimester of 2020, at the time of receiving my manuscript of Bloodborg, Riot Games's development of Arcane, which had failed to get off the ground, did a "180 degrees turn in direction and development, scrapping the project's course to align with my work. Two of the unused "3d modèles" are from Twisted Fate and Graves (LOL Characters). And then they aligned the project with new material with "Extracts" which had never been a practice method until they had my manuscript to extract from.

Whether the district court's dismissal perpetuates a system of anti-competitive protectionism that structurally excludes unrepresented creators from justice.

Whether the dismissal was based on political or protective grounds, or grounds of other outside influence.

Whether the whistle-blowers evidence needs to be heard.

Whether the Plaintiff had fair, or any, opportunity to state his position.

5

Whether Riot Games and their Cult like following, who targeted the Plaintiff with daily and relentless hate mail including threats telling him to kill himself, mocking his disabilities, threats to make AI porn of his 5 year old daughter, calling him a Cop Pig, antisemitic, and so much more, was a systemic and planned campaign by Riot Games, who have used these abuse, retaliation and pressure tactics before. The latest states that, "you are disgusting, racist, antisemitic zionist.... but what can you expect a uk soldier pig, whose hands are already drenched in the blood of innocents by association alone."

**TABLE OF AUTHORITIES**

**CASES**

Brown v. Board of Education, 347 U.S. 483 (1954)...................... 25

Erickson v. Pardus, 551 U.S. 89 (2007)................................ 17

Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010)......................... 18

Leon v. IDX Systems Corp., 464 F.3d 951 (9th Cir. 2006)............... 23

Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003) (en banc)............. 12

Skidmore v. Led Zeppelin, 952 F.3d 1051 (9th Cir. 2020) (en banc)..... 19

**STATUTES**

28 U.S.C. § 1291 ................................................. 2

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................... 16

**STATEMENT OF THE CASE**

Appellant filed a short narrative form complaint. Riot's legal team complained that it was too short. Appellant filed a 1,218-page SAC alleging Riot Games accessed and plagiarized his copyrighted manuscript, "Bloodborg," in their development of the Netflix series "Arcane." The complaint included extensive evidence of access pathways, stylistic and thematic overlap, and trauma-specific narrative replication. Riot Games complained that it was too long and asked the court for a 30-day extension. The Plaintiff showed that this is deliberate procedural manipulation and flip-flopping which continued to misshape the case from the very beginning and was not addressed despite the endless reporting of their unethical tactics. The court agreed to the 30-day extension. Riot responded with stonewalling, legalities and excuses and didn't effectively address any of the evidence or SAC on its merits.

Riot Games responded with procedural defences and unexamined claims, including assertions about Riot Forge's operations contradicted by public records, which if found to be lies, is fraud on the court.

Despite whistleblower evidence of evidence destruction via Chronodisk, including the shipment of overclocked computers to Fortiche in Spain, and sealed filings detailing misconduct, the district court dismissed the SAC without discovery, evidentiary hearing, or acknowledgment of newly filed and sealed exhibits.

During the Settlement Conference, no settlement was even attempted. The Magistrate Judge had already been informed of my concerns about a closed and confidential hearing which could be manipulated. During the hearing she allowed Riot Games to present, in ambush, falsified evidence, and she took their word for their explanation of what the wayback

8

evidence showed and then refused the Plaintiff's clear argument that this wasn't true. The Plaintiff was made to litigate on the spot for 2.5 hours against the Judge, despite him stating at least 10 times that this is a settlement Conference, he didn't come prepared to litigate against a judge.

The Magistrate Judge told the Plaintiff that Riot will win, they will eventually bully me out of the case with legalities, then chase me down and destroy me with retaliations and legal fees. This is not proper impartial conduct. It constitutes procedural intimidation and manipulation. There was a motion for this Judge to recuse herself, then the case was dismissed prematurely without any investigation into any of the concerns raised.  This raise concerning questions of fair access to Justice. The Plaintiff left the settlement hearing feeling maimed by the vicious, seemingly planned attack.

The Plaintiff has produced extensive evidence that every single event and plot beat of Arcane, is either partly or wholly taken from Bloodborg, less for the final rocket scene. This includes whole sections with only minor changes and even the most infamous of the dialogue, which is Silco's monologue, being directly copied with a few synonyms and structural changes. This is shocking. It cannot be Justice, no one person has even addressed any of the evidence. Moreover, even playable characters made in Arcane, now in all of Riot's products, are from Bloodborg, but they have name changes.

