UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARC WOLSTENHOLME,<br>Plaintiff-Appellant,<br><br>v.<br><br>RIOT GAMES, INC.,<br>Defendant-Appellee. | Case No. 25-3163<br><br>DECLARATION OF MARC WOLSTENHOLME<br><br>APPELLANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA (136 F.4th 1194 (9th Cir. 2025)) |

Dated this: July 09, 2025

*M.WOLSTENHOLME*

[MARC WOLSTENHOLME]

DECLARATION OF MARC WOLSTENHOLME (28 U.S.C. § 1746)

I, Marc Wolstenholme, declare under penalty of perjury that the facts set out in this brief and supporting excerpts of record are true and correct to the best of my knowledge and belief. Executed 08 June 2025, Coventry, England.

Marc Wolstenholme
5 Shetland Close
Coventry, England CV5 7LS
Telephone: 044 7827964404
Email: marc@mwwolf-fiction.co.uk
Plaintiff in Pro Per

1

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

TABLE OF CONTENTS

Declaration of Marc Wolstenholme   1

Introduction   3

Application of Yafa to This Civil Matter   4

– Fraud and Concealed Economic Gain   5

– Loss-Lead Strategy and Hidden Profit Models 5

– Gain as Equitable Remedy for Theft of IP 6

Broader Context and Economic Harm   7

Relevance to the Appeal 8

Parallels Between United States v. Yafa and the Present Matter   10

– Gain as a Proxy for Loss 10

– Concealment and Obfuscation of Records 10

– Fraud and Misrepresentation 10

– Market Manipulation and Strategic Deception 10

– Distributed and Layered Revenue Channels 11

 Equitable Remedies and Systemic Impact 11

Precedent for Broader Application 11

Consistent Pattern of Fraud, Stealing, Abuse, and Access Gain 12

Conclusion 17

Declaration of Authenticity 19

2

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

I.    Introduction

In response to this Court's order dated July 2, 2025, directing the parties to file supplemental briefs addressing the impact of United States v. Yafa, 136 F.4th 1194 (9th Cir. 2025), Appellant submits the following.

In Yafa, the Ninth Circuit held that gain may serve as an alternative measure of loss when actual loss is difficult to quantify. This case is not yet a criminal matter. Though a criminal securities fraud case, Yafa's principles are highly relevant to this civil matter due to the nature of the alleged misconduct: misappropriation of source material, concealment of profit mechanisms, and the use of a loss-leader model by Riot Games to mask commercial benefit.

When gain is achieved through theft, market manipulation, or deception, and at the expense of competitors, courts must scrutinize such conduct under equitable principles like those applied in Yafa. This is not an isolated incident, but part of a broader pattern of systemic abuse.

This appeal arises from a copyright and fraud-based action involving extensive allegations of IP theft, unjust enrichment, and economic sabotage. Appellant argues that a gain-based metric for damages is necessary given the misconduct and Riot's efforts to obscure profit through complex, layered revenue strategies.

3

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

II.     Application of Yafa to This Civil Matter

Fraud and Concealed Economic Gain

Though this matter is civil, it involves serious allegations of fraud, false filings, evidence concealment, and manipulation of records, bringing it closer in nature to Yafa. In Yafa, defendants inflated stock value and profited while hiding losses. Similarly, Riot Games is alleged to have inflated its IP value using unlawfully obtained material to drive success and evade liability. The resulting gain is vast, sustained, and dispersed across games, lore, animation, merchandise, live-action, mergers, and strategic markets, including U.S. and U.K. sectors.

4

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

Loss-Lead Strategy and Hidden Profit Models

Riot Games employs a known loss-leader strategy, particularly with Arcane, prioritizing long-term engagement over short-term profits. Arcane was designed to drive traffic to the broader Riot ecosystem including League of Legends, microtransactions, merchandise, and brand expansion into film and animation. Though direct profits are obscured, the economic gain is substantial and deliberate. This strategy, rooted in Riot's "Treasured Gateway" policy, is anti-competitive and deceptive.

The stolen lore, characters, and aesthetics are now so deeply embedded in Riot's products that removing them would effectively dismantle its portfolio. This further entrenches the theft and damages the uniqueness of the original work.

