No. 25-3163

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARC WOLSTENHOLME,

Plaintiff-Appellant,

v.

RIOT GAMES, INC.,

Defendant-Appellee.

---

## BRIEF OF DEFENDANT–APPELLEE RIOT GAMES, INC.

---

Appeal from the United States District Court, Central District of California
Hon. Fernando M. Olguin
Case No. CV 25-0053 FMO (BFMx)

Aaron J. Moss (SBN 190625)
Joshua M. Geller (SBN 295412)
Hannah G. Shepherd (SBN 347611)
MITCHELL SILBERBERG &
KNUPP LLP
2049 Century Park East, 18th floor,
Los Angeles, CA 90067
310-312-2000
Email: aaron.moss@msk.com
josh.geller@msk.com
hannah.shepherd@msk.com
Attorneys for Defendant-Appellee
Riot Games, Inc.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................................... 1

II.  STATEMENT OF ISSUES PRESENTED...................................................... 2

III.  STATEMENT OF THE CASE......................................................................... 2

    A.  Factual Background. ........................................................................... 2

    B.  Procedural History. ............................................................................. 3

IV.  STANDARD OF REVIEW ............................................................................ 7

V.  SUMMARY OF ARGUMENT ...................................................................... 7

VI.  ARGUMENT.................................................................................................. 9

    A.  Wolstenholme Forfeited Any Challenge to the Dismissal of the SAC by Failing to Make Relevant Legal Arguments in his Opening Brief. ........................ 9

    B.  Riot's Motion to Dismiss the SAC Was Well-Taken on the Merits and the Dismissal Should be Affirmed. ............................................................ 12

    C.  Wolstenholme's Complaints About Discovery and the Litigation Process are Irrelevant and Baseless. ...................................................................... 28

VII.  CONCLUSION.............................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Al-Bustani v. Alger*,
  No. C22-5238JLR, 2023 WL 3120747 (W.D. Wash. Apr. 27, 2023) ....................................22

*Arledge v. Boise City Att'y*,
  No. 22-35358, 2023 WL 4994529 (9th Cir. Aug. 4, 2023) ......................................................28

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ..............................................................................................18

*Blanchard v. DIRECTV, Inc.*,
  123 Cal. App. 4th 903 (2004) ................................................................................................26

*Burgert v. Lokelani Bernice Pauahi Bishop Tr.*,
  200 F.3d 661 (9th Cir. 2000) ..................................................................................................7

*Cantu v. Resolution Trust Corp.*,
  4 Cal. App. 4th 857 (1992) ..............................................................................................25, 27

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ................................................................................................19

*D.A.R.E. America v. Rolling Stone Mag.*,
  270 F.3d 793 (9th Cir. 2001) ................................................................................................10

*Esplanade Prods., Inc. v. Walt Disney Co.*,
  2017 WL 5635024 (C.D. Cal. July 11, 2017) ........................................................................16

*Evans v. McCoy-Harris*,
  No. CV178345DMGAGRX, 2019 WL 1002512 (C.D. Cal. Jan. 4, 2019) ..............................16

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ..............................................................................................17

*Greenwood v. F.A.A.*,
  28 F.3d 971 (9th Cir. 1994) ............................................................................................10, 11

*Indep. Towers of Washington v. Washington*,
  350 F.3d 925 (9th Cir. 2003) ..................................................................................................7

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) ..........................................................................................23, 24

ii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ...............................................................................18

*Kumar v. Koester*,
   131 F.4th 746 (9th Cir. 2025) ...........................................................................8, 11

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ............................................................................19

*Lois v. Levin*,
   No. 222CV00926SVWADS, 2022 WL 4351968 (C.D. Cal. Sept. 16, 2022) ........................15

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) ......................................................................8, 13, 14

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ............................................................................23

*Markey v. Bank of Am., N.A.*,
   675 F. App'x 790 (9th Cir. 2017) ........................................................................28

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996) ................................................................................5

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
   586 F. Supp. 1346 (C.D. Cal. 1984) ....................................................................14

*Moncada v. W. Coast Quartz Corp.*,
   221 Cal. App. 4th 768 (2013) .............................................................................27

*Nah v. Jablon*,
   No. 23-4003, 2025 WL 1202525 (9th Cir. Apr. 25, 2025) ...............................7, 10

*Ohan v. Zion*,
   No. 23-35435, 2024 WL 2828818 (9th Cir. June 4, 2024) ..............................8, 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ..............................................................................22

*Plotnik v. Meihaus*,
   208 Cal. App. 4th 1590 (2012) ...........................................................................27

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ............................................................................12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Roe v. Bright*,
No. 24-1316, 2025 WL 1392167 (9th Cir. May 14, 2025) ................................................7, 10

*Royal 4 Sys., Inc. v. RLI Ins. Co.*,
No. CV 22-05732-RSWL-RAO, 2022 WL 19263327 (C.D. Cal. Dec. 9, 2022) ...................25

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) ..................................................................................................26

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ..........................................................................................28

*Segal v. Segel*,
20-CV-1382-BAS-JLB, 2022 WL 198699 (S.D. Cal. Jan. 21, 2022) ..................................15

*Seidler v. Amazon.com, Inc.*,
No. 24-1489, 2025 WL 880142 (9th Cir. Mar. 21, 2025)....................................................7, 11

*Silberg v. Anderson*,
50 Cal. 3d 205 (1990) .....................................................................................................26

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ....................................................................................12, 13

*Soliman v. CVS RX Servs., Inc.*,
570 F. App'x 710 (9th Cir. 2014) .....................................................................................25

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...........................................................................................7

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) ...........................................................................................13

*United States v. Johnson*,
610 F.3d 1138 (9th Cir. 2010) .........................................................................................30

