**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

MARC WOLSTENHOLME,

Plaintiff-Appellant,

v.

RIOT GAMES, INC.,

Defendant-Appellee.

No. 25-3163

D.C. No. 2:25-cv-00053-FMO-BFM

**PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

**STATEMENT UNDER FED. R. APP. P. 40(b)(2)**

Appellant seeks both panel rehearing and rehearing en banc.

Panel rehearing is warranted because the memorandum treated Appellant's access allegations as insufficient under Loomis v. Cornish, 836 F.3d 991 (9th Cir. 2016), without separately addressing two materially distinct access routes expressly identified on appeal: the alleged direct Riot Forge route and the Curtis Brown Group professional-intermediary route.

Rehearing en banc is separately warranted because this case presents a recurring question of exceptional importance concerning the intersection of copyright access doctrine and federal pleading standards:

Where a copyright plaintiff pleads identified receipt, relevant professional intermediaries, and a particularized chain toward the accused creative environment, must the plaintiff also plead evidence of the final internal transmission before discovery where the records capable of proving or disproving that transmission are principally within the control of the defendant and intermediaries?

Kamar International, Inc. v. Russ Berrie & Co., 657 F.2d 1059 (9th Cir. 1981), recognizes intermediary access; Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000), recognizes circumstantial access through a particular chain of events; and Loomis rejects mere “bare corporate receipt” while preserving intermediary access where professional dealings provide the necessary nexus.

The unresolved issue lies at the boundary between those principles and Rule 12 plausibility. Without clarification, Loomis's limitation risks becoming a categorical barrier where the final step of a particularized access chain occurs inside a creative enterprise, while corporate receipt alone remains insufficient to unlock discovery.

Appellant therefore expressly requests rehearing en banc to clarify that boundary and provide precedential guidance.

**INTRODUCTION**

The memorandum affirmed dismissal because Appellant "failed to allege facts sufficient to show that Riot Games had access to his copyrighted material."

The access issue, however, was expressly presented.

Riot's Answering Brief acknowledged that Appellant's Opening Brief identified "three access pathways" as "Riot Forge, CBG and wide dissemination." Riot's position was not that those routes had never been identified. Riot argued that Appellant had insufficiently developed why those routes satisfied the governing access standard.

The distinction matters.

Appellant alleged two principal and materially different routes.

First, Appellant alleged direct submission of Bloodborg: The Harvest through Riot Forge in April 2020.

Second, Appellant alleged receipt by Curtis Brown Group ("CBG") and a professional-intermediary route involving CBG, UTA, Riot, and persons performing relevant writing and creative functions.

Exhibits A and B organize those routes visually: Exhibit A addresses the CBG/professional-intermediary route; Exhibit B addresses the alleged Riot Forge/Riot route. They are offered to make the access architecture intelligible and

distinguish material presented below from later corroboration, not to ask this Court to adjudicate later-obtained evidence in the first instance.

The central question is narrow. Appellant does not ask the Court to infer access merely because a corporation received his work. Nor does he seek discovery to search for an access theory never pleaded. He asks whether the access routes actually alleged were sufficiently particularized to cross the Rule 12 plausibility threshold, leaving factual development to determine whether internal transmission occurred.

## I. THE ACCESS ISSUE AND THE PRINCIPAL ACCESS ROUTES WERE

EXPRESSLY PRESENTED

The memorandum invokes Roley v. Google LLC, 40 F.4th 903, 911 (9th Cir. 2022), concerning issues not specifically and distinctly argued in an opening brief and allegations raised for the first time on appeal.

The access issue itself was expressly presented.

Appellant's Opening Brief stated:

“[T]hree access pathways were evidenced in the SAC and Subsequent filings (Riot Forge, CBG and wide dissemination).”

The Opening Brief identified the alleged Riot Forge submission, identified CBG as an access route, challenged Rule 12 dismissal, and challenged resolution before factual development.

Riot understood those arguments. Its Answering Brief quoted the three identified pathways and argued why Riot believed they were legally insufficient.

The dispute therefore was neither invisible to Appellee nor first created in reply.

