# EXHIBIT B

# ALLEGED ACCESS PIPELINES AND SUPPORTING EVIDENCE

**MARC WOLSTENHOLME, Plaintiff-Appellant**
**v.**
**RIOT GAMES, INC., Defendant-Appellee**

**Ninth Circuit No. 25-3163 • D.C. No. 2:25-cv-00053-FMO-BFM**

Riot Forge direct submission route • Historical portal evidence • Supporting documentary evidence • Evidentiary assessment

# UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

## MARC WOLSTENHOLME

*Plaintiff-Appellant*

v.

## RIOT GAMES, INC.,

*Defendant-Appellee*

## NINTH CIRCUIT APPEAL NO. 25-3163

Nature of Suit: Copyright

Appeal from the United States District Court for the Central District of California

**District Court Case No. 2:25-cv-00053-FMO-BFM**

### ACCESS PIPELINE EVIDENCE

Visual exhibit illustrating the pleaded access theory

# PURPOSE OF EXHIBIT B: RIOT FORGE DIRECT ACCESS PIPELINE

Why Plaintiff has presented the alleged access architecture in visual form

**Plaintiff prepared this exhibit to provide the Court with a clear visual representation of the complex web of alleged access surrounding Bloodborg: The Harvest. The purpose is to allow each asserted route, intermediary and evidentiary link to be followed sequentially, instead of requiring the Court to reconstruct the alleged pipeline from dispersed written material.**

## CLARITY & ACCESSIBILITY

Plaintiff is severely dyslexic. A visual structure assists him in presenting the access allegations accurately and coherently, and is intended to assist the Court in seeing the chronology and relationships with greater clarity.

## INTERCONNECTED ROUTES

The alleged access routes are unusually interconnected. Plaintiff alleges a separate direct Riot Forge entrance point and the alleged route from Riot Forge into Riot Games and the Arcane development environment.

## PRESERVATION CONCERNS

Plaintiff further alleges suspected digital intrusion and disappearance or deletion of case-relevant evidence, together with unresolved Riot-controlled submission and access records. A visual evidentiary pipeline allows the surviving records and alleged connections to be preserved and presented in an organized form.

**PURPOSE: Exhibit A is intended as a visual aid to the alleged access theory, identifying where Bloodborg was allegedly submitted to Riot Forge, the direct route Plaintiff alleges was available thereafter, the evidence supporting each stage, and the points at which targeted discovery is required to determine what occurred inside systems and organizations outside Plaintiff’s control.**

# APRIL 2020: BLOODBORG ENTERS THE ALLEGED ACCESS NETWORK

Evidence of submission, evidentiary gaps, and preservation concerns alleged in the record

## PLEADED STARTING POINT

The SAC alleged that in April 2020 Plaintiff submitted Bloodborg: The Harvest to Riot Forge, Curtis Brown Group, and other literary agencies.

### BLOODBORG: THE HARVEST

Completed manuscript
Approx. 95,000 words
Submission campaign began April 2020

### PARALLEL ROUTE CURTIS BROWN GROUP

A separate Curtis Brown Group intermediary route is addressed independently in Exhibit A.

STATUS: SEPARATE ACCESS ROUTE

### 15 & 19 APRIL 2020 RIOT FORGE

Filed chronology identifies two Riot Forge submissions.
Rule 26(f) account: first a portion, then the whole work.

STATUS: SUBMISSION ALLEGED AND PRESERVED IN COURT RECORD

### 15 APRIL 2020 OTHER LITERARY SUBMISSIONS

Timestamped contemporaneous email evidence shows Bloodborg was being circulated as a substantial full manuscript package on the same date.

STATUS: CORROBORATES APRIL 2020 SUBMISSION PRACTICE

## WHAT THE RECORD SHOWS, AND WHAT REMAINED OUTSIDE PLAINTIFF'S CONTROL

### KNOWN / PRESERVED EVIDENCE

- CBG submission and response records
- Plaintiff's April 2020 submission chronology
- Riot Forge submission allegations preserved in filed materials
- Contemporaneous third-party manuscript submission records

### MISSING RIOT-CONTROLLED EVIDENCE

No discovery produced the decisive internal records showing receipt, opening, retention, forwarding, routing, searching, access logs, or subsequent handling of the Riot Forge submissions.

### DIGITAL-INTRUSION / PRESERVATION CONCERN

Plaintiff reported later compromise of the Yahoo account used for submission correspondence and recovery/deletion issues affecting relevant email evidence. Attribution and causation were not established.

### THE UNRESOLVED ACCESS QUESTION

**Who received, opened, retained, forwarded, searched, routed or accessed Bloodborg after the alleged April 2020 Riot Forge submissions?**

Record references for final exhibit: Document 58 submission chronology and declarations; Rule 26(f) access account; preserved CBG acknowledgement/review correspondence; contemporaneous April 15, 2020 submission records.

## ACCESS ROUTE 2

# RIOT FORGE

OVERVIEW OF THE ALLEGED DIRECT ACCESS ROUTE

**BLOODBORG → RIOT FORGE → RIOT GAMES → ARCANE**

### FIRST STAGE: Bloodborg → Riot Forge

15 & 19 April 2020 submissions • contemporaneous notebook record • pleaded direct-access route

The following slides establish the Riot Forge entrance point as a separate direct route. They then trace the surviving submission evidence, the historical Riot Forge portal, subsequent capacity evidence, and the unresolved Riot-controlled records relevant to receipt, retention, routing and internal access.

# APRIL 2020: BLOODBORG WAS ALSO SUBMITTED TO RIOT FORGE

Parallel submission route supported by the filed court record and surviving contemporaneous physical notes

## 1. FILED COURT RECORD

**"In April 2020, Plaintiff submitted the manuscript of 'Bloodborg: The Harvest' to Riot Forge, Curtis Brown Group, and others..."**

### SUBMISSION CHRONOLOGY

- The filed materials identify Riot Forge submissions on 15 and 19 April 2020.
- The Rule 26(f) material describes Riot Forge as receiving the work twice, first a portion and then the whole work.
- Riot Forge therefore formed a separately pleaded direct access route alongside Curtis Brown Group.

## 2. SURVIVING PHYSICAL EVIDENCE

**Plaintiff retains the original handwritten Bloodborg notebook containing contemporaneous notes recording the Riot Forge submission.**

### INDEPENDENT OF THE EMAIL RECORD

The notebook is surviving physical evidence maintained separately from the electronic submission records.

