**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
**MARC WOLSTENHOLME,**
Plaintiff-Appellant,
v.
**RIOT GAMES, INC.,**
Defendant-Appellee.
**No. 25-3163**

# APPELLANT'S OBJECTION TO APPELLEE RIOT GAMES, INC.'S BILL OF COSTS

Appellant Marc Wolstenholme, proceeding pro se and in forma pauperis, respectfully objects to Appellee Riot Games, Inc.'s Bill of Costs filed September 11, 2026, and requests that the Court deny the requested $452.10 in its entirety. Alternatively, Appellant requests that any award be limited strictly to reproduction expenses Riot demonstrates were actually incurred, necessarily produced, and taxable under Federal Rule of Appellate Procedure 39 and Ninth Circuit Rule 39-1. Riot seeks $428.70 for three copies of 1,429 pages of Excerpts of Record and $23.40 for six copies of its 39-page principal brief.

An award would be inequitable in the extraordinary circumstances of this litigation. Appellant is an indigent individual litigating pro se against a multinational commercial corporation represented by specialist counsel. More importantly, this appeal did not follow discovery and an evidentiary determination establishing that Riot lacked access to Appellant's copyrighted work. The action was dismissed at the pleading stage. The central disputes concerning access,

chronology, the April 2020 submissions, the historical Riot Forge submission mechanism, archived web evidence, and the alleged routes through which Appellant's manuscript could have reached persons associated with the accused production were never tested through ordinary discovery.

Appellant's timely petition for panel rehearing and rehearing en banc remains pending and directly challenges the disposition of the access issue without factual development.

Against this history, Appellant respectfully submits that requiring him to reimburse Riot for the costs of defending the resulting appeal would compound the procedural and financial burden which the appeal itself sought to remedy.

**THE PRESENT DISPOSITION DOES NOT NECESSARILY MARK THE END OF THE PROCEEDINGS**

Appellant further respectfully submits that taxation of costs should not proceed on the assumption that the present panel disposition represents the final resolution of every issue arising from this litigation. Appellant has already timely petitioned for panel rehearing and rehearing en banc, and those proceedings remain pending.

If rehearing is denied, Appellant intends to continue pursuing every lawful and procedurally available avenue of review or relief supported by the evidence and applicable rules. Those avenues may include a petition for a writ of certiorari to the Supreme Court of the United States; any properly available district-court relief

based upon genuinely new evidence, extraordinary circumstances, or other legally sufficient grounds; appropriate procedures for preservation or perpetuation of evidence where authorized; and separate claims arising from independently actionable conduct where the elements, jurisdictional requirements, and applicable limitation periods can be established.

Appellant is also investigating evidence which he contends may bear upon separate potential claims concerning an alleged broader pattern of conduct, including potential civil RICO claims. Any such action would have to stand upon its own jurisdictional and substantive requirements and would not constitute a means of relitigating the copyright judgment.

Likewise, Appellant has raised serious concerns regarding conduct occurring during the history of this litigation. To the extent subsequent investigation establishes independently actionable litigation misconduct by any participant, Appellant reserves the right to pursue whatever remedies are lawfully available in the appropriate forum. Appellant does not ask this Court, through the present costs objection, to adjudicate any such prospective claim.

Appellant has also continued to identify and seek preservation of material which he contends bears upon access, chronology, the April 2020 submissions, archived online evidence, professional intermediary routes, and preservation of relevant records. Whether any newly obtained evidence ultimately provides a lawful basis

for further relief will depend upon the evidence obtained and the procedural mechanism available at that time.

Accordingly, denial of rehearing, if it occurs, would represent an important appellate determination, but it would not necessarily extinguish every lawful avenue available to Appellant. The Ninth Circuit's own procedures recognize that a petition for writ of certiorari may follow appellate proceedings, and the Court's General Orders expressly contemplate time following judgment for rehearing and certiorari proceedings.

This matters to the present Bill of Costs for a limited purpose. Appellant does not contend that the existence of possible future proceedings automatically prohibits taxation of costs. He submits instead that the Court should exercise caution before imposing Riot's appellate reproduction expenses upon an indigent pro se litigant while rehearing remains pending, material factual issues were never subjected to discovery, potentially relevant evidence continues to be investigated, and lawful avenues of further review may remain available.

Appellant has pursued this litigation because he seeks an evidentiary determination of serious claims which he maintains have never received factual development. He intends to continue doing so through lawful judicial procedures. Under these circumstances, requiring Appellant to fund even a small portion of Riot's litigation expenses would be particularly inequitable.