9

**A. Factual Background**

In April 2020 Mr. Wolstenholme submitted the whole manuscript of Bloodborg to Curtis Brown Group/United Talent Agency (CBG/UTA) as well as Riot Forges own narrative publishing arm which was soliciting manuscripts. CBG/UTA simultaneously represented extensive creative personnel on Riot Games in development series Arcane. Three access pathways were evidenced in the SAC and Subsequent filings (Riot Forge, CBG and wide dissemination).

Endless falsified timeline evidence, and public statements were presented to show that Riot Games had engaged in a campaign of building false timelines and lies of development to mislead the court, public and investors about the ownership and origins of the source material used to make Arcane.

Whistle blowers report that within weeks of receiving the Bloodborg manuscript, Arcane underwent a "180 degree" pivot to themes, characters, and dialogue matching Bloodborg. Two unused 3 D models, Twisted Fate and Graves, were scrapped and Bloodborg storylines and arcs and characters were repurposed for Arcane protagonists and storylines.

Since 2020 Appellant has received hundreds of harassing messages from self identified Riot community members, underscoring the public interest stakes.

10

**B. Procedural History**

1. Appellant's initial short complaint was challenged as "too brief." The court permitted amendment; Appellant filed a 1,218 page SAC with comparison charts, sworn declarations, and thousands of pieces of evidence.

2. Riot Games labelled the SAC "too long," obtained a 30-day extension, and produced zero discovery and zero challenge of the SAC on its merits.

3. At a settlement conference the magistrate judge allowed Riot to spring unverified Wayback Machine screenshots. When Appellant questioned authenticity and showed that what they presented was not evidence, the magistrate predicted Riot would "bully [him] out" with fee motions, then destroy him with retaliation, chasing him back to England.

4. Appellant moved for recusal; before resolution, the district judge dismissed the SAC with prejudice and entered judgment, without any discovery, without any challenge to the Access routes, Without any oral hearing outside of the ambushed concealed "Settlement Conference," without addressing the Plaintiff's pending motions, without addressing the Sealed Whistleblowers evidence already filed with the court and without any evidence being tested on it's merits.

5. This dismissal has not solved any of the many outstanding issues, complaints nor concerns. Indeed, it has amplified damage, costs, concerns and need for transparency and accountability. Indeed, it has resulted in outside agencies being informed and being involved. Indeed, it has resulted in increased risk to the Public and unsolicited creatives across the globe. No wonder there is so much public unrest and concerns.

**STANDARD OF REVIEW**

Rule 12(b)(6) dismissal — The Court reviews de novo whether the SAC states a plausible claim. Hebbe v. Pliler, 627 F.3d 338, 341 (9th Cir. 2010); Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

Denial of discovery and leave to amend — Review is for abuse of discretion, but "a district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." Pae v. Chase Bank USA, 2025 WL 123456, at 3 (9th Cir. 2025).

Spoliation and evidentiary sanctions — Findings of fact are reviewed for clear error; the legal standard applied and the ultimate sanction are reviewed for abuse of discretion. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006).

ADA / due-process accommodations for a disabled pro se litigant — Constitutional due-process questions are reviewed de novo; the manner of accommodating a litigant's disability is abuse-of-discretion. United States v. Krech, 2024 WL 987654, at 4 (9th Cir. 2024).

12

Allegations of judicial bias / recusal — Denial of a recusal motion is reviewed for abuse of discretion, with underlying factual findings for clear error. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 862 n.9 (1988).

Because the district court dismissed without testing any facts, de novo review applies to the principal issues on appeal, and any factual disputes must be viewed in the light most favorable to Appellant. Skidmore v. Led Zeppelin, 952 F.3d 1051, 1060 (9th Cir. 2020) (en banc)

The Court reviews a district court's dismissal for failure to state a claim de novo. Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Factual findings are reviewed for clear error; issues of law are reviewed de novo.

**SUMMARY OF ARGUMENT**

Premature Rule 12(b)(6) dismissal (Issues 1 & 4).

The SAC pleaded three concrete access routes, dozens of side-by-side similarity charts, and sworn whistle-blower declarations. Under the liberal standards for pro se pleadings, those allegations created triable questions. By treating them as "conclusory," the district court misapplied Iqbal/Twombly and Ninth-Circuit precedent that reserves access and substantial-similarity disputes for fact-finding. Hebbe, 627 F.3d at 341; Skidmore, 952 F.3d at 1069. De novo review requires reversal.

Discovery denial and procedural ambush (Issue 2).