Yafa supports the use of gain as a proxy for loss in situations where revenue is distributed or concealed. That same rationale applies in civil matters where unlawful conduct creates widespread benefit for the wrongdoer and simultaneous loss for the rightful creator.

5

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

Gain as Equitable Remedy for Theft of IP

Yafa affirms that calculating damages through gain is fair when direct loss is obscured. Riot Games and Fortiche gained not just revenue but market position, acclaim, partnerships, and a platform for further billion-dollar expansion.

These gains stem directly from exploiting Appellant's manuscript, Bloodborg: The Harvest, obtained through intermediaries and reworked into their flagship property. Even if Yafa is not binding in civil IP cases, its logic for using gain to measure harm fits the equitable needs of this matter.

Even outside the criminal context of Yafa, courts have long recognized gain-based remedies in civil cases where direct loss is obscured. In Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390 (1940), the Supreme Court authorized profit disgorgement as an equitable remedy for copyright infringement, even in the absence of quantifiable damage. The Ninth Circuit reaffirmed this in Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 711–12 (9th Cir. 2004), permitting recovery of indirect profits tied to infringing material. Similarly, in BladeRoom Grp. Ltd. v. Emerson Elec. Co., 20 F.4th 1231 (9th Cir. 2021), the court upheld an unjust enrichment award in a trade secret case, where defendant's gain served as a fairer metric than the plaintiff's loss. These precedents, alongside Yafa, reinforce the proposition that where loss is obscured or difficult to isolate due to the defendant's conduct, gain may be used as a fair and equitable proxy.

6

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

III.    Broader Context and Economic Harm

This case is not merely a copyright dispute. Riot Games, backed by Tencent, operates across global hubs with data flows through Chinese subsidiaries, raising concerns of a broader economic strategy to redirect Western IP and data into centralized tech platforms without fair compensation.

The impact extends beyond Appellant to entire creative sectors. Riot and co-defendants have gained public subsidies, tax breaks, grants, favorable press, industry awards, mergers, and recognitions, while leaving a trail of harmed creators, collapsed industries, abused communities, and compromised nations. These recognitions affect product value, investment, hiring, and access to content platforms, and they cause real human harm.

Key individuals, including "Showrunner" Christian Linke, gained promotions and accolades by leveraging Arcane's success, built on misappropriated material. These fraudulent practices continue, delivering massive financial gain and widespread damage, even where not recorded on conventional ledgers.

7

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

IV. Relevance to the Appeal

Appellant's claims were dismissed without full discovery or proper consideration of sealed evidence. Riot Games submitted falsified materials and concealed its development timelines. Whistleblower testimony, now corroborated by Riot's own publications, reveals that at SREcon-EMEA Amsterdam in October 2022, an ex-Riot engineer confirmed a mid-2020 narrative re-scope placing the Piltover-Zaun conflict at the forefront. Riot then used DMCA tools to purge related public content and allegedly shipped overclocked PCs to Fortiche Las Palmas for data destruction via Chronodisk. Assets are now reportedly being relocated to NetEase cloud servers.

Other whistleblowers link former Riot executive Greg "Ghostcrawler" Street to earlier hacking incidents, alleging his access enabled the theft of code and IP, including material for Riot's MMO. As VP of IP and Entertainment during 2019–2020, Street had access to Bloodborg: The Harvest. Riot's litigation tactics obstructed discovery of these issues, shielding the full extent of its unlawful gain.

Yafa supports the principle that when defendants manipulate records or profit structures to obscure damages, courts may use gain as a fair proxy. The denial of discovery here

8

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

enabled Riot to control the narrative while preventing the Appellant from tracing the full scope of misappropriation and systemic market manipulation.

Co-defendants, believed to include Curtis Brown Group and UTA, helped Riot set a dangerous precedent by exploiting vulnerable creators, manipulating court processes, and evading justice through aggressive legal tactics. This extended to threats, hate mail, gaslighting, and psychological warfare, targeting even a five-year-old child and encouraging suicide.