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ...........................................................................................25

*Woodland v. Hill*,
2022 WL 19250191 (C.D. Cal. Dec. 8, 2022) ...................................................................15

*Zella v. E.W. Scripps Co.*,
529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................................................15

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

**STATUTES**

17 U.S.C.
    § 102....................................................................................................................23
    § 102(a)(1) .........................................................................................................24
    § 103....................................................................................................................23
    § 301(a) ..............................................................................................................23

Cal. Bus. Code § 17200 ...........................................................................................23

Cal. Civ. Code § 47(b) .............................................................................................26

Cal. Civ. Proc. Code § 335.1 ...................................................................................25

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
    8(a) ........................................................................................................................5
    12(b)(6) ..................................................................................................4, 7, 9, 28
    12(e) ......................................................................................................................4

## I.     INTRODUCTION

This is an appeal from an order dismissing a frivolous copyright case by a *pro se* litigant who has repeatedly failed to allege any facts sufficient to state a cognizable claim.  Plaintiff-Appellant Marc Wolstenholme ("Wolstenholme") alleges that Defendant-Appellee Riot Games, Inc.'s ("Riot") Emmy-award winning animated television series *Arcane League of Legends* ("*Arcane*") infringed his unpublished manuscript "Bloodborg: The Harvest."  But Wolstenholme never plausibly alleged any of the elements of his claims despite having *two* opportunities to amend his initial complaint.  *See* 6-SER-1314–1319 (First Amended Complaint ("FAC")), 47–1264 (Second Amended Complaint ("SAC")).

In keeping with that pattern, in his Appellant's Opening Brief, Wolstenholme once again fails to engage with the substantive deficiencies in his allegations.  He does not cite his SAC a single time, nor explain how any allegations in it could state a claim for direct copyright infringement.  In addition, Wolstenholme does not once mention his defective claims for vicarious copyright infringement, unfair competition, and intentional infliction of emotional distress.

Instead, Wolstenholme devotes the majority of his Opening Brief to conspiratorial irrelevancies and grievances about the litigation process.  These complaints are meritless, were not raised before the district court, and, in any event, have no bearing on the dispositive deficiencies in the SAC that necessitated

1

dismissal with prejudice. Riot respectfully requests that this Court affirm the district court's dismissal of Wolstenholme's SAC with prejudice.

## II. STATEMENT OF ISSUES PRESENTED

1. Whether Wolstenholme forfeited any issue on appeal by failing to make relevant legal arguments in his Opening Brief.

2. Whether dismissal was proper because Wolstenholme failed to allege sufficient facts to support a cognizable legal theory as to each of his direct copyright infringement, vicarious copyright infringement, unfair competition, and intentional infliction of emotion distress claims.

## III. STATEMENT OF THE CASE

### A. Factual Background.

Wolstenholme is a United Kingdom resident who purports to own the exclusive copyright in a manuscript entitled "Bloodborg: The Harvest," allegedly created between 2018 and 2019. 2-SER-48. Riot is an American video game developer, publisher, and esports tournament organizer based in Los Angeles, California and the creator of the popular video game *League of Legends*, which has been one of the most played video games in the world since its release in 2009. Riot is also the creator of the Emmy-award winning animated television series *Arcane*, which is based on the *League of Legends* game. By way of background, *Arcane* premiered on Netflix in November 2021 and a second season was released

2

in November 2024. Both seasons 1 and 2 of *Arcane* received critical acclaim and immediately topped Netflix's charts globally.

Wolstenholme asserts that *Arcane* and related derivative works "derive narrative elements, themes, scenes, chapter / episode titles, aesthetics, trauma writing, central premise, macro and micro details, actual writing converted to visual mediums, expert skill depictions, distinct color usage, deeply nuanced motifs and allegories, symbolism, character arcs, character personalities and backstories, and more, from [his] copyrighted work." 2-SER-49. He further alleges that his "trauma writing"—a "fictionalized therapeutic journaling of his deeply complex personal trauma history both in and out of the British Army"— was misused by Riot, and that "three years of bad faith negotiations and prolonged litigations" have caused him "emotional-psychological harm and suffering." *Id.*

## B. Procedural History.

On October 31, 2024, Wolstenholme filed his initial complaint for direct and vicarious copyright infringement, unfair competition, and intentional infliction of emotional distress in the Superior Court for the County of Los Angeles. 6-SER-1352. Because federal courts have exclusive jurisdiction over copyright cases, Riot removed this action on January 3, 2025. 6-SER-1348. The initial complaint consisted of a state-court form document, akin to a Civil Cover Sheet, with no narrative statement of Wolstenholme's claims. 6-SER-1352. Riot informed

3

Wolstenholme of this defect, and when he failed to file an amended complaint, Riot filed a motion to dismiss under FRCP 12(b)(6) or, in the alternative, for a more definite statement under FRCP 12(e).  6-SER-1320.  In response, Wolstenholme filed a First Amended Complaint ("FAC") on January 13, 2025 alleging four claims: direct copyright infringement, vicarious copyright infringement, unfair competition, and intentional infliction of emotional distress. 6-SER-1314.

The FAC did not plausibly allege any facts to support a claim for relief and Riot filed a motion to dismiss.  6-SER-1277.  As to its two copyright claims, the FAC failed to plausibly allege (i) that Wolstenholme had a registered copyright or was otherwise excepted from the registration requirement, (ii) that Riot had access to Wolstenholme's purported work(s), or (iii) that Riot unlawfully appropriated any protected expression in Wolstenholme's purported work(s).  As to its unfair competition claim, that claim was preempted by the Copyright Act.  As to its claim for intentional infliction of emotional distress, the claim was time-barred and barred by the litigation privilege, and the alleged conduct was not sufficiently extreme and outrageous to state the claim as a matter of law.