Appellant does not contend that every factual detail subsequently uncovered was preserved merely because access was raised. Later-developed evidence must be distinguished from the issues and allegations actually presented.

The narrower proposition is decisive: the access issue was preserved; Riot Forge was identified; CBG was identified; the Rule 12 challenge was presented; and the need for factual development was presented.

The memorandum's citation to Roley does not identify which contention it regarded as forfeited. Rehearing is warranted at minimum to clarify that the access issue and the principal Riot Forge and CBG routes were expressly presented and to consider those preserved theories under the governing access standard.

## II. THE PLEADED ACCESS THEORY WAS MATERIALLY MORE PARTICULARIZED THAN BARE CORPORATE RECEIPT

The two principal routes should be analyzed separately because they arise through materially different alleged channels.

### A. The alleged Riot Forge route was a direct route into Riot

Appellant alleged that Bloodborg entered Riot through Riot Forge.

Riot's Answering Brief acknowledges that the SAC alleged Appellant "[s]ubmitted Bloodborg to Riot via their online portal for submissions" in April 2020 (2-SER-94). Riot contended that the allegation nevertheless failed to establish sufficient nexus to Arcane's creators.

That presents a legal sufficiency issue.

But the alleged route is analytically different from receipt by an outside intermediary or unrelated employee. It alleges entrance of the copyrighted work directly into Riot itself.

Exhibit B visually isolates this route. It identifies the alleged April 2020 Riot Forge entrance and separates the externally identifiable submission from the unresolved internal-transmission question.

Appellant does not contend that submission through Riot Forge automatically proves access by an Arcane creator. Its significance is narrower: it identifies a

direct alleged entrance into Riot and isolates the question of what occurred after entry.

That route should not be collapsed without separate analysis into the same category as bare corporate receipt.

**B. The CBG route alleged professional nexus, not possession**
standing alone

The second route began with identified receipt by CBG.

The allegation did not stop at possession.

The district-court materials alleged professional relationships involving CBG, UTA and Riot. Of particular importance, they identified Samuel Jefferson as CBG-represented and as a writing consultant for Riot (Dist. Ct. Dkt. 58 at 769, Page ID 2731), supplying an alleged professional connection between the agency receiving the manuscript and Riot's writing environment.

Exhibit A organizes the CBG/professional-intermediary route and distinguishes the alleged external professional architecture from the unresolved transmission itself.

The exhibit expressly acknowledges the evidentiary limitation: “The exact Bloodborg handling route, if any, remains unproven.”

That limitation is precisely why the distinction matters.

Appellant did not plead:

CBG received Bloodborg; therefore Riot necessarily saw it.

He alleged receipt combined with professional relationships and relevant creative functions leading toward Riot's narrative environment.

Whether Bloodborg actually traversed the alleged route remained an evidentiary question. That is different from concluding that no cognizable route was pleaded.

## III. LOOMIS PRESERVES INTERMEDIARY ACCESS AND MUST BE READ

WITH KAMAR AND THREE BOYS

Appellant does not dispute that access requires more than speculation or conjecture. See Skidmore v. Led Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc); Three Boys, 212 F.3d at 482.

But Loomis does not abolish intermediary access.

Loomis expressly preserves the intermediary principle recognized in Kamar. It explains that evidence that a third party with whom both plaintiff and defendant were dealing possessed the copyrighted work may support access, while requiring sufficient nexus between the intermediary and alleged copier. Loomis, 836 F.3d at 995–96; Kamar, 657 F.2d at 1062.

The distinction is nexus.

Loomis discusses circumstances involving overlapping subject matter and relevant professional functions, including supervision of the accused project, persons operating within a common work unit, and persons contributing creative material. Loomis also cites De Acosta v. Brown, 146 F.2d 408, 410 (2d Cir. 1944), involving submission to a literary agent later consulted by the defendant concerning the accused work. That example illustrates why professional function and subject-matter nexus matter when evaluating intermediary access.

Three Boys supplies the same distinction from another direction. Access may be established circumstantially through a "particular chain of events" connecting the copyrighted work and defendant. 212 F.3d at

482. The prohibition is against speculation and conjecture, not circumstantial proof itself.

These authorities produce a coherent rule: bare corporate receipt without nexus is insufficient, but a particularized intermediary chain involving relevant professional dealings may support access where the facts create a reasonable possibility that the paths of the copyrighted work and alleged copier crossed.