**The contemporaneous notebook record is reproduced on the following slide, allowing the Court to inspect the handwritten Riot Forge entries directly.**

**FOUNDATION: Filed allegation of April 2020 Riot Forge submission → filed 15/19 April chronology → surviving handwritten Bloodborg notebook → direct Riot Forge access route alleged before the courts.**

# CONTEMPORANEOUS NOTEBOOK RECORD OF APRIL 2020 RIOT FORGE SUBMISSIONS AND CBG BRIGHTFOUNT PORTAL

**2021: PLAINTIFF SEARCHES FOR RIOT FORGE RECEIPT**
Following the release of *Arcane* in 2021, Plaintiff contacted Riot Games concerning the similarities he identified between *Arcane* and *Bloodborg: The Harvest*.
Plaintiff subsequently searched his email records for the original Riot Forge submission receipt but was unable to locate one.

The surviving contemporaneous *Bloodborg* notebook independently records submissions to Riot Forge on 15 and 19 April 2020, preserving a physical record of those submissions despite the absence of an email receipt.

**This notebook entry predates the release of *Arcane* and Plaintiff's subsequent dispute with Riot Games.**

**ORIGINAL RIOT FORGE RECEIPT / TICKET**
The original 2020 Riot Forge receipt or ticket has never been located in Plaintiff's surviving email records. The submission is therefore evidenced by the contemporaneous notebook and filed chronology, while the decisive electronic receipt, intake, routing and access data remain within Riot-controlled technology and custodial systems.



# 2023 RIOT FORGE PORTAL TEST: LONG-FORM MATERIAL ACCEPTED

Plaintiff retained the resulting Riot submission ticket and later placed the evidence before the federal courts

## PURPOSE OF THE 2023 TEST

**In 2023, Plaintiff returned to Riot's online submission system and deliberately tested its capacity using substantial long-form written material, including complete online digital-book material.**

### RESULT

**The portal accepted and processed the submission and generated a Riot submission ticket.**

Plaintiff preserved the resulting ticket and supporting documentation as evidence concerning the functionality and capacity of the Riot Forge submission system.

## PRESERVED RIOT RECORD

SUBMISSION TICKET

**#88552815**

RIOT FORGE SUPPORT

**21 JUNE 2023**

Support acknowledgement of Plaintiff's request

### PRESERVED DOCUMENTATION

**Ticket logs, screenshots and supporting records retained.**

**COURT RECORD: the 2023 Riot Forge portal test and preserved submission-ticket material were subsequently included in Plaintiff's federal court evidence concerning the Riot Forge submission system.**

# RIOT FORGE 2023 LONG-FORM SUBMISSION TICKET TEST

08/09/2026, 15:56 Inbox emails (1 unread) - marc.wolstenholme@yahoo.co.uk - Yahoo Mail

yahoo!mail Search your mail Subscribe Home M

Inbox Sent Drafts Deleted i... Spam Folders ...

Back

## [Riot Games Player Support] Inbox

Riot Forge Support Site
To: me · Wed, 21 Jun 2023 at 21:13

##- Please type your reply above this line -##

Thanks for contacting our Player Support Team! We received your request (#88552815) .

Looks like a response will take a little longer than normal due to a high volume of requests, sit tight and one of our specialists will answer you as soon as they can. Try not to bump your ticket unless you have additional information that we could use to help you since bumping your ticket repeatedly will increase your wait time.

If you were logged in to the support site when creating your ticket you can use the following link below to be taken directly to it:

http://support-riotforge.riotgames.com/hc/requests/88552815

This email is a service from Riot Games - Riot Forge . Sent by Riot Games.

[2K11WG-JDNVR]

Starred Contacts More

AD

# RIOT FORGE SUPPORT SITE: 2023 LONG-FORM INPUT TEST

Later Riot Forge support system tested after publication of Riot Forge games

## THE 2023 TEST

**In June 2023, Plaintiff tested Riot Forge's then-existing Support Site by entering substantial long-form written material into its request system.**

### RIOT CONFIRMED RECEIPT

**The system accepted the material, generated ticket #88552815, and Riot emailed Plaintiff: “We received your request (#88552815).”**

The surviving Riot email identifies the sender as “Riot Forge Support Site,” dates the acknowledgement 21 June 2023, and provides a direct Riot Forge support-ticket link.

**SURVIVING RECORD: Riot email + ticket number + direct Riot Forge support URL**

## TWO DIFFERENT RIOT FORGE SYSTEMS

### APRIL 2020

**Earlier Riot Forge submission/input portal through which Plaintiff alleges Bloodborg was submitted on 15 and 19 April 2020.**

≠

### JUNE 2023

**Later Riot Forge Support Site, used after games had been published. Plaintiff used this separate system for the long-form input test that produced ticket #88552815.**

**The 2023 test is distinct from the original 2020 Bloodborg submission interface.**

**CHRONOLOGY: April 2020 Riot Forge submission route → June 2023 separate Riot Forge Support Site long-form test → Riot-generated ticket #88552815.**

# 24 APRIL 2025 SETTLEMENT CONFERENCE: RIOT FORGE PORTAL CAPACITY DISPUTE

Contemporaneous email evidence fixes the portal issue to the conference itself

## DURING THE CONFERENCE

**Plaintiff states that the historical Riot Forge portal was opened before the Magistrate Judge and that he demonstrated live that the MESSAGE field could expand.**

The dispute concerned whether the April 2020 Riot Forge input field was capable of receiving the substantial Bloodborg material Plaintiff alleged he submitted.

## IMMEDIATELY AFTERWARDS

**Josh Geller emailed Plaintiff at 21:29:**

**"Further to our conversation before the Magistrate Judge just now, please see the attached screenshot."**

The attached Page Vault material preserved a Wayback capture of the Riot Forge contact form.

## WHAT THE CAPTURE SHOWS

- **Riot Forge CONTACT US form**
- **MESSAGE field**
- **Visible resize handle in the lower-right corner**
- **No stated character or word limit displayed on the captured page**

**Capture date: 26 April 2020, after the alleged 15 and 19 April submissions.**

**EVIDENTIARY POINT: the portal-capacity dispute was contemporaneously documented as part of the 24 April 2025 conference discussion.**

*PROCEDURAL STATUS: The settlement-conference / Riot Forge portal controversy was subsequently raised in filed District Court materials and in Plaintiff's Ninth Circuit briefing. Any filing remains subject to applicable confidentiality, sealing, and appellate-record requirements.*

# CONTEMPORANEOUS REBUTTAL: BLOODBORG ENTERED INTO SUBMISSION FIELD

Plaintiff's same-day email record preserves his response to the portal-capacity dispute

## PLAINTIFF'S CONTEMPORANEOUS EMAIL

**Following the conference discussion, Plaintiff emailed Josh Geller, Aaron and BFM:**

> **“Please see all of Bloodborg in a submission portal which the judge opened.”**

The email therefore records, at the time of the dispute, Plaintiff's position that the manuscript-capacity proposition had been demonstrated using the portal opened during the conference.