## I. THE APPEAL AROSE FROM DISMISSAL BEFORE DISCOVERY, NOT AN EVIDENTIARY DETERMINATION THAT ACCESS DID NOT OCCUR

The procedural posture is central to the equitable assessment of Riot's request.

Access to Appellant's copyrighted manuscript, *Bloodborg: The Harvest*, has been the principal disputed issue. Appellant alleged multiple routes through which the work could have reached Riot or persons associated with the accused production, including an alleged direct submission through Riot Forge in April 2020 and professional intermediary routes.

The action was dismissed before ordinary merits discovery.

There was consequently no production of Riot's internal records capable of establishing what occurred following the alleged April 2020 submission; no examination of submission-system audit trails, attachment records, routing records, account histories or internal communications; no examination of relevant witnesses concerning receipt or transmission; and no evidentiary determination establishing that the alleged routes of access did not exist.

Appellant appealed because he maintained that the case had been terminated before factual information substantially within the possession of Riot and relevant third parties could be obtained.

The appeal therefore did not seek to relitigate factual findings reached after discovery.

It sought review of a dismissal which prevented those factual questions from being developed in the first place.

Appellant respectfully submits that this distinction weighs strongly against requiring an indigent litigant to reimburse Riot for expenses incurred defending the resulting appeal.

## II. THE LITIGATION HAS INVOLVED LONGSTANDING AND UNRESOLVED DISPUTES CONCERNING CHRONOLOGY AND ACCESS

This appeal cannot fairly be separated from the history which produced it.

Beginning in 2021, Appellant disputed representations concerning the chronology and development of the accused production, including representations concerning when relevant writing and production had occurred.

Appellant subsequently identified public material which he contended contradicted material aspects of the chronology previously communicated to him.

During the federal proceedings, further disputes arose concerning the April 2020 submissions, the historical Riot Forge submission mechanism, the chronology of the accused production, professional routes of access, archived web material, preservation of potentially relevant evidence, and representations concerning those subjects.

Appellant also challenged representations made in the course of the litigation, including matters addressed through the parties' Joint Report and subsequent

proceedings, which he maintained did not accurately or completely reflect the factual history relevant to access.

Appellant does not ask the Court, through this costs objection, to determine that Riot or its counsel deliberately made false statements.

The narrower point is sufficient:

**Material factual disputes existed concerning access and chronology, and those disputes were never tested through discovery.**

The information capable of resolving many of those disputes was inherently internal. An outside copyright holder cannot independently produce another corporation's submission databases, attachment histories, audit trails, internal routing information, employee communications, retention records, access histories or production records.

Appellant consistently maintained that discovery was required to resolve those matters.

The action instead terminated at the pleading stage.

Requiring Appellant to reimburse Riot for defending an appeal seeking review of that dismissal would impose a financial consequence arising directly from the absence of factual development which Appellant challenged.

## III. THE APRIL 2020 RIOT FORGE SUBMISSION DISPUTE DEMONSTRATES WHY FACTUAL DEVELOPMENT MATTERED

The Riot Forge submission route provides a concrete example.

Appellant alleged that *Bloodborg: The Harvest* was submitted through Riot Forge in April 2020. The historical functionality of Riot Forge's website and submission mechanism subsequently became a material dispute during the litigation.

Historical Wayback Machine material concerning Riot Forge was relied upon in connection with this issue. Appellant disputed the characterization of that material and the conclusions drawn from it.

These were potentially testable factual questions.

The relevant evidence could include the contemporaneous architecture of the Riot Forge website, submission records, database entries, ticket histories, attachment storage, metadata, access records, account activity, audit trails, internal routing information, retention records and evidence identifying what happened to material submitted through the relevant mechanism.

No ordinary merits discovery into those matters occurred before dismissal.

The Court does not need to determine through this objection whether Riot received Appellant's manuscript or whether Appellant's characterization of the historical interface ultimately proves correct.

The equitable significance is that a factual dispute bearing directly upon access remained unresolved because the action terminated before the evidence capable of resolving it could be obtained.

## IV. THE ARCHIVED WAYBACK EVIDENCE WAS ITSELF DISPUTED AND NEVER SUBJECTED TO AN EVIDENTIARY PROCESS

Historical online evidence became an important component of the Riot Forge dispute.

Appellant challenged the characterization of archived Riot Forge webpages produced on ambush in an improper manner, during a settlement conference and the conclusions Riot sought to draw from them.

Questions involving historical webpages can be investigated through archive records, contemporaneous website records, authentication evidence, technical records, source material and evidence maintained by the entities responsible for the relevant systems.

That process never occurred.

Appellant has continued seeking independent third-party records concerning the historical online material precisely because he does not seek to attribute the disappearance, restriction or present unavailability of archived material to Riot or any particular person without evidence establishing responsibility.