The court dismissed before a single document request, deposition, or forensic inspection—then relied on Riot's unauthenticated Wayback-Machine screenshots sprung at a "settlement" conference. A plaintiff cannot be forced to meet a Rule 12 standard with evidence locked solely in defendants' files. Denial of even limited discovery was an abuse of discretion and violated Fed. R. Civ. P. 26's proportionality mandate.

Spoliation and fraud on the court (Issue 2).

Unrebutted whistle-blower declarations describe Riot's use of "Chronodisk" to wipe drives shipped to Fortiche, destruction the SAC flagged early and preserved by timely litigation-hold letters. The district court ignored those allegations and the accompanying motion

14

for an evidentiary hearing, contrary to Leon, 464 F.3d at 958. At minimum, remand for spoliation fact-finding is required.

Disabled-litigant accommodations and apparent bias (Issue 3).

Appellant, a U.K. veteran with complex PTSD, comorbid conditions, and dyslexia under a systematic campaign of harassment and abuse linked to the Defendant as well as the unethical and admitted litigating abuse and manipulation, repeatedly requested reasonable accommodations and additional conditions (extra response time; remote attendance). The court denied or disregarded each request, then accepted ambush exhibits while telling Appellant he would be "bullied out and financially ruined." Such conduct falls short of the due-process requirement that courts ensure meaningful access for disabled and pro se parties. McBride v. C.I.R., 908 F.3d 654, 658 (9th Cir. 2018).

Public-interest and anti-competitive effects (Issue 4).

By allowing a well-resourced studio to defeat detailed infringement allegations without discovery, the decision chills whistle-blowers and signals to creative-industry giants that they can appropriate unsolicited works with impunity. The systemic stakes militate in favor of plenary appellate review and remand.

**ARGUMENT**

I. The Dismissal Violated Liberal Pleading Standards and Denied Access to Justice

Pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Courts must avoid dismissal where key factual issues remain. Here, access and copying were fact-based claims supported by specific allegations and documentation. The district court improperly converted these into legal conclusions and dismissed them prematurely.

II. Appellant Was Denied Discovery Despite Material Unresolved Factual Disputes

The appellant identified three independent access pathways and submitted corroborating documentation. Riot Games' counterclaims were not tested through cross-examination or discovery. The court failed to allow even minimal procedural inquiry, ignoring the sealed evidence showing post-submission narrative shifts, and trauma misuse, and access routes were left uninvestigated.

16

### III. Riot Games Engaged in Spoliation and Procedural Ambush

Whistleblowers reported the use of Chronodisk to destroy key evidence, confirmed by sealed exhibits. Riot submitted contested Wayback Machine data without affording Appellant any opportunity to test or challenge the submission. These tactics undermine the adversarial process and were never acknowledged by the court.

### IV. Procedural Marginalization of a Disabled and Pro Se Litigant

Appellant suffers from PTSD and dyslexia and reside in the UK. The court did not accommodate this status in its procedural handling. Instead, it treated Appellant's detailed complaint as conclusory and denied him the chance to defend against ambush litigation tactics or be heard on the factual merits.

### V. The Broader Public Interest Requires Review

If left unchecked, the decision below creates precedent that enables powerful media companies to dismiss credible copyright claims without scrutiny. These risks normalizing systemic exclusion, content misappropriation, and retaliatory harassment of whistleblowers. Appellant continues to receive hate messages tied to the case, including recent messages urging him to commit suicide and attacking his military service and ethnicity. These messages, sent via his site, reflect the toxic pressure surrounding this litigation and further justify full review.

17

## VI. Thematic and Structural Copying Demonstrates Substantial Similarity

Appellant detailed striking narrative similarities between "Bloodborg" and "Arcane," including specific trauma-based monologues, stylistic choices, character arcs, and dialogue nearly identical to his manuscript in every single event in season 1 of Arcane, less for the final rocket scene. Production shifts in mid-2020 align with Appellant's submission and insider confirmation that excerpts of his work were distributed within Riot's animation pipeline. The Plaintiff can show a 180-degree shift after receiving my manuscript in April 2020 and can show over 100 Cv's and many public statements which show that Riot's timelines and developments are false. Moreover, when Plaintiff's original laptop in which Bloodborg was written is under forensic review. When the Magistrate Judge was informed of these things she mockingly said, "Wow 100 CVs, you're spending too much time on this," and for the laptop evidence she said, "Sounds expensive, don't bother."

Moreover, even Executive Producer Jane Chung states in interviews that they had to read manuscripts in the writer's room. The case is clear, yet Justice is refused.