Allowing such conduct without consequences undermines the very integrity of the legal system. If powerful gatekeepers can weaponize procedure to suppress marginalized voices, while concealing and destroying evidence, then the legal mechanisms themselves become tools of exclusion. In this case, "gain" also reflects the cost of justice denied.

Ninety percent of writers never earn a living from their work. This case demonstrates why. The market is not just competitive; it is being manipulated by the very entities meant to uphold its standards. The result is systemic exclusion from opportunity, regulation, and redress.

The gains Riot has extracted span billions in revenue, expanded access, and market dominance across the US and UK. But the deeper gain is control, and that must be examined.

9

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

IV.     Parallels Between United States v. Yafa and the Present Matter

The decision in United States v. Yafa, 136 F.4th 1194 (9th Cir. 2025), though arising from a criminal securities fraud prosecution, offers significant analytical guidance applicable to this civil appeal. The following elements from Yafa are especially relevant in evaluating the present matter and support the position that "gain" is a proper metric for damages when direct loss is concealed or difficult to measure.

1. Gain as a Proxy for Loss

2. Concealment and Obfuscation of Records

3. Fraud and Misrepresentation

4. Market Manipulation and Strategic Deception

5. Distributed and Layered Revenue Channels

6. Equitable Remedies and Systemic Impact

7. Precedent for Broader Application

Although Yafa was a criminal matter, the Court's rationale was not confined to the criminal context. It relied heavily on the ambiguity of the term "loss" and the need for practical alternatives in complex fraud cases. This precedent may be persuasively extended to

10

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

civil intellectual property and fraud-based disputes, particularly where structural concealment and market manipulation have prevented accurate loss assessments.

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

V.    Consistent Pattern of Fraud, Stealing, Abuse, and Access Gain.

This is not an isolated case. It reflects a consistent and disturbing pattern of business fraud, abuse, sabotage, and covert economic manipulation. In IP-driven markets, access is currency. Riot Games has repeatedly used fraudulent and unethical tactics to gain access and turn it into profit.

Their conduct aligns with tactics such as "Swipe and Gripe," "Pix and Mix," "Mask and Lie," "Hack and Sack," and concealment under the "Treasured Gateway" policy.

For example, Riot's association with Steve "Pendragon" Mescon involved sabotaging Dota Allstars, using fanbase data to gain industry access and secure funding. Riot then aligned with Tencent, who obtained control of user data and markets, raising serious concerns in both the US and UK regarding security and economic sovereignty. Greg "Ghostcrawler" Street is alleged to have played a role in illegal hacking activities while at Riot and then joined NetEase.

The pattern continued with Arcane. Three key figures involved in shaping Arcane have since regrouped under the financial support of NetEase Games. Greg Street, who as Riot's

12

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

VP of IP and Entertainment approved the pivotal 2020 story overhaul, now heads Fantastic Pixel Castle, a remote MMO studio funded exclusively by NetEase.

Shanti Blees, formerly Riot's Director of Creative Insights, co-founded the studio and serves as VP Creative, also under NetEase's funding. She reportedly used data from Vanguard to run A/B tests on emotionally charged story beats. This data, tied to the trauma-driven writing of Bloodborg, was exported to Chinese servers and may now be training influence-operation models. This raises serious implications for the security and emotional integrity of the Western public.

Veigar Bouius, senior narrative writer responsible for Arcane's Jinx and Piltover-Zaun arcs, co-founded Theorycraft Games. NetEase led the studio's $37.5 million funding round and remains its largest external shareholder following a $50 million Series B. These individuals, whose decisions shaped Arcane based on Bloodborg, now create new IP under the financial control of a Chinese gaming giant.

Here are the most troubling issues:

Greg Street's hacker alias "Ghostcrawler" is suspected of being connected to hacking activity during the litigation. The 2020 rewrite of Arcane aligns directly with Riot's

13

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

access to Bloodborg. Riot's internal and public materials, including the Arcane art book, the Bridging the Rift documentary and the 2022 Scaling Narrative Ops presentation, support this. Yet Riot has insisted under oath that the Arcane narrative was locked by 2019, despite evidence to the contrary. Timelines of production, casting, and hiring do not match their claims. Fabrication appears systemic.