Rather than oppose Riot's motion to dismiss, Wolstenholme filed a motion for leave to file a Second Amended Complaint (6-SER-1267) which the district court granted, noting the "extreme liberality" with which the Ninth Circuit permits

4

amendments. 6-SER-1265. Wolstenholme filed his operative SAC on February 23, 2025. 2-SER-47.

The SAC was a staggering 1,218 pages.[1] 2-SER-47–6-SER-1264. It is divided into two unequal portions: The first 11 pages before the Prayer for Relief (what would traditionally be "the complaint") involve a conclusory description of Wolstenholme's claims and a formulaic recitation of the elements of his causes of action. 2-SER-47–57. The remaining 1,207 pages are a series of "Exhibits" that are incomprehensible and nearly impossible to follow. They include hundreds of pages of irrelevancies like lists of "potential additional claims" Wolstenholme might assert in the future (2-SER-58), legal argument (2-SER-279–281, 3-SER-316–329, 3-SER-427–429, 3-SER-450–453, 3-SER-502–503, 5-SER-1068–1076), approximately 400 pages of public statements about the development of *Arcane* (3-SER-547–5-SER-1007), and indecipherable graphics (5-SER-1020–1040), among many other things. Because the SAC suffered from the same deficiencies as the FAC, Riot again moved to dismiss. 2-SER-9.

In its May 12, 2025 order (the "Dismissal Order"), the district court granted Riot's motion and dismissed the SAC with prejudice. 1-SER-3. Judgment was

---

[1] Riot also moved to dismiss the SAC for failing to comply with Federal Rule of Civil Procedure 8(a). *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges.").

thereafter entered in favor of Riot (the "Judgment"). 1-SER-2. The district court concluded that Wolstenholme had "failed to plausibly allege access," including because the SAC did not "allege a nexus between Riot and any individual or agency who allegedly received a copy of Bloodborg." 1-SER-5. The district court also noted that Wolstenholme "[did] not respond to defendant's arguments regarding the SAC's deficient allegations relating to access," which was "tantamount to a concession on those issues." 1-SER-6. As to the vicarious copyright infringement claim, the district court concluded that the SAC included only "bare assertions" and a "formulaic recitation of the elements," but no actual factual allegations. *Id.* It further found that Wolstenholme's unfair competition claim was preempted (1-SER-6–7) and that his claim for intentional infliction of emotional distress was barred by the litigation privilege and that the conduct complained of could not be "deemed extreme or outrageous" as a matter of law (1-SER-7).

The district court denied leave to amend. While it "liberally construed the allegations in the SAC," it was "persuaded that [Wolstenholme's] claims cannot be saved through amendment." 1-SER-7–8. In particular, the court noted that Wolstenholme had "filed three iterations of his complaint," and that, "despite the SAC's 1,218 pages (including voluminous exhibits) . . . and the Opposition's 650-plus pages (including voluminous exhibits), . . . [Wolstenholme] failed to state a

claim." *Id.* Amendment would therefore be futile. *Id.* Wolstenholme timely appealed the Dismissal Order and Judgment. 6-SER-1386.

## IV. STANDARD OF REVIEW

This Court "review[s] de novo a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). "If support exists in the record, the dismissal may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

## V. SUMMARY OF ARGUMENT

First, Wolstenholme forfeited any challenge to the dismissal of the SAC by failing to make any relevant legal arguments in his Opening Brief. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("we will not consider any claims that were not actually argued in appellant's opening brief"); *see also, e.g.*, *Roe v. Bright*, No. 24-1316, 2025 WL 1392167, at *1 (9th Cir. May 14, 2025) (applying forfeiture rule to *pro se* appellant); *Nah v. Jablon,* No. 23-4003, 2025 WL 1202525, at *1 (9th Cir. Apr. 25, 2025) (same); *Seidler v. Amazon.com, Inc.*, No. 24-1489, 2025 WL 880142, at *1 (9th Cir. Mar. 21, 2025) (same). Wolstenholme's claim for direct copyright infringement was dismissed because he failed to plausibly allege access. On appeal, he does not point to a single allegation in the SAC that supports a legally viable theory of access—

7

indeed, he does not cite his SAC at all. Nor does he respond to Riot's argument that he also failed to plausibly allege substantial similarity of protected expression. Wolstenholme also fails to mention his claim for vicarious copyright infringement or his state law claims for unfair competition and intentional infliction of emotional distress at all in his opening brief, thereby consenting to their dismissal. *Kumar v. Koester*, 131 F.4th 746, 751 n.1 (9th Cir. 2025) ("Appellants have not made any arguments on appeal as to any of their state law claims and have therefore forfeited any appeal of the rulings on those claims."); *Ohan v. Zion*, No. 23-35435, 2024 WL 2828818, at *1 (9th Cir. June 4, 2024), *cert. dismissed*, 145 S. Ct. 406 (2024) (finding that *pro se* appellant "failed to address the grounds for dismissal and has therefore forfeited his challenge to the district court's order").

Second, even if Wolstenholme had not forfeited his appeal, the district court's dismissal of the SAC should be affirmed on the merits. His copyright claims have two fundamental defects: first, Wolstenholme fails to plausibly allege that anyone involved in the creative development of *Arcane* ever had access to his manuscript. His allegations fall far short of the "reasonable possibility" standard required to establish access. *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). Nor can he allege any widespread dissemination of his manuscript sufficient to raise an inference of access. Second, his allegations of substantial similarity rely exclusively on unprotectable ideas, generic themes, and random and scattered

8

comparisons that are neither similar nor protectable. His unfair competition claim is preempted. His intentional infliction of emotional distress claim is barred by the statute of limitations, the litigation privilege, and is not based on sufficiently extreme or outrageous conduct.