Appellant alleged materially more than unidentified receipt somewhere within a corporation. He alleged a direct submission route through Riot Forge. Separately, he alleged identified CBG receipt together with professional relationships leading toward Riot's narrative environment, including a CBG-represented writer working for Riot.

Whether Bloodborg actually traversed either route remained disputed. But that is different from saying no cognizable route was pleaded.

Exhibits A and B make the distinction visible. They do not replace the governing legal analysis. They organize the two routes to show why each should be assessed under the complete intermediary-access framework rather than reduced to "bare corporate receipt."

## IV. THE MEMORANDUM COLLAPSES PLAUSIBILITY INTO PRE-DISCOVERY

PROOF

Rutman Wine does not authorize discovery to search for a claim absent from the complaint. Appellant seeks no such rule. The antecedent question is whether the pleaded facts already stated a plausible claim of access.

Federal pleading law distinguishes plausibility from evidentiary proof. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007), explains that factual allegations may support a reasonable expectation that discovery will reveal evidence supporting the claim.

The Ninth Circuit applied that distinction in Starr v. Baca, 652 F.3d 1202, 1216–17 (9th Cir. 2011). The pleading standard does not impose a probability requirement. Factual allegations need only plausibly support entitlement to relief.

Nor must a complaint contain every fact ultimately necessary to carry the plaintiff's evidentiary burden. See Ashcroft v. al-Kidd, 580 F.3d 949, 977 (9th Cir. 2009), rev'd on other grounds, 563 U.S. 731 (2011).

Here, Appellant alleged identified receipt of Bloodborg by CBG, alleged direct submission through Riot Forge in April 2020, professional relationships connecting CBG, UTA and Riot, and a CBG-represented writer working for Riot. Copyright law recognizes circumstantial access through particular chains of events and

relevant intermediaries. Three Boys, 212 F.3d at 482; Kamar, 657 F.2d at 1062; Loomis, 836 F.3d at 995–96.

The unresolved fact was the final internal transmission.

Appellant did not seek discovery as a substitute for pleading an access route. He sought factual development after pleading the routes through which transmission allegedly occurred.

That distinction is particularly significant where the remaining details concern internal conduct principally within the opposing party's knowledge. See Nayab v. Capital One Bank (USA), N.A., 942 F.3d 480, 493–94 (9th Cir. 2019).

Appellant does not invoke Nayab to excuse the absence of factual allegations. The external factual predicates were alleged. The unresolved information concerned what occurred internally after the alleged submission and receipt.

Exhibits A and B visually identify this information boundary. They organize the externally identifiable portions of the two alleged routes and distinguish them from the internal transmission question Appellant could not independently resolve. They therefore illustrate why the requested factual development was directed toward testing pleaded routes, not searching for an unidentified theory of access.

Rutman therefore answers a different question.

If a complaint omits an essential element, discovery cannot supply it. Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987).

But where factual allegations plausibly plead the element, Rule 12 does not require the plaintiff already to possess the defendant's internal evidence proving the allegation before factual development may begin.

The proper sequence is:

Plausibly plead access → factual development tests transmission → evidence ultimately proves or disproves access.

Requiring instead:

Plead access → prove internal transmission → obtain factual development collapses plausibility into proof.

Requiring proof of internal transmission as the price of obtaining the factual process through which that transmission could be proved or disproved reverses the ordinary pleading sequence.

## V. EXHIBITS A AND B ILLUSTRATE THE INFORMATION BOUNDARY WITHOUT REPLACING THE APPELLATE RECORD

Exhibits A and B serve a defined and limited purpose.

Exhibit A organizes the CBG/professional-intermediary route.

Exhibit B organizes the alleged direct Riot Forge/Riot route.

Exhibits A and B reorganize the access routes, allegations, relationships, and supporting material presented in this litigation into comprehensive visual maps. Where subsequently obtained material is included, it is expressly identified as subsequent corroboration or particularization of a previously alleged route and is not presented as though it formed part of the original District Court record.