## EVIDENCE CHAIN

1. **Portal opened during conference**
2. **Plaintiff says expandable field demonstrated live**
3. **Geller sends Wayback screenshot immediately after discussion**
4. **Plaintiff sends contemporaneous rebuttal stating all of Bloodborg was placed into a submission portal**
5. **Separate video demonstration is preserved**

**This is a contemporaneous dispute record, not a later reconstruction.**

**CORE POINT: Plaintiff challenged the restrictive portal-capacity interpretation at the conference itself and preserved the challenge in contemporaneous email communications.**

*PROCEDURAL STATUS: The settlement-conference / Riot Forge portal controversy was subsequently raised in filed District Court materials and in Plaintiff's Ninth Circuit briefing. Any filing remains subject to applicable confidentiality, sealing, and appellate-record requirements.*

# RIOT COUNSEL'S CONTEMPORANEOUS WAYBACK / PAGE VAULT MATERIAL

**24 April 2025 • Material transmitted by Josh Geller immediately following the settlement-conference discussion before the Magistrate Judge**

**1. PAGE VAULT CAPTURE METADATA**




**2. ARCHIVED RIOT FORGE CONTACT FORM**




**3. EXPANDABLE MESSAGE FIELD / RESIZE HANDLE**



**4. GELLER EMAIL TRANSMITTING THE SCREENSHOT**




**EVIDENTIARY SEQUENCE: Page Vault metadata identifies the archived Riot Forge page; the capture shows the contact form and MESSAGE field; the enlarged view shows the resize handle; Geller's 21:29 email ties the attachment to the conference discussion moments earlier.**

*PROCEDURAL STATUS: The settlement-conference / Riot Forge portal controversy was subsequently raised in filed District Court materials and in Plaintiff's Ninth Circuit briefing. Any filing remains subject to applicable confidentiality, sealing, and appellate-record requirements.*

# CONTEMPORANEOUS REBUTTAL: COMPLETE BLOODBORG MANUSCRIPT ENTERED INTO RIOT FORGE PORTAL

**25 April 2025 • Emails and video sent within hours of the settlement-conference portal dispute**

**00:02 • IMMEDIATE EMAIL REBUTTAL**




**00:25 • VIDEO TRANSMITTED TO GELLER / BFM / AARON**




**PRESERVED VIDEO FRAME • BLOODBORG IN PORTAL**




**Contemporaneous statement: "In this video you can see that the whole of Bloodborg fits in the submissions portal."**

**EVIDENTIARY POINT: Plaintiff preserved and transmitted his portal-capacity rebuttal essentially immediately after the conference, including an approximately eight-second video demonstration.**

*PROCEDURAL STATUS: The settlement-conference / Riot Forge portal controversy was subsequently raised in filed District Court materials and in Plaintiff's Ninth Circuit briefing. Any filing remains subject to applicable confidentiality, sealing, and appellate-record requirements.*

# EVIDENTIARY ASSESSMENT: RIOT FORGE SUBMISSION & DIRECT ACCESS ROUTE

Assessment of the complete Riot Forge evidentiary line presented in the preceding slides

## WHAT THE RIOT FORGE EVIDENCE SHOWS

**CONTEMPORANEOUS RECORD**

Plaintiff's handwritten records, created during his 2019/2020 submission rounds, record Bloodborg submissions to Riot Forge on 15 and 19 April 2020.

**PLEADED BEFORE THE COURTS**

The Riot Forge submission route was expressly alleged in Plaintiff's federal court filings and supporting chronology.

**HISTORICAL 2020 PORTAL**

The preserved April 2020 Wayback capture shows Riot Forge's CONTACT US form with an expandable MESSAGE field and no displayed word or character limit.

**SETTLEMENT-CONFERENCE TEST**

On 24 April 2025, the historical portal was addressed before the Magistrate Judge. Plaintiff states he demonstrated live that the MESSAGE field expanded.

**IMMEDIATE DOCUMENTED REBUTTAL**

Within hours, Plaintiff emailed Riot's counsel and BFM and transmitted a video demonstrating the complete Bloodborg manuscript entered into the portal field.

**LATER RIOT FORGE TEST**

A separate 2023 long-form test of Riot Forge's later Support Site generated Riot ticket #88552815 and a Riot email confirming receipt.

## COMBINED ASSESSMENT

**Taken together, the evidence supports Plaintiff's pleaded account of a direct Riot Forge submission route in April 2020.**

**The contemporaneous notebook places the submissions in the original 2019/2020 submission campaign. The historical portal evidence and contemporaneous 2025 demonstration support the technical feasibility of manuscript-length input through the expandable field.**

## ACCESS & DISCOVERY SIGNIFICANCE

**The remaining evidence of what Riot received, retained, reviewed, routed or internally accessed lies principally within Riot's submission systems, records and custodial data.**

**EVIDENTIARY CONCLUSION: contemporaneous submission evidence + pleaded Riot Forge route + historical portal capacity + immediate rebuttal evidence support a plausible direct-access pathway warranting targeted discovery.**

*PROCEDURAL STATUS: The settlement-conference / Riot Forge portal controversy was subsequently raised in filed District Court materials and in Plaintiff's Ninth Circuit briefing. Any filing remains subject to applicable confidentiality, sealing, and appellate-record requirements.*

# RIOT FORGE PORTAL EVIDENCE: PROCEDURAL & EVIDENTIARY CONCERNS

Plaintiff's stated concerns arising from the 24 April 2025 settlement-conference portal dispute

**At the outset of the confidential settlement conference, Riot voluntarily introduced the historical Wayback / Page Vault portal material. Plaintiff contends the presentation immediately diverted the conference into an extended dispute with the Magistrate Judge over the portal's alleged functionality and capacity, consuming approximately two hours and substantially the entire substantive discussion between Plaintiff and the Judge.**

## OBSERVABLE / DOCUMENTED POINTS

**VOLUNTARY INTRODUCTION**

Riot was not compelled to produce this historical portal material. Plaintiff states Riot introduced it at the beginning of the settlement conference.

**VISIBLE PORTAL FUNCTION**

The archived Riot Forge portal visibly provides an expandable MESSAGE box and displays no stated word or character limit.

**IMMEDIATE REBUTTAL**

Plaintiff subsequently demonstrated and preserved on video the complete Bloodborg manuscript entered into the field, then transmitted the demonstration to Riot's counsel and BFM within hours.

**UNDERLYING SYSTEM RECORDS**

Plaintiff contends Riot controlled the underlying systems through which the original submissions were made and was positioned to identify its own submission, retention, routing and access records.

## PLAINTIFF'S PROCEDURAL CONCERN

**DIVERSION OF CONFERENCE**

Plaintiff viewed the portal dispute as a diversion which prevented meaningful settlement discussion from developing after the issue was introduced at the outset.