This continuing effort illustrates the problem which generated the appeal.

Potentially important factual questions remained unanswered because the case never reached the stage at which the underlying evidence could be compelled, authenticated and tested.

The absence of that process should not now become an additional financial burden upon Appellant.

**V. APPELLANT CONTENDS THAT THE LENGTH AND BURDEN OF THIS LITIGATION RESULTED SUBSTANTIALLY FROM UNRESOLVED FACTUAL DISPUTES**

Appellant respectfully submits that Riot's request for costs cannot fairly be considered in isolation from the procedural history which generated those costs.

The dispute began years before the present appeal.

Appellant challenged the development chronology presented to him in 2021.

During the subsequent federal litigation, disputes continued concerning the April 2020 submissions, Riot Forge, the historical submission interface, archived Wayback evidence, the chronology of the accused production, professional routes of access, preservation issues, and the origins and development of material appearing in the accused work.

Appellant maintains that further material subsequently identified has continued to raise questions concerning several of those subjects.

The result has been years of litigation without the central factual question of access ever being tested through ordinary discovery.

Appellant respectfully submits that the resulting appellate proceedings were therefore not gratuitous. They arose from his attempt to obtain review of a pleading-stage dismissal where he maintained the evidence necessary to prove or disprove access remained substantially within the possession of Riot and relevant third parties.

Appellant has alleged litigation misconduct and has challenged the accuracy of representations made during the history of the dispute. He does not ask the Court to adjudicate those allegations through this costs proceeding.

Their relevance here is narrower.

Appellant should not be required to subsidize Riot's appellate reproduction expenses where he contends that the appeal became necessary in substantial part because material disputes concerning access and chronology were never subjected to the factual process capable of resolving them.

## VI. PRESERVATION CONCERNS AND SUBSEQUENTLY IDENTIFIED MATERIAL REINFORCE THE INEQUITY OF AN AWARD

The litigation has also included allegations and concerns concerning preservation of potentially relevant material.

Appellant has subsequently identified additional material which he contends further particularises access routes and chronology already placed in dispute. He

has also investigated evidence concerning professional relationships, historical online records and the development history of the accused production.

Appellant does not seek adjudication of that subsequent evidence through this objection.

Nor does he ask the Court to resolve whistleblower allegations, disputed preservation issues, or allegations concerning unexplained digital activity in a Rule 39 proceeding.

Where attribution has not been independently established, Appellant does not ask the Court to attribute such conduct to Riot.

These matters are relevant for the limited purpose of demonstrating why Appellant continues to maintain that factual development was necessary.

The subsequent emergence of potentially relevant information does not prove Appellant's copyright claim. It does, however, reinforce the inequity of imposing Riot's appellate costs upon Appellant while the central access dispute was terminated without ordinary discovery.

## VII. RIOT SEEKS COSTS FROM AN INDIGENT PRO SE LITIGANT DESPITE THE EXTREME ECONOMIC DISPARITY BETWEEN THE PARTIES

Appellant proceeds in forma pauperis and without counsel.

His financial limitations are established through his IFP status and have already affected his ability to bear the practical expenses associated with appellate litigation.

Riot Games is a multinational commercial enterprise represented by specialist counsel.

Appellant does not rely upon a particular corporate valuation. None is necessary. The economic disparity between the parties is manifest.

The Ninth Circuit has recognized, in the analogous context of taxable costs under Federal Rule of Civil Procedure 54(d), that a party's limited financial resources and the economic disparity between the parties are appropriate considerations when determining whether costs should be denied. *Draper v. Rosario*, 836 F.3d 1072, 1087-89 (9th Cir. 2016); *Association of Mexican-American Educators v. California*, 231 F.3d 572, 592-93 (9th Cir. 2000) (en banc).

Appellant recognizes that in forma pauperis status does not itself create a blanket exemption from costs. The Ninth Circuit has expressly recognized this distinction. *Draper*, 836 F.3d at 1088.

The argument is therefore not that Appellant's IFP status automatically prohibits Riot's request.

It is that Appellant's limited financial resources, combined with the extreme economic disparity between the parties and the unusual procedural history of this

litigation, provide compelling equitable reasons for the Court to exercise its discretion against imposing costs.

The requested $452.10 may represent a relatively modest recovery to Riot. It represents a materially different burden to an indigent individual litigating without counsel.

The imbalance weighs strongly in favor of leaving each party to bear its own appellate reproduction expenses.

## VIII. APPELLANT'S TIMELY PETITION FOR REHEARING REMAINS PENDING

Appellant timely filed a petition for panel rehearing and rehearing en banc.