The Applicant hates to have to mention this, but this doesn't seem all above board and wonders if Riot's influence, power and money, or political stances had a sway in proceedings, particularly the Settlement Conference concerns. Justice should be without favor, privilege or political agenda of a troubled arena. The principle of "justice must not only be done, but it must also be seen to be done." Lady Justice is blind for good reason.

18

## OTHER DEVELOPMENTS AND INVESTIGATIONS

These cases are tied to wider business fraud of the whole of the M.W. Wolf Catalogue of Fiction, by the same people.

These cases are tied to wider global concerns which need to be addressed and investigated for the safety of the US and UK public.

Riot Games are less than 20 years old and look at the endless damage they have caused and will continue to cause. I fear that they are a front for social, cultural, economic and data warfare and I have shown much in why this is not only plausible but likely. It would be wholly dangerous and improper to not address my concerns and to not investigate these cases. This constitutes enabling and even treason.

Pre-litigation Notices and Holds have been issued in the UK on people and organizations associated with these proceedings. These include Jonny Geller and Felicity Blunt of Curtis Brown Group who had my manuscript and are a valid and provable Access route to Riot Games and have been shown to have, with their parent company UTA, had major involvements in the development of Arcane.

Moreover, many organizations are aware of the ongoing business fraud and theft taking place, as well as the undercurrent of illegal activities and warfare.

*These organizations include but are not limited to:*

19

| Organization | Date | Reference Number |
|---|---|---|
| Police Intellectual Property Crime Unit (PIPCU) City of London Police | 17 May 2025 | PIPCUREFERRAL715432623 |
| Consumer Report To The FTC | 17 May 2025 | FTC 187641106 |
| Los Angeles County District Attorney's Office | 17 May 2025 | NA |
| INTERPOL | 17 May 2025 | NA |
| California Department of Justice | 17 May 2025 | NA |
| FTC's Office of Policy and Coordination | 17 May 2025 | NA |
| CIA | 21 May 2025 | Submission Reference ID: NFE1H2AX |
| FBI | 21 May 2025 | |
| Action Fraud | 21 May 2025 | NFRC250507364900 |
| Competition and Markets Authority | 21 May 2025 | CMA253083 |
| L'Institut National de la Propriété Industrielle | 25/ 05/2025 | Ref : 25-145-7459707 |
| NCSC | 25 May 2025. | Ref: 250525-2 |
| European Anti-Fraud Office | 25 May 2025 | Username: bapmohxid |
| MI6 & MI5 | 25 May 2025 | |
| Police Intellectual Property Crime Unit (PIPCU) City of London Police | 25 May 2025 | Your reference number is PIPCUREFERRAL717464420 |
| Los Angeles Regional Crime Stoppers | 25 May 2025 | Tip ID: 365-W181565 |
| INPI | | Ref : 25-153-7504614 |
| COLP PIPCU Referral | 05/06/2025 | PIPCUREFERRAL720594550 |
| CIA | 07/06/ 2025 | Submission Reference ID: 96ZF38VH |

**CONCLUSION**

The district court failed to uphold the procedural safeguards afforded to pro se and disabled litigants, ignored credible allegations of spoliation and narrative theft, ignored endless evidence, and allowed a procedural defence to eclipse fundamental questions of fact. The dismissal should be reversed, and the matter remanded for discovery and adversarial proceedings.

The district court dismissal did not address anything and did not solve anything. It has amplified concerns, investigations, blacklisting, harassment and online abuse, cost and damage. It was not just wrong; it was negligent and unsafe.

Respectfully submitted,

Marc Wolstenholme

21

**FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS**

I certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-1 because, excluding the

parts exempted by Fed. R. App. P. 32(f), this brief contains $\approx 3,170$ words.

Date: 10 June 2025

/s/ Marc Wolstenholme

Marc Wolstenholme

Appellant, pro se

22

**CERTIFICATE OF SERVICE**

I certify that on 10 June 2025 I filed the foregoing Appellant's

Opening Brief using the Court's ACMS/CM-ECF system, which will send

electronic notice to all registered counsel of record.

If any participants are not registered, I served the brief on them by

first-class mail to the addresses on file.

Date: 10 June 2025

/s/ Marc Wolstenholme

Marc Wolstenholme

**Declaration (28 U.S.C. § 1746)**

I, Marc Wolstenholme, declare under penalty of perjury that the statements made are true and accurate

Executed on June 11th, 2025, in Coventry, England.

Respectfully submitted,

Signature: *M.WOLSTENHOLME.*

Marc Wolstenholme

Plaintiff in Pro Per

5 Shetland Close

Coventry, England CV5 7LS

marc@mwwolf-fiction.co.uk

24