Veigar Bouius claimed to have built Arcane's lore from existing Runeterra content. However, the Piltover-Zaun war storyline and Jinx's trauma arc never existed before Riot gained access to Bloodborg and the Appellant's personal trauma content. The original map shows the cities were far apart and the trauma beats were absent from all Riot content and lore.

Shanti Blees reportedly used real emotional content from Bloodborg in player testing, feeding that data into Vanguard without user consent. This raises ethical and legal concerns. Research involving human data requires informed consent. Vanguard gathered emotional responses without disclosure and shared them with foreign entities. The implications for Western user privacy and influence vulnerability are significant.

Vanguard itself operates at a low-level kernel access, allowing Riot to read, modify, or overwrite system files, capture keystrokes, and install unsigned code. Independent researchers confirm it can remain active even when games are closed. Tens of millions of US

14

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

and UK devices now host a tool with remote access capabilities, developed by a company nearly fully owned by Tencent.

What this means is that two of the world's largest gaming and tech companies, backed by Chinese state-aligned investors and civil-military integration, are gaining mass access and data through stolen IP, psychological profiling, and embedded surveillance tools. Riot Games and NetEase are not just profiting from stolen IP, they are building a data-driven foundation to dominate and exploit entire creative and technological markets.

Greg Street and others were not just storytellers or producers. They were part of a multi-layered network that used illegal or unethical access to secure gain. Through narrative theft, technological overreach, and global data transfer, Riot has turned access into economic, reputational, and political capital.

The Appellant and others have been denied access to justice, economic opportunity, and market participation. This case is about more than copyright infringement. It is about the monopolization of access, the manipulation of markets, and the suppression of competition through deceit and intimidation.

15

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

Under the framework set out in Yafa, gain may be measured where direct loss cannot be easily quantified. Riot has obstructed access to discovery, masked the routes of gain, and used every opportunity to conceal how much value was extracted. Without open records and fair examination, it is impossible to calculate traditional damages. Yet the gain is clear, public, and massive.

Access is gain. And that access has been stolen, abused, and weaponized against creators, markets, and the public. The damage to the Appellant is in the billions. But even that is small compared to the long-term harm to Western industries, user safety, and global creative integrity.

Without immediate intervention and full investigation, these behaviors will escalate. What began as IP theft has evolved into systemic abuse with geopolitical and human costs.

16

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

VI.    Conclusion

Access is currency. In creative markets, it governs whether ideas reach audiences, secure financing, or gain credibility. By misappropriating Bloodborg and branding it as original, Riot did not merely gain profit, it gained exclusive access to licensing channels, state funding, promotional platforms, and strategic mergers. This constitutes both economic gain and systemic harm.

Such structural gains result in denial of access to others, including the Appellant, who faced reputational, psychological, and professional harm, as well as literal loss of access to his child and income due to the cascading effects of this alleged IP theft and retaliation.

These outcomes parallel Yafa, where fraudulent behavior created widespread damage beyond a balance sheet. The equitable logic in Yafa, measuring harm through wrongful gain, is therefore essential here.

While United States v. Yafa arose in a criminal context, its framework for assessing economic harm where loss is difficult to calculate is directly applicable to this case. The gains Riot Games have achieved from the alleged infringement are not speculative, they are real, public, and enormous. This case isn't yet a criminal one. Yet it should be.

17

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

Appellant respectfully submits that the Court should apply the rationale of Yafa to this civil action and remand for further proceedings that allow discovery, fair examination of concealed gains, and equitable remedies including gain-based restitution.

I thank this court for its help in gaining Justice and security.

Word Count: 2477.

18

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))

**Declaration of Authenticity:**

I, Marc Wolstenholme, declare under penalty of perjury that the statements made are true and accurate

Executed on May 09, 2025, in Coventry, England.

Respectfully submitted,

Signature: *M.WOLSTENHOLME.*

Marc Wolstenholme

Plaintiff in Pro Per

5 Shetland Close

Coventry, England CV5 7LS

marc@mwwolf-fiction.co.uk

19

APPELLANT'S SUPPLEMENTAL BRIEF

IN RESPONSE TO COURT ORDER REGARDING UNITED STATES v. YAFA

(136 F.4th 1194 (9th Cir. 2025))