Instead of addressing any of these deficiencies, Wolstenholme's opening brief is devoted to frivolous complaints about the litigation process, including phantom discovery disputes that were never raised before the district court and are irrelevant on a Rule 12(b)(6) motion to dismiss. None of these complaints have any legal relevance.

## VI. ARGUMENT

### A. Wolstenholme Forfeited Any Challenge to the Dismissal of the SAC by Failing to Make Relevant Legal Arguments in his Opening Brief.

Wolstenholme's Opening Brief is entirely devoid of any legal argument relevant to the district court's dismissal of the SAC for failure to state a claim, and he has therefore forfeited his appeal of the Dismissal Order.

The district court dismissed Wolstenholme's claim for direct copyright infringement because he "failed to plausibly allege access." 1-SER-5. Wolstenholme does not address this defect with any relevant legal or factual argument in his Opening Brief. As a threshold matter, Wolstenholme does not cite his SAC at all—not a single page or paragraph. This Court is not obligated to hunt through the more than 1,200-page SAC to find allegations that might support a

9

theory of access; it was Wolstenholme's burden to point the Court to such allegations, if they existed (they do not). *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant . . . '[j]udges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)).

What passing reference Wolstenholme makes to the issue of access does not constitute a legal argument sufficient to preserve the issue on appeal. Wolstenholme states in his "Factual Background" that "[t]hree access pathways were evidenced in the SAC and Subsequent filings (Riot Forge, CBG and wide dissemination)." Opening Brief at 13. He does not anywhere elaborate on what those are, how the SAC purports to allege them, or, most importantly, how they would be legally sufficient to allege the critical copyright element of access. Instead, in his "Argument" section, Wolstenholme simply states that these "were fact-based claims supported by specific allegations and documentation." *Id.* at 19. That is the entirety of his discussion of the issue of "access." "A bare assertion of an issue does not preserve a claim." *D.A.R.E. America v. Rolling Stone Mag.*, 270 F.3d 793, 793 (9th Cir. 2001). This rule holds true even under the liberal pleading standards applicable to *pro se* litigants. *See, e.g.*, *Roe v. Bright*, No. 24-1316, 2025 WL 1392167 (applying forfeiture rule to *pro se* appellant); *Nah*, No. 23-4003,

2025 WL 1202525, at *1 (same); *Seidler*, 2025 WL 880142, at *1 (same); *Ohan v. Zion*, No. 24-1489, 2024 WL 2828818, at *1 (same).

Wolstenholme similarly fails to discuss the deficiencies in his allegations of substantial similarity. He claims that he "detailed striking narrative similarities," "including specific trauma-based monologues, stylistic choices, character arcs, and dialogue nearly identical to his manuscript in every single event in season 1 of Arcane, less for the final rocket scene." Opening Brief at 21. But he does not cite the SAC, does not describe those allegations, and does not explain how they satisfy the relevant legal standard. In actuality, no such similarities are present in the SAC, and Wolstenholme's cursory and unsupported mischaracterization of his own pleading need not be credited.

As to his other claims—for vicarious copyright infringement, unfair competition, and intentional infliction of emotional distress—Wolstenholme does not mention them a single time. Wolstenholme therefore forfeits any right to challenge the dismissal of those claims. *Kumar*, 131 F.4th at 751, n.1 ("Appellants have not made any arguments on appeal as to any of their state law claims and have therefore forfeited any appeal of the rulings on those claims.").

An appellant cannot appeal a dismissal order, complain that the dismissal was "premature," but then fail to address any of the deficiencies in his pleading or make any legal argument about the sufficiency of the allegations. *Greenwood v.*

11

*Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief."). This appeal is as frivolous as Wolstenholme's underlying claims, and the Dismissal Order and Judgment should be affirmed by virtue of Wolstenholme's forfeiture of all arguments to the contrary.

> **B.** **Riot's Motion to Dismiss the SAC Was Well-Taken on the Merits and the Dismissal Should be Affirmed.**

Even if Wolstenholme had not forfeited the right to challenge the dismissal of the SAC by failing to raise any legal arguments on appeal, the dismissal should still be affirmed on its merits.

> **1.** **The SAC failed to state a claim for direct copyright infringement.**

To state a claim for copyright infringement, Wolstenholme was required to "plausibly allege two things: (1) that [he] owns a valid copyright in [the works], and (2) that [Defendant] copied protected aspects of [Wolstenholme's works]." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018) (citations omitted). The second prong has two distinct components: "copying" and "unlawful appropriation." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). "In the absence of direct evidence of copying, . . . the plaintiff can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id.* (internal quotations and citation

12

omitted). To prove unlawful appropriation, the Ninth Circuit uses a two-part test consisting of a subjective intrinsic test and an objective extrinsic test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work. *Id.* "Both tests must be satisfied for the works to be deemed substantially similar." *Id.*

### a. Wolstenholme failed to plausibly allege access.

In order to properly plead access in a copyright case, a plaintiff must sufficiently allege "a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Loomis*, 836 F.3d at 995 (internal quotation marks and citation omitted). Access "may not be inferred through mere speculation or conjecture." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

Wolstenholme's allegations of "access" in the SAC are wholly insufficient. Wolstenholme alleged that he submitted his manuscript to various "Literary, Film and Gaming talent agencies," and that he engaged in "wide dissemination via email." 2-SER-75. He elaborated on these mechanisms in what he calls "Exhibit B – Chronology of Wide Dissemination and Access of Bloodborg: The Harvest." 2-SER-92–135. He stated that he "[s]ubmitted Bloodborg to Riot via their online portal for submissions" on April 15, 2020. 2-SER-94. Wolstenholme did not describe this "online portal" in any detail in his SAC and included no evidence of

13

such a submission. Even if one were to credit this allegation, Wolstenholme was required to show a nexus between "the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work." *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1356–59 (C.D. Cal. 1984). Notably, "[b]are corporate receipt . . . without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access." *Loomis*, 836 F.3d at 995–96 (a plaintiff "cannot create a triable issue of access merely by showing 'bare corporate receipt' of her work by an individual who shares a common employer with the alleged copier"). Wolstenholme's conclusory statement that he submitted Bloodborg through an unidentified "online portal," without any specific nexus to the creators of *Arcane*, cannot sustain a claim for copyright infringement.