The exhibits make visible a distinction central to both Loomis and Rule 12: what could be observed and alleged externally, and what remained internal to the organizations through which the work allegedly passed.

The externally identifiable components included submission, receipt, dates, organizations, professional functions, personnel, and professional relationships.

The unresolved component was internal transmission.

The types of evidence capable of resolving that question include internal submission records, communications, repository histories, audit trails, permissions, forwarding records, access histories, searches, exports, and custodial material.

Appellant does not ask this Court to treat later-obtained material contained in Exhibits A and B as though it formed part of the District Court record, nor to adjudicate newly obtained evidence in the first instance.

The distinction is deliberate.

The alleged access theories came first. Subsequent evidence further particularizes or corroborates those routes.

To the extent the Court declines to consider subsequently obtained material when deciding rehearing, the preserved allegations and appellate arguments remain independently before it.

The later material nevertheless has an explanatory function. It illustrates why the alleged routes were capable of objective factual investigation and why the missing internal transmission evidence presented a genuine information-asymmetry problem rather than a request for speculative discovery.

## VI. REHEARING EN BANC IS EXPRESSLY REQUESTED TO CLARIFY NINTH CIRCUIT LAW AND PROVIDE PRECEDENTIAL GUIDANCE

Appellant expressly seeks rehearing en banc because this case presents a recurring question of exceptional importance which existing Ninth Circuit access precedent does not squarely resolve at the Rule 12 stage.

The question is:

Where a copyright plaintiff pleads identified receipt, relevant professional intermediaries, and a particularized chain toward the accused creative environment, does Loomis require the plaintiff also to plead evidence of the final internal transmission before discovery when the records capable of proving or disproving that transmission are principally within the control of the defendant and intermediaries?

Appellant respectfully submits that the Court en banc should answer and clarify this question.

The complexity illustrated by Exhibits A and B reveals a broader doctrinal problem. Modern creative industries may place literary agents, media-rights personnel, talent representatives, digital submission systems, production companies, writers, executives, and corporate creative divisions between an author and an accused creator.

An outside copyright holder may be capable of identifying:

submission date → recipient → agency or corporate entrance → relevant professional intermediary → relationship with defendant → creative environment while having no lawful means before discovery to determine:

who internally opened the work → where it was stored → whether it was forwarded → who accessed it → whether it was searched → whether it was discussed → whether it entered a project repository → whether it reached creative personnel.

If Loomis is read to require proof of that final internal handoff before discovery whenever an accused work was developed inside a large organization, “bare corporate receipt” risks becoming a categorical barrier even where a plaintiff has pleaded materially more than corporate receipt.

The opposite rule would also be unsound. Receipt somewhere within a corporation, without relevant nexus or a particularized route, cannot by itself establish plausible access or justify discovery.

This case presents the boundary between those positions. A workable rule preserves both principles:

Bare corporate receipt without relevant nexus remains insufficient.

But where sufficiently particularized external facts plausibly allege a professional intermediary chain or direct corporate entrance toward the accused creative

environment, Rule 12 should not require the plaintiff additionally to possess the defendant's internal proof of final transmission before factual development.
Such clarification would harmonize Kamar, Three Boys, Loomis, and this Court's pleading jurisprudence, while giving district courts a usable standard for distinguishing speculative theories from particularized access chains. Appellant seeks en banc rehearing to obtain precedential clarification of this recurring and exceptionally important question.

## VII. THE BROADER ACCESS-TO-JUSTICE CONSEQUENCES WARRANT CONSIDERATION

There is a broader access-to-justice concern underlying the question presented here.

Modern copyright litigation can involve an overwhelming asymmetry of information, technological capability, access to evidence, and financial resources. An individual creator may know when and where his work was submitted, who received it, and the professional route through which it could have travelled, while the evidence capable of proving or disproving final transmission remains exclusively or principally within sophisticated corporate systems.

When access doctrine is combined with a pleading rule effectively requiring the creator to establish internal transmission before factual development, this asymmetry risks becoming practically dispositive. The party controlling the evidence may rely upon the claimant's inability to obtain the very evidence principally within the opposing party's or intermediary's possession.