**DISPUTED CHARACTERIZATION**

Plaintiff contends the characterization advanced during the conference was inconsistent with the portal's visible expandable function and his contemporaneous manuscript-capacity demonstration.

**UNRESOLVED EVIDENCE**

The conference did not determine what Riot actually received, retained, reviewed, routed or internally accessed. Plaintiff remained without discovery into those records.

**2023 EVIDENCE**

Plaintiff also relies on the later Riot Forge long-form test and Riot-generated ticket #88552815, which he contends has never been substantively reconciled with the asserted portal limitation.

**APPEARANCE OF FAIRNESS: Plaintiff contends the combination of an unrequested evidentiary presentation at the outset of a confidential settlement conference, an extended judicial dispute over its contested characterization, the absence of discovery into Riot's superior underlying records, and continued denial of discovery could reasonably raise a question concerning the appearance of impartiality. Plaintiff submits the circumstances warrant scrutiny on the complete record.**

*PROCEDURAL STATUS: The settlement-conference / Riot Forge portal controversy was subsequently raised in filed District Court materials and in Plaintiff's Ninth Circuit briefing. Any filing remains subject to applicable confidentiality, sealing, and appellate-record requirements.*

# ROUTE B: ALLEGED RIOT FORGE → RIOT / ARCANE PIPELINE THEN

Document 58 only • filed 23 February 2025 • later strengthening evidence excluded




## WHAT DOCUMENT 58 ALREADY PLACED BEFORE THE DISTRICT COURT

A direct April 2020 Riot Forge submission route; alleged receipt through Riot Games; identified Riot / Arcane development figures; the Arcane restart and story-development chronology; Monica Macer's narrative-development role; Jane Chung Hoffacker's statements concerning submitted material, agents and writers' room staffing; and Amanda Overton within the Arcane writing environment. Later-discovered evidence strengthening these nodes is intentionally excluded.

PURPOSE: This slide isolates the fuller Riot Forge route alleged in Document 58. It is separate from the CBG / UTA intermediary route and is intended to show what the District Court already had before later corroborative investigation.

EXHIBIT B

# GREG STREET: THE INTERNAL CROSSOVER BETWEEN RIOT FORGE AND ARCANE

Subsequent first-party evidence materially strengthens a Riot node already identified in the filed access theory: Street's own account places Riot Forge, television / film and Arcane within the professional sphere of the same senior IP & Entertainment executive.

### RIOT FORGE

Street later stated he helped create Riot Forge and described announcing it with Leanne Loombe. The historical Forge material describes a publisher built to work with external developers and expand League stories.

### IP & ENTERTAINMENT

Street's documented Riot progression included creative / narrative leadership and VP IP & Entertainment during the relevant 2019–2020 period. His later account describes taking over the initiative which became Riot's entertainment branch.

### ARCANE / TV & FILM

Street's own later account says TV and film remained part of the initiative and separately states: "I love Arcane (I worked on Arcane!)." His career account places Arcane and Riot Forge within the same executive portfolio.

### THE CROSSOVER

## BLOODBORG → RIOT FORGE → GREG STREET / IP & ENTERTAINMENT → ARCANE ENVIRONMENT

**ADDITIONAL EXECUTIVE SCOPE: Street's January 2024 account says he took over the initiative which became Riot's entertainment branch, managed its budget, kept television / film within the initiative, helped create Riot Forge, and worked on Arcane. In December 2020 he then announced his new role leading Riot's League-universe MMO project.**

**EVIDENTIARY SIGNIFICANCE: the alleged direct route no longer depends upon two anonymous Riot divisions merely sharing a corporate parent. Riot Forge and Arcane occupied the documented professional sphere of the same senior entertainment executive during the relevant period.**

Sources: Document 58 / filed access theory; Greg Street Riot Forge eulogy (Jan. 23, 2024); historical Riot Forge materials. Later Street evidence is subsequent corroboration.

# WHAT DOCUMENT 58 ALREADY PLACED BEFORE THE DISTRICT COURT

The later Street evidence particularises an access architecture already pleaded below. It should be separated from later corroboration, not presented as a newly invented access theory.

### DIRECT RIOT FORGE ROUTE

Document 58 alleged Bloodborg entered Riot Forge in April 2020 and treated Forge as a direct route into Riot's creative environment.

### SAMUEL JEFFERSON

Doc. 58 p. 769 / Page ID 2731 identified Jefferson as CBG-represented and a writing consultant for Riot, expressly describing a "direct bridge" between Riot and the agency receiving the manuscript.

### JANE CHUNG HOFFACKER

Doc. 58 pp. 927–934 records Hoffacker discussing failed greenlight attempts, writers-room development, reading submitted scripts, working with agents and hiring scriptwriters / writers-room personnel.

### LINKE / YEE / RESTART

The Bridging the Rift chronology was used to allege restart / reworking, outside showrunner guidance and continuing story development. Linke and Yee were central to that pleaded chronology.

### MONICA MACER

Doc. 58 pp. 840–841 / Page IDs 2802–03 placed Macer after the restart / reworking discussion as outside showrunner expertise brought into the developing project.

### AMANDA OVERTON

Doc. 58 pp. 935–936 / Page IDs 2897–98 discussed Overton's script, interview, viewing the pilot and her role in changing / developing the story.

**RECORD POINT: Document 58 already alleged the Riot Forge entrance point and identified Riot / Arcane creative personnel, external material, writers-room staffing and continuing development. Later evidence strengthens the nodes and their professional connections.**

Record references from the District-Court Access Matrix prepared from Document 58.

# SAMUEL JEFFERSON: A SEPARATE CBG → RIOT PROFESSIONAL BRIDGE

Jefferson is important because this connection was already pleaded below. Later research identifies Camilla Young as his CBG Theatre, Film & Television representative, further particularising the route.

## BEFORE THE DISTRICT COURT

Document 58 p. 769 / Page ID 2731 identified Samuel Jefferson as represented by Curtis Brown Group and as a writing consultant for Riot. The filing expressly characterised the relationship as a "direct bridge" between Riot and the agency receiving Bloodborg.

## SUBSEQUENT PARTICULARISATION

Later evidence identifies Camilla Young within CBG's Theatre, Film & Television operation as Jefferson's representative. This adds a named screen-representation function to the CBG→Jefferson→Riot route. The evidence presently does not establish Jefferson communicated with Street about Bloodborg.

**CURTIS BROWN GROUP → CAMILLA YOUNG → SAMUEL JEFFERSON → RIOT GAMES**

**CUMULATIVE SIGNIFICANCE: the direct Forge route and the Jefferson route are independent professional pathways into Riot. They should converge only at the Riot creative environment unless discovery establishes communications between the individuals.**

Document 58 p. 769 / Page ID 2731; subsequent Camilla Young / CBG representation evidence.