The petition directly challenges the panel's treatment of access and the disposition of a case in which Appellant maintains the alleged routes of access were never permitted factual development.

Appellant does not contend that filing a rehearing petition automatically prevents Riot from submitting a timely Bill of Costs.

The pending petition nevertheless forms part of the circumstances the Court may consider.

The disposition giving rise to Riot's request remains subject to a timely request for reconsideration addressing the central issue which generated the appeal.

Imposing appellate costs upon an indigent Appellant while that challenge remains pending would compound the inequity described above.

## IX. RIOT MUST STRICTLY ESTABLISH THAT THE CLAIMED REPRODUCTION COSTS ARE TAXABLE

There is an independent basis for reducing or denying portions of the requested amount.

Federal Rule of Appellate Procedure 39(c) concerns the cost of producing **necessary copies** of briefs, appendices and authorized records.

Ninth Circuit Rule 39-1.1 requires an itemized bill identifying both the number of copies reproduced and the actual cost per page.

Circuit Rule 39-1.2 limits taxable brief copies to the required number of paper copies plus one additional copy, together with paper copies the eligible party was required to serve. The Rule similarly limits taxable copies of excerpts of record.

Circuit Rule 39-1.3 limits copying costs to the actual cost per page or the Circuit's maximum rate, whichever is less.

Riot seeks $428.70 for three complete copies of 1,429 pages of Excerpts of Record and $23.40 for six copies of its 39-page principal brief, for a total of $452.10.

Appellant respectfully requests strict scrutiny of those quantities and costs.

Appellant does not allege through this objection that counsel falsely certified Riot's Form 10.

He requests that Riot's claim be measured against the governing rules.

No cost should be taxed for a copy exceeding the number authorized by Circuit Rule 39-1.2. No amount should be taxed at $0.10 per page merely because $0.10 is the maximum allowable rate if Riot's actual reproduction cost was lower. Circuit Rule 39-1.3 expressly makes actual cost relevant.

Accordingly, if the Court does not deny costs on equitable grounds, Appellant requests that Riot be required to establish that each claimed copy was within the number properly taxable and that the claimed rate reflects its actual reproduction expense, subject to the Circuit maximum.

## X. THIS IS NOT A REQUEST FOR THE COURT TO DETERMINE THE COPYRIGHT CASE THROUGH A COSTS PROCEEDING

Appellant emphasizes the limited nature of this objection.

The Court need not determine whether Riot infringed *Bloodborg: The Harvest*.

It need not determine whether any disputed representation was intentionally false.

It need not decide precisely how the Riot Forge submission mechanism operated in April 2020.

It need not resolve the disputed Wayback material.

It need not determine whether any intermediary transmitted Appellant's manuscript.

It need not adjudicate subsequent evidence, whistleblower allegations, preservation concerns, or allegations concerning unexplained digital activity.

Those matters are identified because they demonstrate the extraordinary factual context surrounding the appeal and, critically, the extent to which potentially material questions remained unresolved when the action was dismissed.

The narrow question here is whether Riot should receive $452.10 from an indigent pro se Appellant for defending an appeal arising from dismissal of his case before the factual evidence bearing upon access was developed.

Appellant respectfully submits that equity answers that question in the negative.

## XI. TAXING COSTS WOULD COMPOUND THE PROCEDURAL HARDSHIP WHICH GENERATED THE APPEAL

Riot did not prevail following discovery establishing that Appellant's manuscript was never received, accessed, transmitted or available to persons associated with the accused production.

There was no such evidentiary determination.

The action terminated at the pleading stage.

Appellant then pursued appellate review because he maintained that his allegations concerning access, considered collectively, were sufficient to permit the case to proceed to factual development.

The panel affirmed, and Appellant has timely sought rehearing.

Requiring Appellant now to reimburse Riot for defending that appeal would impose an additional financial consequence upon an indigent litigant for seeking review of whether he should have received access to the factual process capable of proving or disproving his allegations.

This concern is especially substantial where the relevant information included internal corporate and third-party records which Appellant could not obtain unilaterally.

The taxation of costs should not transform the absence of discovery into a financial penalty upon the party who sought appellate review of that absence.

## XII. THE CIRCUMSTANCES COLLECTIVELY WARRANT DENIAL OF COSTS

Federal Rule of Appellate Procedure 39(a) provides the ordinary allocation of appellate costs but expressly recognizes that the Court may order otherwise.

The circumstances here warrant doing so.

Appellant is an individual proceeding pro se and in forma pauperis.

Riot is a multinational commercial corporation represented by specialist counsel.

The action was dismissed at the pleading stage.