Beyond that allegation, Wolstenholme included a 10-page list of emails he purportedly sent to various agents, publishers, and other unidentified individuals. 2-SER-94–104. Wolstenholme did not allege any nexus between Riot and any of these alleged recipients.

Nor can Wolstenholme show "widespread dissemination," which "centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis*, 836 F.3d at 997. "Although the Ninth Circuit has not identified a specific threshold for the level of public

14

engagement with a work that constitutes 'wide dissemination,' its precedent indicates that a work's degree of commercial success or notoriety must be substantial." *Woodland v. Hill*, 2022 WL 19250191, at \*3 (C.D. Cal. Dec. 8, 2022). Importantly, "the mere availability of a work online is insufficient to establish widespread dissemination." *Lois v. Levin*, No. 222CV00926SVWADS, 2022 WL 4351968, at \*3 (C.D. Cal. Sept. 16, 2022). "Put differently, that a work has the capacity to reach anyone with an internet connection by virtue of its presence on the worldwide web renders it merely possible, not reasonably possible, that the alleged infringer viewed that work." *Segal v. Segel*, 20-CV-1382-BAS-JLB, 2022 WL 198699, at \*9 (S.D. Cal. Jan. 21, 2022). Wolstenholme's alleged email submissions to various third-party literary agents cannot establish access as a matter of law.

Because Wolstenholme has no plausible allegation that anyone at Riot involved in the creative development of *Arcane* ever had access to his work, he cannot state a claim for copyright infringement as a matter of law.

### b. Wolstenholme failed to plausibly allege copying of protected expression.

Wolstenholme's claim for copyright infringement is also defective because he failed to adequately allege that "the works at issue are substantially similar in their protected elements." *Zella v. E.W. Scripps Co.,* 529 F. Supp. 2d 1124, 1132–

1133 (C.D. Cal. 2007) (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).

Wolstenholme did not attach a copy of his manuscript to the SAC. Instead, in the first part of his SAC before the Prayer for Relief (i.e., the first 11 pages), he made conclusory statements "that characters, plotlines, thematic elements, and narrative structure in ARCANE mirror those found in 'Bloodborg: The Harvest'" and that "the official music video 'Blood Sweat & Tears' by Riot Games, featuring Sheryl Lee Ralph, derives directly from elements of 'Bloodborg: The Harvest.'" 2-SER-51–52 at ¶¶ 4–5. These conclusory statements do not suffice to state a claim for copyright infringement. *See Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635024, at *5 (C.D. Cal. July 11, 2017) (dismissing complaint where plaintiff did not attach the allegedly infringed work, ruling that "the Complaint is filled with conclusory allegations that are not factually specific enough to support Esplanade's claims"); *Evans v. McCoy-Harris*, No. CV178345DMGAGRX, 2019 WL 1002512, at *3 (C.D. Cal. Jan. 4, 2019) (dismissing complaint where plaintiff did not attach allegedly infringed screenplay and did not allege the protectable elements of the infringed works).

Past those initial 11 pages, Wolstenholme included hundreds of pages of meandering discussions analyzing his manuscript (Bloodborg) and Riot's television series (*Arcane*). These discursions confirm that Wolstenholme does not

16

understand what United States copyright law protects and is unable to state a claim as a matter of law.

First and foremost, Wolstenholme did not include any clear articulation of what, exactly, Bloodborg is about and how it supposedly compares to *Arcane*. He did not identify the "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works, as the extrinsic test in the Ninth Circuit requires. *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Instead, he alternated between hyper-granular lists of "similarities" that are unprotectable (e.g., two characters have a red hood, 2-SER-183) or overgeneralizations at such a high level of abstraction as to be irrelevant (both works "feature protagonists who are struggling with internal conflicts and past trauma," 2-SER-67).

For instance, Wolstenholme found similarities in characters based on the fact that "[b]oth characters are shaped by their relationships, particularly the loss of their families, guilt and betrayal, and the weight of protecting those who remain. . . . Trauma is central to both dynamics." 5-SER-1048, 1050 (both characters share "similarities in their trauma, resilience, loyalty, and fight against oppressive

17

forces," but Bloodborg's character has "layers of identity and technological intrigue that make her distinct" from *Arcane*'s character).  But such "[g]eneral plot ideas," like "the fact that both works involve a life struggle of kids fighting insurmountable dangers, . . . are not protected by copyright law."  *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

Under the most charitable reading of Wolstenholme's SAC, he appeared to argue that both works involve "[t]he exploration of the blending of humans and machines (cyborgs, advanced technology) with blood engineering to make Bloodborgs," in a "dystopian smog-filled setting marked by stark class divides," in which characters "struggl[e] with personal trauma" and engage in "rebellion and resistance."  2-SER-70.  Even if that were true of both works, this sort of similarity in a story "[a]t a very high level of generality," cannot support a claim of infringement.  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  "General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind."  *Id.*  (finding two works not substantially similar even though they both involved "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants").  This is all the more true when the level of generality includes supposedly similar themes like: "War is bad"—a direct quotation from the SAC.  2-SER-272.