The law should not permit control of the evidence to become the mechanism by which factual scrutiny of the evidence is avoided.

This problem is particularly consequential for pro se litigants, litigants with disabilities affecting their ability to navigate exceptionally complex proceedings, and individual creators without the financial, legal, investigative, and technological resources available to multinational corporate defendants. Appellant does not

contend disability or disparity in wealth changes the substantive elements of copyright infringement, nor does he seek a reduced pleading standard. The concern is whether an otherwise neutral procedural standard becomes practically exclusionary where one party possesses vastly greater resources and exclusive control of information the other is effectively required to plead.

Creative industries depend upon individual writers, artists, performers, and other creators, many with little institutional bargaining power. Wealth, influence, professional access, data, and technological capability can become concentrated within powerful organizations. Doctrines screening speculative claims should not unintentionally insulate institutional actors merely because they control the evidence required for scrutiny.

This concern has additional significance because creative industries have a documented history of serious misuse of concentrated professional power. Abuses concealed for years demonstrate the dangers created when powerful individuals and institutions operate within closed professional networks in which less powerful participants have limited ability to obtain information, challenge institutional conduct, or secure meaningful scrutiny. Appellant does not suggest those historical abuses establish infringement here. They demonstrate a broader institutional lesson: concentration of information, influence, wealth, and professional control

can permit misconduct to remain undiscovered where meaningful mechanisms of accountability are unavailable to outsiders.

Copyright law should not inadvertently recreate that imbalance for individual creators.

The problem may become more consequential as creative industries adopt increasingly sophisticated digital retention, indexing, search, artificial-intelligence, and content-retrieval technologies. Modern information systems can potentially retain, locate, retrieve, compare, route, or make creative material available without the simple person-to-person handoff historically imagined by access cases.

Appellant does not allege from technological capability alone that any particular system was used to copy Bloodborg. Capability is not proof of use. The point is prospective: as creative information systems become increasingly complex and opaque to outsiders, requiring a creator to plead the internal operation of systems only the defendant or intermediary can inspect risks making lawful factual inquiry impossible.

The danger is amplified across literary agencies, talent agencies, rights departments, production companies, corporate creative divisions, outside writers, international affiliates, and digital repositories. A creator may identify submission, recipient, professional route, relevant personnel, and accused creative environment

while remaining unable to identify who internally opened, routed, retrieved, searched, discussed, exported, or otherwise accessed the material.

The law should protect corporations from speculative claims while remaining capable of protecting creators who plead sufficiently particularized facts identifying a plausible route of access. Otherwise, accumulated wealth, informational control, technological sophistication, and institutional complexity risk becoming practical shields against judicial scrutiny.

The United States' commitment to equal justice and the rule of law does not require courts to favor the individual over the corporation. It requires rules capable of operating fairly upon both.

Appellant therefore asks for no exemption from Loomis, no presumption against Riot, and no automatic entitlement to discovery. He asks for a workable boundary. Bare corporate receipt without relevant nexus remains insufficient. But where sufficiently particularized external facts identify a plausible professional-intermediary chain or direct corporate entrance toward the accused creative environment, the plaintiff should not additionally be required to possess inaccessible internal corporate evidence merely to obtain the factual process capable of confirming or disproving the alleged transmission.

That approach protects defendants against fishing expeditions while preventing control of evidence, wealth, technology, disability, or institutional status from

becoming an unintended barrier to meaningful access to justice. It preserves the principle at the heart of this Petition: plausibility determines whether factual development may proceed; factual development determines whether the alleged internal transmission can ultimately be proved.

## VIII. SUBSEQUENT CORROBORATION DID NOT CREATE THE ACCESS

THEORY

Subsequent evidence did not originate Appellant's access theories.

The alleged CBG and Riot Forge routes already existed. The Opening Brief expressly identified "Riot Forge, CBG and wide dissemination," a point Riot itself quoted and answered.

Later material concerning the detailed CBG, UTA, ICM and Riot professional architecture, individual representatives and corporate functions should not be treated as though the panel overlooked material which was never before it.