# THE 2023 RIOT FORGE TICKET: LATER CAPACITY EVIDENCE, NOT THE 2020 INTERFACE

The preserved 2023 test is useful because Riot itself generated a receipt for substantial long-form input. It must remain clearly distinguished from the separate April 2020 Riot Forge portal.

### 21 JUNE 2023

Plaintiff tested Riot Forge's later Support Site with substantial long-form written material. Riot generated ticket #88552815 and emailed: "We received your request (#88552815)."

### WHAT IT SUPPORTS

The surviving Riot email, ticket number and direct Riot Forge support link document a later Riot Forge-branded system accepting and processing substantial written input.

### WHAT IT DOES NOT PROVE

The 2023 Support Site was a different system from the alleged April 2020 submission interface. The ticket therefore does not independently prove Riot received Bloodborg in 2020.

### WHY IT REMAINS RELEVANT

The later test rebuts any broad proposition that Riot Forge systems were inherently incapable of receiving substantial written input and reinforces the need for the actual 2020 submission, retention and access records. Those records remain the direct evidence capable of resolving receipt and internal handling.

**DISCOVERY TARGET: Riot-controlled submission logs, ticketing / intake records, retained message content, repository data, routing, user access, exports, deletion / retention events and custodial records for the April 2020 Forge submissions.**

Preserved Riot Forge Support ticket #88552815, June 21, 2023; Exhibit B existing slides B-8 to B-10.

# STREET AND THE 2020 NARRATIVE RE-SCOPE: FILED ALLEGATION AND LATER SUPPORT

Plaintiff's filed and later-presented materials identify a mid-2020 narrative re-scope as relevant to the post-access development chronology. The underlying Riot records would identify the authorship, approval chain and communications surrounding the change.

## FILED / LATER-PRESENTED MATERIAL

Plaintiff's later RICO and supplemental materials cite an SREcon-EMEA presentation, "Scaling Narrative Ops at Riot Games," as quoting Street: "We approved a narrative re-scope this summer that puts the Piltover–Zaun conflict front and centre." Plaintiff relies on this as support for a material 2020 change after the April submission.

## WHY STREET MATTERS TO THE ALLEGED CHANGE

Independent Street evidence places him across Riot Forge and Arcane / TV-film during the relevant period. If the quoted re-scope evidence is authenticated, Street is therefore a particularly important custodian for the decision-making, review and communication records surrounding the alleged 2020 change.

## LINK TO DOCUMENT 58

Document 58 already alleged continuing rewriting / restart activity and challenged Riot's pre-access completion chronology.

## AUTHENTICATION QUESTION

Obtain the original presentation, speaker identity, source files, date metadata and the underlying Riot material from which the Street quotation was drawn.

## TARGETED RECORDS

Street, Linke, Yee, narrative-operations and entertainment communications concerning summer 2020 story scope, Piltover / Zaun, character arcs and project review.

**COURT-SAFE INFERENCE: the Street evidence makes the alleged post-access re-scope a concrete discovery issue. It should not be presented as a judicial finding or as independently authenticated proof of copying.**

Sources: Plaintiff's supplemental / RICO materials; Document 58 chronology allegations; Street first-party portfolio evidence.

# SHANTI BLEES / CREATIVE-INSIGHTS AND PLAYER-RESEARCH EVIDENCE

Plaintiff's later RICO materials identify Shanti Blees and allege emotional-resonance / player-research testing relevant to trauma-based narrative development. The present source set does not independently authenticate the asserted testing or connect it directly to Bloodborg.

## WHAT THE MATERIALS SAY

Later RICO materials identify Blees as a former Riot Director of Creative Insights and allege her area involved player research, narrative testing and emotional-resonance analysis. They further allege emotionally charged narrative beats were tested.

## ALLEGED NARRATIVE SIGNIFICANCE

Plaintiff alleges trauma-based material became more prominent after the 2020 re-scope and contends player-research / emotional-testing functions may be relevant to understanding how those later story choices were evaluated.

## EVIDENTIARY STATUS

These propositions presently rest on Plaintiff's later materials and reported internal / whistleblower accounts. They should be labelled allegations and used to identify discovery targets, not asserted as established proof of access or copying.

## DISCOVERY QUESTION

What player-research, creative-insights, narrative-testing or audience-response work was performed on Arcane during the 2020 re-scope and subsequent development; who requested it; what story material was tested; what reports were generated; and which Riot executives / Arcane personnel received the results?

**EVIDENTIARY ROLE: this material identifies a separate creative-insights and player-research strand relevant to the 2020 development chronology and the Riot records sought by Plaintiff.**

Source status: later RICO materials and reported whistleblower / internal-source allegations. Shanti Blees is the name located in the uploaded materials.

# WHISTLEBLOWER MATERIAL NAMING STREET: PRESERVATION AND DISCOVERY EVIDENCE

Previously received whistleblower material contains serious allegations naming Greg ?Ghostcrawler? Street. Because authentication and personal knowledge remain unresolved, it should be segregated from the independently documented Forge / Arcane crossover.

## ALLEGATIONS LOCATED IN THE FILES

Plaintiff?s RICO / supplemental materials preserve and report whistleblower claims concerning Street, including alleged hacking / IP theft and separate claims concerning evidence destruction or relocation during litigation. The materials also report alleged Chronodisk wiping and movement of Fortiche equipment / data.

## DOCUMENTED CORE AND LATER ALLEGATIONS

Street’s own account independently connects him to Riot Forge, TV / film and Arcane.

The whistleblower material adds a separate preservation and discovery issue concerning original messages, devices, data locations, litigation holds and access records.

## PRESERVATION

Identify original messages, headers, attachments, sender basis of knowledge and chain of custody.

## CORROBORATION

Compare allegations against Riot / Fortiche asset records, litigation holds, device inventories, cloud migrations and access logs.

## COURT USE

Label as whistleblower allegations unless authenticated. Do not state hacking, wiping or fabrication as established fact.

**STRUCTURAL POINT: Street’s first-party Forge / Arcane crossover stands independently.** The whistleblower allegations identify an additional preservation and discovery layer.

Sources: RICO complaint materials; supplemental brief materials preserving the whistleblower allegations.
Authentication remains unresolved.

# RIOT FORGE → STREET → ARCANE: CUMULATIVE ACCESS ASSESSMENT

The direct Riot Forge route is materially more particularised when the historical portal evidence, Street's first-party account, the pleaded Arcane development environment and later corroborative evidence are considered together.

### ENTRANCE POINT

15 & 19 April 2020 Riot Forge submissions were alleged in the filed record and preserved in Plaintiff's contemporaneous notebook.

### INTERNAL CROSSOVER

Street later states he helped create Riot Forge, kept TV / film within the entertainment initiative and worked on Arcane.