The central access dispute never received ordinary merits discovery.

Material disputes concerning chronology, the April 2020 submissions, Riot Forge, archived web evidence, professional access routes and preservation remained unresolved.

Appellant contends that the resulting appeal became necessary because those matters were never permitted factual development.

His timely petition for panel rehearing and rehearing en banc remains pending.

The requested $452.10 provides a comparatively modest recovery to Riot while imposing a materially greater burden upon Appellant.

And if any costs are nevertheless taxed, the governing Circuit Rules independently require strict limitation to the number of properly taxable copies and the actual reproduction cost, subject to the applicable maximum.

Taken together, these circumstances strongly favor an order requiring each party to bear its own appellate reproduction expenses.

**XIII. TAXATION OF COSTS WOULD CREATE A FURTHER ACCESS-TO-JUSTICE BARRIER FOR AN INDIGENT LITIGANT IN PERSON**

Finally, Appellant respectfully asks the Court to consider the practical access-to-justice consequences of imposing costs in the circumstances of this case.

Appellant has prosecuted this litigation pro se and in forma pauperis against a multinational corporation represented by specialist legal counsel. Without the

financial resources to retain comparable representation, Appellant has personally been required to investigate the factual record, research the applicable law, prepare filings, comply with federal procedural requirements, respond to motions, prosecute this appeal, and pursue rehearing.

The financial disparity between the parties therefore affects more than the parties' respective ability to absorb a $452.10 costs award. It affects their practical ability to participate in litigation on anything approaching equal terms.

This concern is particularly significant where Appellant maintains that information necessary to establish access remained principally within the possession or control of Riot and relevant third parties. Appellant could allege and identify the routes of access available to him, but he could not independently compel Riot's internal submission records, audit trails, communications, access histories, retention records, or testimony from relevant persons without reaching the factual-development stage of litigation.

The action was dismissed before that opportunity arose.

Appellant then exercised his right to seek appellate review of the dismissal. Imposing Riot's reproduction costs upon him for doing so creates an additional financial barrier to the continued use of the judicial process by an indigent litigant whose underlying complaint is, in substantial part, that he was denied the opportunity to obtain evidence unavailable to him without judicial process.

Appellant does not contend that pro se or in forma pauperis status creates immunity from properly taxable costs. Nor does he seek preferential treatment because he appears without counsel. He respectfully asks only that his financial circumstances, the extraordinary disparity between the parties, the pleading-stage termination of the action, the absence of discovery, and the continuing pursuit of lawful review be considered together when the Court exercises its authority concerning costs.

The taxation of costs should not operate in these circumstances as a practical deterrent against an indigent litigant continuing to pursue lawful appellate review. Access to the courts has particular importance where the evidence necessary to test disputed factual allegations cannot realistically be obtained without the procedures those courts provide.

For those reasons, the access-to-justice considerations reinforce Appellant's request that each party bear its own appellate reproduction expenses and that Riot's Bill of Costs be denied.

**CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that the Court DENY Appellee Riot Games, Inc.'s Bill of Costs in its entirety.

Alternatively, Appellant respectfully requests that the Court reduce any award to only those reproduction expenses Riot establishes were actually incurred, necessarily produced, and strictly taxable under Federal Rule of Appellate Procedure 39 and Ninth Circuit Rule 39-1.

Appellant respectfully requests such other relief concerning costs as the Court considers just and equitable.

Finally, if Riot maintains that Appellant should bear the costs of these proceedings, Appellant respectfully invites Riot to consent to the discovery necessary to test the disputed questions of access which gave rise to this appeal. If the evidence establishes that the alleged routes of access did not exist, the resulting evidentiary record would provide a considerably firmer basis upon which to determine where the costs of this litigation should properly fall. Until those factual questions have been tested against the evidence within Riot's and relevant third parties' possession, Appellant respectfully submits that requiring an indigent litigant to bear Riot's appellate costs would be inequitable. Appellant should not be required to pay the costs of litigating a question which he maintains he was never permitted the discovery necessary to answer.

Appellant respectfully submits that the resulting position is analogous to denying a litigant access to the evidence necessary to test a disputed factual question and then

charging that litigant for the expense of appealing the decision made without that evidence. The party controlling the evidence should not be permitted to rely upon the absence of factual development as a basis for prevailing and then require the party who sought that factual development to pay the resulting appellate costs. Appellant should not be required to pay the costs of litigating a question which he maintains he was never permitted the discovery necessary to answer.

Respectfully submitted,
**s/ Marc Wolstenholme**
Marc Wolstenholme

Plaintiff-Appellant, Pro Se

Dated: September 15, 2026