18

Wolstenholme also repeatedly highlighted *dissimilarities* between the works that undermined any of the comparisons he tried to draw. Throughout his SAC, he referenced a "clear pattern of repurposing from Bloodborg, where the original material has been fragmented, reworded, and layered into *Arcane*'s script, creating an illusion of originality while retaining the same core meaning and character dynamics." 3-SER-333. Wolstenholme was, at most, alleging copying of unprotectable ideas resulting in dissimilar expressive output. *Cavalier*, 297 F.3d at 823 ("Copyright law only protects expression of ideas, not the ideas themselves.").

Beyond these stock concepts and highly generalized themes, Wolstenholme focused on the quintessential "random similarities scattered throughout the works" that the Ninth Circuit has held are insufficient to sustain a claim of infringement. *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). Nearly every page of the SAC is replete with these comparisons of minutiae—and even if they *could* state a claim, the specific similarities are all facially non-protectable, non-original, and not even similar in the first place. The following examples sufficiently demonstrate how far off the mark Wolstenholme's comparisons are:

- Episode 3 of *Arcane* is titled "The Base Violence Necessary for Change" and Bloodborg has dialogue that states "killing is necessary." 2-SER-285– 288.

19

- In *Arcane* "we see Silco's Goons making weapons, preparing for war," and in "Bloodborg, war or battle perpetrations [sic] are also taking place." 3-SER-352.

- In *Arcane*, a character says "I'm on it" and in Bloodborg, a character says "I'm on it like boom sonic." 3-SER-389–390 (Per the SAC: "Key Difference: *Arcane* keeps it short and military-like, while Bloodborg adds slang and energy with 'like boom sonic.'").

- Wolstenholme highlighted *Arcane*'s "trauma narrative," including the fact that *Arcane* shows traumatic flashbacks, which he contended were inspired by his own personal trauma. *See, e.g.*, 3-SER-525–527 ("If Bloodborg's trauma writing techniques are shown, in court, to be unique to the Plaintiff's experiences and creative process, then *Arcane* has crossed a legal and ethical boundary, one that will need to be scrutinized in criminal courts.").

- Wolstenholme claimed that an *Arcane* character's "eye" was "inspired by the Eye of Sauron (Mordor) from The Lord of the Rings" (not Bloodborg), which he claimed "shows a propensity to borrow and swipe stuff." 3-SER-562–563.

- Both works purportedly included "items hanging from wires" in completely different contexts. The discussion of this non-similarity spanned more than ten pages. 3-SER-579–591.

20

- Wolstenholme compared graffiti-art of a smiling monkey face in *Arcane* with graffiti in Bloodborg showing "an army of blue gorillas wearing gas masks and armed with broomsticks." 4-SER-605–614.

- Bloodborg has a character who is "a complex father figure" while *Arcane* has a "repeated loss of father figures." 5-SER-1018.

Wolstenholme included in his SAC numerous comparison charts that, on their face, showed a lack of similarity in whatever he intended to compare.

| ELEMENT | ARCANE – SILCO & ZAUN | BLOODBORG – COWBOY MOMAHAN & NEW KOWLOON |
|---|---|---|
| GOAL | Create an independent nation of Zaun | Become the first King of New Kowloon |
| METHOD | Political manipulation, military control, drug trade | Violence, gang unification, blood harvesting |
| LEADER'S VISION | Freedom from Piltover's rule, self-governance | Dictatorship over all rival factions |
| MEANS OF CONTROL | Shimmer (mutant drug), alliances, ideological loyalty | Blood-based drugs, forced recruitment, warfare |

| ELEMENT | ARCANE – VI & POWDER | BLOODBORG – ROOK & MATTEO/MAC |
|---|---|---|
| OLDER SIBLING ROLE | Vi protects Powder, sees her as too weak for combat | Rook protects her brothers, refusing to let them join her |
| KEY PHRASE | "You're not ready." | "You wouldn't keep up." |
| REASON FOR FLARE | Vi gives Powder a flare to protect her and promise to return | Rook is given flares to avoid signal tracking and for emergencies |
| SYMBOLISM OF THE FLARE | Represents a sisterly bond and a promise | Represents tactical survival and reconnection if needed |
| EVENTUAL USE OF FLARE | Powder/Jinx later lights it up to call Vi | No mention of Rook using the flare in this excerpt |

| ELEMENT | ARCANE – BENZO & SILCO | BLOODBORG – BILL REWAN & CHRIS |
|---|---|---|
| ROLE IN STORY | Shopkeeper, supplier, third brother-in-arms | Military Quartermaster (QM), logistics officer, key veteran figure |
| CONNECTION TO THE BETRAYAL | Vander betrays Silco, leaving him for dead | Dillon James unknowingly injures Chris & Bill in "The Rupture" |
| PHYSICAL INJURY | Silco's eye is damaged, forcing him to inject a serum | Bill's eye dangles from its socket, leading to his reliance on bionic acid |
| AFTERMATH OF BETRAYAL | Silco becomes Zaun's dictator, addicted to injections | Bill is broken but remains a supplier and veteran, Cowboy takes this role. |

*See* 3-SER-369, 3-SER-381, 3-SER-387.

21

Even interpreting the allegations of the SAC liberally and accepting all well-pleaded facts as true, it is clear there is no similarity of protected expression between Bloodborg and *Arcane*. Wolstenholme's account of the "similarities" between the works was focused entirely on unprotectable ideas, irrelevancies, and imagined or contrived similarities. Wolstenholme's SAC did not state a claim for direct copyright infringement, and so the district court's dismissal may be affirmed on that basis as well.