Its proper significance is narrower.

Subsequent evidence particularizes and corroborates access routes already alleged. It demonstrates why those routes were capable of factual investigation. It does not retrospectively alter the appellate record or convert later-obtained material into original-record evidence.

That distinction protects the preserved legal question from being confused with later factual development.

The Court can therefore grant rehearing without adjudicating the later evidence. The question remains whether the allegations actually presented plausibly alleged access under Kamar, Three Boys and Loomis, and whether dismissal effectively required Appellant to establish internal transmission before factual development.

## IX. ALTERNATIVELY, REMAND WITH LEAVE TO AMEND IS APPROPRIATE IF GREATER PARTICULARITY WAS REQUIRED

If the Court concludes the pleaded routes required additional factual particularity, affirmance with prejudice is not the only available disposition.

Appellant proceeded pro se and sought to identify the access routes available to him without possession of the internal records capable of resolving transmission.

The subsequently developed material demonstrates that greater factual particularity can be alleged concerning the professional architecture surrounding the previously identified routes.

Accordingly, if this Court concludes the existing allegations did not cross the Rule 12 threshold, Appellant respectfully requests remand with leave to amend unless amendment would be futile.

This alternative relief does not require the Court to adjudicate newly obtained evidence. It preserves the District Court's role in evaluating an amended pleading in the first instance.

**CONCLUSION**

Appellant respectfully requests panel rehearing because the memorandum overlooked or misapprehended the significance of the distinct access routes alleged below and expressly identified in the Opening Brief, and because the memorandum's treatment of discovery collapses the distinction between plausibly pleading access and proving the final internal transmission.

Appellant separately and expressly requests rehearing en banc because this case presents an exceptionally important and recurring question concerning the boundary between bare corporate receipt and particularized intermediary access at the Rule 12(b)(6) stage.

Appellant asks the Court en banc to clarify Ninth Circuit law and provide precedential guidance concerning whether a copyright plaintiff who has pleaded sufficiently particularized external facts supporting a reasonable possibility of access must additionally plead proof of the final internal transmission before discovery where the evidence capable of establishing or disproving that transmission lies principally within the defendant's or intermediaries' control.

Upon rehearing, Appellant respectfully requests withdrawal of the memorandum disposition, vacatur of the judgment, and remand for further proceedings.

Alternatively, if the Court concludes greater factual particularity was required, Appellant respectfully requests remand with leave to amend.

Respectfully submitted,
MARC WOLSTENHOLME
Plaintiff-Appellant, Pro Se
Date: September 10, 2026

## TABLE OF AUTHORITIES

### Cases

Ashcroft v. al-Kidd,
580 F.3d 949, 977 (9th Cir. 2009),
rev'd on other grounds, 563 U.S. 731 (2011)
Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 556 (2007)
De Acosta v. Brown,
146 F.2d 408, 410 (2d Cir. 1944)
Kamar International, Inc. v. Russ Berrie & Co.,
657 F.2d 1059, 1062 (9th Cir. 1981)
Loomis v. Cornish,
836 F.3d 991, 995–96 (9th Cir. 2016)
Nayab v. Capital One Bank (USA), N.A.,
942 F.3d 480, 493–94 (9th Cir. 2019)
Roley v. Google LLC,
40 F.4th 903, 911 (9th Cir. 2022)
Rutman Wine Co. v. E. & J. Gallo Winery,
829 F.2d 729, 738 (9th Cir. 1987)
Skidmore v. Led Zeppelin,
952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)
Starr v. Baca,
652 F.3d 1202, 1216–17 (9th Cir. 2011)
Three Boys Music Corp. v. Bolton,
212 F.3d 477, 482 (9th Cir. 2000)

### Rules

Fed. R. Civ. P. 8
Fed. R. Civ. P. 12(b)(6)

Fed. R. App. P. 32
Fed. R. App. P. 40
Ninth Cir. R. 40-1

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

9th Cir. Case No. 25-3163

I am the self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached Petition for Panel Rehearing and Rehearing En Banc is prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and contains the following number of words:

**3,945 words**

Signature: s/Marc Wolstenholme
Date: September 10, 2026