### ARCANE ENVIRONMENT

Document 58 identified Linke, Yee, Macer, Hoffacker, Overton, submitted scripts / manuscripts, agents, writers-room staffing and continuing story development.

### ADDITIONAL RIOT-FACING ROUTE

Document 58 separately identified CBG-represented Samuel Jefferson as a Riot writing consultant, creating another pleaded professional bridge into Riot. Later evidence identifies his CBG TFTV representative.

### THE REMAINING FACTUAL QUESTION

Which Riot personnel received, retained, opened, searched, routed, discussed or surfaced the April 2020 Forge submissions, and did any such material reach Street's entertainment organisation or Arcane personnel during the continuing development period?

**NARROW CONCLUSION: the direct route now identifies an alleged submission entrance, a senior executive whose documented sphere crossed Forge and Arcane, named Arcane development personnel, and specific internal records capable of confirming or disproving transmission.**

This assessment distinguishes filed allegations from later corroboration and does not assert Street personally viewed Bloodborg without internal evidence.

# ACCESS LAW: THE RIOT FORGE ROUTE IS MORE THAN AN UNIDENTIFIED CORPORATE RECEIPT

The relevant comparison is the particularity of the alleged chain. Plaintiff identifies a direct Riot entrance point, an internal executive crossover and the creative environment in which the accused work continued to develop.

### LOOMIS v. CORNISH

Loomis rejects access based only on bare receipt somewhere within a common employer. It focuses on whether there is a meaningful nexus and whether it was reasonably possible for the paths of the work and alleged infringer to cross.

### KAMAR INTERNATIONAL

Kamar recognizes circumstantial access where a common intermediary dealing with both sides possessed the plaintiff's work. The Forge route identifies Riot itself as the alleged recipient and Street as a documented crossover between Forge and Arcane.

### THREE BOYS MUSIC

Three Boys permits access through a "particular chain of events." Plaintiff contends the Forge submission, Street crossover, continuing Arcane development and identified personnel supply a concrete chain requiring factual testing.

### WHAT DISCOVERY WOULD DECIDE

The unresolved link is no longer "someone at Riot might have seen it." The question is whether the April 2020 Forge material moved through the identified Riot entertainment / creative architecture during Arcane's continuing development. Riot's submission, messaging, repository and custodial records can answer that question.

**LEGAL POINT: Plaintiff relies on a named entrance point and particularised internal route, then seeks the records needed to establish or refute the final transmission step.**

Authorities: Loomis v. Cornish, 836 F.3d 991, 995–96; Kamar Int'l, Inc. v. Russ Berrie & Co., 657 F.2d 1059, 1062; Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481–82.

# EXHIBIT B CLOSE: THE DIRECT RIOT FORGE ACCESS MAP

Exhibit B isolates the Riot-controlled route. It does not depend on the CBG / UTA intermediary chain in Exhibit A, although the two routes may ultimately converge within Riot's creative environment.

**BLOODBORG**

15 & 19 Apr. 2020
alleged submissions

→

**RIOT FORGE**

Historical external
input route

→

**GREG STREET**

IP & Entertainment
Forge + Arcane crossover

→

**RIOT / ARCANE**

Linke • Yee • Macer
Hoffacker • Overton

→

**INTERNAL RECORDS**

Receipt • routing • search
access • communications

**CORROBORATIVE LAYERS**

2023 Riot ticket; historical portal capacity; Street first-party account; Jefferson bridge; alleged 2020 re-scope; whistleblower / preservation material each labelled according to evidentiary status.

**UNRESOLVED CORE**

The precise internal handling of the April 2020 submissions remains within Riot-controlled records. Exhibit B identifies the custodians, systems, period and professional environment for targeted discovery.

**FINAL EXHIBIT B POINT: the alleged route proceeds from a specific Riot Forge entrance into an identified Riot entertainment structure which encompassed Arcane. The remaining transmission issue is narrow, record-based and testable.**

# DIGITAL-INTRUSION AND PRESERVATION CONCERN

The missing 2020 Riot Forge receipt sits within a wider preservation issue already raised by Plaintiff

### SURVIVING EVIDENCE

The April 2020 Riot Forge route is preserved through Plaintiff's contemporaneous handwritten notebook, filed submission chronology, Rule 26(f) account and later portal-capacity evidence. The original Riot Forge receipt or ticket has never been located.

### EMAIL-ACCOUNT COMPROMISE

Plaintiff reported later compromise of the Yahoo account used for submission correspondence, together with recovery and deletion problems affecting case-relevant email evidence. Plaintiff relies on this as a preservation concern. Attribution remains a separate evidentiary question.

### RIOT-CONTROLLED RECORDS

The electronic intake record is principally a Riot-side question: server logs, submission content, timestamps, ticket or form identifiers, routing, repositories, user access, search histories, exports, retention events and custodial records can establish what occurred after submission.

### EVIDENTIARY SIGNIFICANCE

The absence of Plaintiff's original receipt does not identify what happened inside Riot's systems. It narrows the discovery issue. Plaintiff has preserved an independent contemporaneous physical record of the April 2020 submissions, while the electronic records capable of confirming receipt and internal handling are held within Riot-controlled technology. The alleged digital intrusion is presented as a preservation issue, not as proof of who accessed or altered the account.

Sources: Plaintiff's filed chronology and preservation allegations; contemporaneous Bloodborg notebook; Exhibit B portal evidence.

# RIOT'S SECURITY / HACKER-RESEARCH PROGRAMS AND VANGUARD CONTR

Public evidence establishes sophisticated internal security capability and paid engagement with external security researchers

### PAID HACKER / RESEARCHER PROGRAM

Riot publicly stated in 2017 that it pays security researchers to identify vulnerabilities, had paid researchers more than $10,000 for serious exploits, and actively recruited security engineers, including people able to write code and work as hackers.

### HACKERONE / BUG BOUNTIES

In April 2020 Riot stated its HackerOne program had operated for six years and had paid almost $2 million in bounties. Riot announced a special Vanguard vulnerability scope with higher rewards.

### VANGUARD / KERNEL ACCESS

Vanguard generated public privacy and security controversy because its anti-cheat driver operates in kernel mode and starts at system boot. Riot publicly defended the architecture and said the driver itself did not collect or send computer information back to Riot.

### RELEVANCE TO EXHIBIT B

This evidence establishes Riot's substantial cybersecurity, vulnerability-research and anti-cheat capabilities. It does not establish Riot hacked Plaintiff. Plaintiff presents it only as context when requesting preservation and production of Riot-controlled security logs, account-access records, internal investigations, submission-system records and any records concerning reported compromise of case-relevant accounts or data.