### 2. The SAC failed to state a claim for vicarious copyright infringement.

Wolstenholme also alleged a cause of action for "vicarious copyright infringement." 2-SER-50–52. "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). "A plaintiff must therefore plausibly plead the predicate claim for direct infringement in order to survive a motion to dismiss his vicarious infringement claim." *Al-Bustani v. Alger*, No. C22-5238JLR, 2023 WL 3120747, at *2 (W.D. Wash. Apr. 27, 2023) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

Wolstenholme did not adequately allege any predicate claim for direct infringement. As discussed above, Wolstenholme did not allege any copying of

22

protected expression and therefore could not state a claim for direct infringement as to anyone. In addition, Wolstenholme did not even attempt to allege the specific elements of vicarious liability. The SAC alleged the legal conclusions that Riot "benefited financially from the unauthorized use of Plaintiff's copyright material through partnerships with Netflix, Fortiche Productions SAS, and others," but did not specify how. 2-SER-53 at ¶ 4. It then states that "Defendant had the ability to control and supervise the infringing conduct but failed to prevent it," again without any factual allegations as to how. *Id.* ¶ 5. These bare legal conclusions cannot sustain a claim for vicarious copyright infringement. *See, e.g.*, *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Like the direct infringement claim, this claim failed as a matter of law, and its dismissal should be affirmed.

### 3. The SAC failed to state a claim for unfair competition under Cal. Bus. Code § 17200.

Dismissal of Wolstenholme's state law claim for unfair competition was proper because it is preempted by the Copyright Act and so fails as a matter of law. "A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the Copyright Act. 17 U.S.C. § 301(a). Second, the work involved must fall within the 'subject matter'" of the Copyright

23

Act as set forth in [17 U.S.C. §§ 102 and 103](). *[Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998)]()*.

Wolstenholme alleged that Riot engaged in "unlawful and unfair business practices by misappropriating Plaintiff's copyrighted material for commercial gain." 2-SER-54, at ¶ 7. Other than that single sentence, Wolstenholme did not allege any other conduct as the basis for his unfair competition claim under California law. Because Wolstenholme's "complaint expressly bases his unfair competition claim on rights granted by the Copyright Act," it satisfies the first prong of the preemption analysis. *[Kodadek, 152 F.3d at 1213]()*. As to the second prong, Wolstenholme alleged infringement of a "literary work." 2-SER-51, at ¶ 1. Literary works fall within the scope of the Copyright Act. [17 U.S.C. § 102(a)(1)](). "Thus, both prongs of the preemption analysis are met, and [Wolstenholme's] unfair competition claim is preempted." *[Kodadek, 152 F.3d at 1213]()*. Because this claim is preempted, the district court's dismissal of it should be affirmed.

### 4. The SAC failed to state a claim for intentional infliction of emotional distress.

Wolstenholme alleged that he suffered emotional distress when Riot's "legal representatives responded [to his initial demand in November 2021] with threats of extensive legal fees." 2-SER-104, at ¶ 10. His claim for intentional infliction of emotional distress ("IIED") failed for three independent reasons. First, it is barred by California's two-year statute of limitations because the alleged conduct

24

occurred in 2021, but Plaintiff filed this suit in late 2024.  Second, the claim is barred by California's litigation privilege because the conduct arises from pre-litigation correspondence in connection with contemplated litigation.  Third, the conduct alleged—a routine legal communication—does not meet the high standard for "outrageous conduct" under California law.

Under California law, claims for intentional infliction of emotional distress are subject to a two-year statute of limitations.  *Cal. Civ. Proc. Code § 335.1*.  The statute of limitations begins to run when the plaintiff suffers severe emotional distress as a result of the defendant's allegedly outrageous conduct.  *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 888 (1992); *Soliman v. CVS RX Servs., Inc.*, 570 F. App'x 710, 711–12 (9th Cir. 2014) (affirming dismissal of IIED claim as untimely).  Here, the pre-litigation correspondence which Wolstenholme cited as causing his distress (2-SER-54, at ¶¶ 10–11) was sent on November 28, 2021.  2-SER-42–44.[2]  Wolstenholme did not file this lawsuit until late 2024—nearly three years after the alleged conduct.  *See* 6-SER-1352–1354

---

[2] While Wolstenholme did not attach the correspondence to his SAC, he quoted it directly as forming the basis for his claim (*see* 6-SER-1201–1209) and so the Court may consider it as incorporated by reference.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see, e.g.*, *Royal 4 Sys., Inc. v. RLI Ins. Co.*, No. CV 22-05732-RSWL-RAO, 2022 WL 19263327, at *4 (C.D. Cal. Dec. 9, 2022) (incorporating by reference letters that were "referenced in the Complaint" and formed the basis for the plaintiff's claims).  The district court did not need to reach this issue below, finding that the claim failed for alternative reasons.

(original complaint filed in October 2024).  Because the statute of limitations expired in 2023, Wolstenholme's IIED claim is time-barred.

In addition, the California litigation privilege bars tort claims arising from communications made in connection with judicial proceedings.  Cal. Civ. Code § 47(b).  The privilege applies to communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).  The privilege applies broadly to pre-litigation communications, including correspondence made in anticipation of litigation.  *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 919 (2004) (privilege protects letters "threatening litigation and outlining legal positions").  The letter that formed the basis of Wolstenholme's claim set forth Riot's legal position and warned of the potential legal consequences of pursuing frivolous claims.  2-SER-39–44.  Because the letter was sent in anticipation of litigation, it is protected under the litigation privilege.  To the extent that Wolstenholme alleges that the conduct of Riot's counsel *during* this litigation has caused him emotional harm (*see, e.g.*, 2-SER-55 (referring to "the endless threats to have the cases kicked out before any hearing"), that conduct is protected by the litigation privilege as well.  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1064 (2006) (litigation privilege protects filings made "during the course of judicial

26

proceedings"). Wolstenholme's IIED claim, therefore, is barred as a matter of law, as the district court correctly held.