Sources: Riot Games, "Why We Pay Hackers to Break Us" (Nov. 6, 2017); Riot Security Team, "A Message About Vanguard" (Apr. 17, 2020).

# GREG STREET: FORGE, ARCANE, ENTERTAINMENT BUDGET AND THE MMO

Street's own public accounts place him across the Riot divisions most relevant to the alleged direct route

## RIOT FORGE

Street said he helped create Riot Forge with Leanne Loombe. Contemporary 2019 coverage identified him as Riot's Vice President of IP & Entertainment discussing Forge's strategy and external-development model.

## ARCANE / TV & FILM

Street later wrote that he took over the initiative which became Riot's entertainment branch, kept television and film within it, and stated: "I love Arcane (I worked on Arcane!)."

## BUDGET / EXECUTIVE CONTROL

In the same account Street described conditions for taking over the entertainment initiative, including managing its budget. This places him at an executive decision point across IP development and entertainment resources.

## MMO LEAD

In December 2020 Street announced his new Riot role was to "kick off" a large League-universe game, later confirmed as the MMO. His progression therefore runs from IP & Entertainment, Forge and Arcane into leadership of another major Runeterra project.

## ACCESS SIGNIFICANCE

The alleged Riot Forge route therefore reaches a named senior executive whose documented professional sphere crossed Forge, entertainment, Arcane and later the MMO. This materially particularises the internal Riot node beyond unidentified corporate receipt.

Sources: Greg Street Riot Forge eulogy (Jan. 23, 2024); PCGamesN Riot Forge interview (2019); Street MMO announcement / contemporaneous reporting (Dec. 2020).

# RIOT'S 2023–2024 PRODUCT RESET: FOUNDER RE-ENGAGEMENT, FORGE CL

Subsequent corporate events show major restructuring across the same entertainment and Runeterra portfolio

### MERRILL RE-ENGAGEMENT

Marc Merrill said he never fully left Riot and re-engaged operationally where major projects were at risk, including helping get Arcane "out the door." In November 2023 Riot appointed him Chief Product Officer over broader product strategy, games, R&D and entertainment alignment.

### RIOT FORGE SUNSET

On 22 January 2024 Riot announced about 530 layoffs, approximately 11% of staff, saying some significant investments had not paid off as expected and costs had become unsustainable. Riot simultaneously announced it would sunset Riot Forge.

### MMO DIRECTION RESET

On 20 March 2024 Merrill announced Riot had reset the MMO's direction and would go dark for likely several years. The MMO originally announced under Street therefore underwent a major leadership and development reset after Street's departure.

### ARCANE / FIVE-SEASON REPORTING CONTROVERSY

2024 reporting described an internal five-season budget conversation and generated claims Arcane had been cut from a longer plan. Merrill, Christian Linke and Alex Yee publicly disputed the interpretation, stating Arcane's Piltover/Zaun story was written for two seasons and the five-season discussion concerned broader development funding. Season 2's pacing also drew public criticism, while Linke disputed claims the show had been corporately rushed. Exhibit B records the chronology as a disputed public account, not as proof Arcane was cancelled after two seasons.

Sources: Riot Games CPO announcement (Nov. 29, 2023); Riot 2024 workforce/Forge announcement (Jan. 22, 2024); Merrill MMO reset statement (Mar. 20, 2024); 2024 Linke/Yee/Merrill interviews on Arcane season planning.

# ARCANE COST AND PROFITABILITY: PUBLIC REPORTING v. MERRILL'S ACCOUNT

The public record contains materially different descriptions of Arcane's economics

### REPORTED $250 MILLION

2024 media reporting widely repeated an approximately $250 million figure for Arcane's two seasons, describing it as an unusually expensive animated production. Riot did not confirm the reported production figure at the time.

### MERRILL: FIGURE INCLUDED MARKETING

Merrill later challenged the headline figure, stating the $250 million number included marketing and that the actual creation budget was "significantly less," giving a rough range of approximately 60–75% of the headline estimate.

### PAX WEST 2026: PROFITABILITY CLAIM

At PAX West on 4 September 2026, contemporaneous public circulation of Merrill's remarks reported him describing Arcane as profitable and disputing narratives that the series had been an economic failure. The underlying event recording should accompany any evidentiary use of the statement.

### EVIDENTIARY POINT

The economic narrative surrounding Arcane changed materially across public reporting. Earlier coverage focused on a reported $250 million total and questions over direct profitability; Merrill later disputed the headline cost and publicly described the project as profitable. For Exhibit B, the significance is limited to the reliability and evolution of Riot's public chronology and business account. The statements do not independently prove access or copying.

Sources: 2024 reporting on Arcane budget; Merrill interview disputing $250m production figure; PAX West 2026 public recording / contemporaneous coverage of Merrill remarks.

# EXHIBIT B CLOSE:
# DIRECT RIOT FORGE ROUTE AND RIOT-CONTROLLED RECORDS

The expanded record identifies the entrance point, executive crossover, preservation issue and records capable of resolving transmission

### BLOODBORG
15 & 19 Apr. 2020 alleged Riot Forge submissions; contemporaneous notebook.

### RIOT FORGE
Historical external input route; original electronic ticket not located.

### GREG STREET
Forge creator / IP & Entertainment / Arcane / later MMO leadership.

### ARCANE
Named creators, writers, producers and continuing development chronology.

### INTERNAL DATA
Receipt, routing, search, access, communications, retention and security logs.

### PRESERVATION LAYER
Plaintiff reports the original 2020 Riot Forge receipt has never been located and separately alleges later compromise of the Yahoo account used for submission correspondence. Riot's own internal submission and security systems therefore remain central sources for resolving receipt and handling.

### CUMULATIVE POINT
Exhibit B proceeds from a specific alleged Riot Forge entrance into an identified executive structure spanning Forge, IP & Entertainment and Arcane. Later corporate, security and preservation evidence identifies the custodians and systems capable of testing the final transmission step.

# GOVERNING ACCESS LAW: THE RIOT FORGE ROUTE

Plaintiff contends the alleged route satisfies the Ninth Circuit's particular-chain-of-events framework and extends beyond bare corporate receipt.

### THREE BOYS MUSIC CORP. v. BOLTON

212 F.3d 477, 482 (9th Cir. 2000)

Access may be established circumstantially through a "particular chain of events" linking the plaintiff's work and the defendant. The chain must establish a reasonable possibility of access, not speculation or conjecture.

### LOOMIS v. CORNISH

836 F.3d 991, 995–96 (9th Cir. 2016)

Loomis rejects access resting only on bare corporate receipt. It recognizes intermediary principles where the evidence supplies a meaningful nexus. The inquiry is whether it was reasonably possible for the paths of the work and alleged infringer to cross.