Lastly, Wolstenholme failed to plausibly allege the elements of the IIED claim. To state a claim for intentional infliction of emotional distress, Wolstenholme must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1609 (2012). Conduct is considered "outrageous" only if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 781 (2013). Actions taken in good faith to assert or defend legal rights are not actionable under California law. *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 888 (1992).

Here, the letter setting out Riot's legal position and advising Wolstenholme of his potential liability for attorney's fees for pursuing a frivolous claim does not rise to the level of "outrageous conduct" as a matter of law. *Moncada*, 221 Cal. App. 4th at 780. Because Wolstenholme did not allege conduct that exceeds "all bounds of that usually tolerated in a civilized society," his IIED claim failed as a matter of law, as the district court correctly held.

27

**C.** **Wolstenholme's Complaints About Discovery and the Litigation Process are Irrelevant and Baseless.**

While entirely failing to address any of the pertinent legal issues on appeal (namely, the deficiencies in the allegations of his SAC), Wolstenholme instead improperly raises a series of new arguments about purported litigation and discovery conduct. None of these have legal or factual merit.

First, he argues that he was "denied discovery" and that the Court "failed to allow even minimal procedural inquiry." Opening Brief at 19. Wolstenholme does not identify any specific discovery to which he was denied access, nor does he claim that he sought and was denied any relief from the district court. But regardless, this Court has repeatedly rejected this argument in the context of a Rule 12(b)(6) motion to dismiss. "The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). As such, any argument "that the district court should not have dismissed [plaintiff's] claims without permitting discovery . . . is unsupported and defies common sense." *Id.*; *see also Arledge v. Boise City Att'y*, No. 22-35358, 2023 WL 4994529, at *1 (9th Cir. Aug. 4, 2023) ("The district court did not err in dismissing [plaintiff's] action without allowing him to engage in discovery."); *Markey v. Bank of Am., N.A.*, 675 F. App'x 790 (9th Cir. 2017) ("The

28

district court did not err in ruling on defendants' motion to dismiss prior to the completion of discovery.").

Second, in a similar vein, Wolstenholme alleges that unnamed whistleblowers "reported the use of Chronodisk to destroy key evidence" and complains that Riot "submitted contested Wayback Machine data without affording Appellant any opportunity to test or challenge the submission." Opening Brief at 20. These allegations are incoherent and lack any citation to anything that was before the district court. The reference to the "Wayback Machine" appears to be a reference to confidential discussions that took place during a Court-ordered Settlement Conference before the Magistrate Judge, which have absolutely no bearing on the district court's ruling on the Motion to Dismiss. Even if Wolstenholme could cite anything to explain what he means by these allegations, at most they would amount to complaints about discovery—which, again, are irrelevant in this procedural posture.

Third, Wolstenholme alleges that the Court did not accommodate his PTSD and dyslexia. Wolstenholme does not explain how these conditions should have been accommodated, nor what impact this alleged failure to accommodate had on this litigation. He does not cite any authority or make any specific argument as to the relevance of his status as a purportedly disabled litigant. Wolstenholme suggests that the district court mistreated him by "treat[ing his] detailed complaint

29

as conclusory." Opening Brief at 20. Wolstenholme was not mistreated; he was given multiple opportunities to amend his complaint and each time failed to allege facts sufficient to state any cause of action.

Fourth, he argues in general terms that the "public interest requires review," suggesting that the dismissal of his claim would set a bad precedent of "normalizing systemic exclusion, content misappropriation, and retaliatory harassment of whistleblowers." *Id.* Again, Wolstenholme cites no authority and no evidence in the record. His personal belief that justice has not been served in his case does not create a "public interest" warranting reversal of the dismissal.

Fifth, he obliquely argues that the district court acted with bias: "The Applicant hates to have to mention this, but this doesn't seem all above board and wonders if Riot's influence, power and money, or political stances had a sway in proceedings, particularly the Settlement Conference concerns." Opening Brief at 21. The insinuation that Riot or the Court engaged in any improper or unethical behavior is offensive and baseless. "Adverse findings do not equate to bias." *United States v. Johnson*, 610 F.3d 1138, 1148 (9th Cir. 2010).

## VII.  CONCLUSION

Wolstenholme failed to raise any legal arguments on appeal, forfeiting his right to challenge the Dismissal Order and Judgment. Even if he had raised any legal arguments, Riot's Motion to Dismiss was well-taken, because Wolstenholme

failed to allege facts sufficient to state any cognizable claims for relief, even after receiving two opportunities to amend his pleadings. The Dismissal Order and Judgment should be affirmed.

DATED: July 28, 2025    MITCHELL SILBERBERG & KNUPP LLP

By: _____
Aaron J. Moss (SBN 190625)
Joshua M. Geller (SBN 295412)
Hannah G. Shepherd (SBN 347611)
Attorneys for Defendant-Appellee Riot
Games, Inc.

31

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO CIRCUIT RULE 32-1

I hereby certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, the enclosed brief is proportionately spaced, has a typeface of 14-point Times New Roman including footnotes, and contains approximately 6,888 words. Counsel relies on the word count of the computer program used to prepare this brief.

DATED: July 28, 2025    MITCHELL SILBERBERG & KNUPP LLP

By: _____
Aaron J. Moss (SBN 190625)
Joshua M. Geller (SBN 295412)
Hannah G. Shepherd (SBN 347611)
Attorneys for Defendant-Appellee Riot Games, Inc.

32