### KAMAR INTERNATIONAL v. RUSS BERRIE

657 F.2d 1059, 1062 (9th Cir. 1981)

The Ninth Circuit recognizes circumstantial access through an intermediary dealing with both sides and possessing the plaintiff's work. Loomis expressly discusses this intermediary principle.

### APPLICATION TO EXHIBIT B

Plaintiff identifies considerably more than unidentified receipt somewhere within Riot Games:

BLOODBORG → RIOT FORGE → RIOT GAMES / IP & ENTERTAINMENT → GREG STREET → ARCANE DEVELOPMENT ENVIRONMENT

The route identifies the alleged 15 and 19 April 2020 submissions, a contemporaneous physical record, the historical Riot Forge input system, a named senior executive whose documented sphere crossed Forge and Arcane, named Arcane development personnel, a separate CBG → Samuel Jefferson → Riot professional bridge, and specific Riot-controlled records capable of resolving internal transmission.

**LEGAL POSITION: Under Three Boys, Kamar and Loomis, Plaintiff contends the alleged route constitutes a sufficiently particularised chain for the remaining transmission question to be tested through discovery.**

# EXHIBIT B: CUMULATIVE EVIDENTIARY ASSESSMENT

The direct Riot Forge route is assessed cumulatively, while preserving the distinction between surviving evidence, filed allegations and later corroboration.

### 1. IDENTIFIED ENTRANCE POINT

Plaintiff alleged Bloodborg submissions to Riot Forge on 15 and 19 April 2020. The original electronic receipt has never been located. A contemporaneous handwritten notebook and the filed chronology preserve the alleged submissions.

### 2. IDENTIFIED INPUT MECHANISM

The archived Riot Forge portal contains an expandable MESSAGE field with no displayed word or character limit. Plaintiff later preserved a manuscript-capacity demonstration. The separate 2023 Support Site test generated Riot ticket #88552815.

### 3. NAMED INTERNAL CROSSOVER

Greg Street's own subsequent account places him across Riot Forge, Riot's entertainment initiative, television / film, budget responsibility and Arcane. This particularises a named internal Riot nexus beyond unidentified corporate receipt.

### 4. ARCANE DEVELOPMENT ENVIRONMENT

Document 58 identified Christian Linke, Alex Yee, Monica Macer, Jane Chung Hoffacker and Amanda Overton within the alleged development route, together with continuing story development, writers-room activity, outside writers and agents. Samuel Jefferson supplied a separately pleaded professional bridge into Riot.

### 5. TESTABLE INTERNAL RECORD QUESTION

The remaining question is whether the April 2020 Forge material was received, retained, opened, searched, routed, surfaced or communicated through the identified Riot environment. Riot-controlled submission logs, repositories, access histories, communications, searches, exports and custodial data can confirm or refute that transmission.

### CUMULATIVE ROUTE

**SPECIFIC SUBMISSION → SPECIFIC RIOT ENTRANCE → NAMED INTERNAL CROSSOVER → IDENTIFIED CREATIVE ENVIRONMENT → IDENTIFIABLE INTERNAL RECORDS**

**OVERALL ASSESSMENT: Exhibit B particularises the access route already alleged below. It supplies names, functions, professional crossovers and documentary sources bearing directly upon whether the paths of Bloodborg and the Arcane development environment could reasonably have crossed. Plaintiff identifies the route with sufficient specificity for Riot's internal records to confirm or refute the remaining transmission step.**

# CUMULATIVE RECORD, INFORMATION ASYMMETRY AND THE MODERN ACCESS PROBLEM

Plaintiff respectfully submits that the access question should be assessed against the complete alleged evidentiary circumstances and the realities of modern corporate information systems.

### WIDER ALLEGED EVIDENTIARY CIRCUMSTANCES

Plaintiff alleges digital intrusion; deletion or disappearance of relevant evidence; disputed preservation practices; litigation abuse; fabricated or inaccurate development timelines; concealment of access routes; disputed presentation and interpretation of Wayback evidence; and representations concerning access and chronology which Plaintiff contends are contradicted by subsequently obtained evidence.

These allegations sit alongside the extensive similarities Plaintiff identified between Bloodborg and Arcane Season One across characters, narrative structure, scenes, dialogue, relationships, visual concepts and chronology.

### THE INFORMATION ASYMMETRY

Plaintiff cannot independently reconstruct Riot's internal electronic history. Evidence concerning receipt, retention, indexing, searching, routing, forwarding, repository activity, communications and subsequent internal access resides principally within systems controlled by Riot and associated custodians.

Plaintiff contends it would be inequitable and practically impossible to require proof of the final internal transmission step while withholding access to the records capable of establishing or refuting it.

### MODERN TECHNOLOGY AND ACCESS

Plaintiff respectfully submits that traditional access doctrine requires clarification when applied to modern multinational creative enterprises. Contemporary systems can involve centralized repositories, global digital access, automated retention, metadata indexing, semantic retrieval, AI-assisted systems, cloud infrastructure and electronic movement of material between personnel, departments and jurisdictions.

Older physical or linear transmission assumptions may not capture how information can now be retained, discovered and surfaced.

### QUESTION OF EXCEPTIONAL IMPORTANCE

**How can a copyright plaintiff plausibly establish internal access where the defendant exclusively controls the digital systems capable of proving the final transmission step, particularly where the plaintiff has already identified specific submission points, professional intermediaries, internal crossovers, continuing development and substantial alleged similarities?**

Plaintiff respectfully submits that the complexity of the alleged access architecture, technological information asymmetry, alleged evidentiary and litigation conduct, and volume of similarity evidence warrant reconsideration and clarification of how existing access doctrine applies to modern digital, AI-assisted and globally integrated corporate environments.

**Plaintiff respectfully submits that proof uniquely contained within a defendant's internal systems should not become the prerequisite for obtaining the records capable of supplying that proof.**

# DECLARATION OF M. WOLSTENHOLME

In support of Exhibit B: Alleged Access Pipelines and Supporting Evidence

I am the Plaintiff-Appellant in Wolstenholme v. Riot Games, Inc., Ninth Circuit No. 25-3163. I have personal knowledge of the submissions, correspondence, records and litigation materials created, sent, received or preserved by me and identified in this exhibit.

Exhibit B has been prepared to organise and present the alleged direct Riot Forge access route and supporting evidence concerning Bloodborg: The Harvest. Where the exhibit relies upon third-party publications, corporate statements, archived materials, professional records or subsequently obtained material, the source basis is identified within the relevant slides.

To the best of my knowledge, the screenshots, notebook records, correspondence and other materials reproduced from my own accounts and files are true and accurate copies of the materials preserved by me. The descriptions of my submissions, correspondence, preservation history and actions are true and correct to the best of my knowledge and recollection.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: 9 September 2026

Signature: M. Wolstenholme

**M. Wolstenholme**

Plaintiff-Appellant