# EXHIBIT C

# Transcripts of Recorded Statements by Riot Games' Counsel

MARC WOLSTENHOLME v. RIOT GAMES, INC.

United States Court of Appeals for the Ninth Circuit

No. 25-3163

D.C. No. 2:25-cv-00053-FMO-BFM

## Contents

**C-1** First Meet-and-Confer with Riot Games' Counsel (Approximately 20 January 2025)

**C-2** Pre-Settlement Conference Before Magistrate Judge (20 March 2025)

**C-3** Later Meet-and-Confer with Riot Games' Counsel (May 2025)

The following materials reproduce the supplied transcript files. Machine-generated transcription errors, speaker-label errors, and other source imperfections have been preserved rather than silently corrected.

# C-1: First Meet-and-Confer with Riot Games' Counsel

*Approximately 20 January 2025*

■## Main Topics Discussed

### 1) Personal Check-In and Fire Situation
- The call opened with a friendly exchange between Josh and Mark about recent fires.
- Josh said the fires had calmed down, people were returning home, and things were looking better.
- He confirmed his home was not evacuated, though power was lost for a couple of days.
- Mark also mentioned watching Greenberg Traurig's 65-year anniversary video and made positive comments about the firm.

### 2) Discovery / Pre-Litigation Requests
- Mark asked whether Josh had received a list of pre-litigation discovery he had requested.
- Josh said they were not prepared to discuss pre-litigation discovery and would not engage in any preliminary discovery at this stage.
- Josh stated the purpose of the call was to discuss the grounds for their motion to dismiss the amended complaint.
- He emphasized that they intended to proceed with that motion.

### 3) Mark's Filing to Court and Copyright Registration Issues
- Mark said he had sent a "preemptive document" to the court.
- Josh replied that the court had not yet processed anything from Mark, so they had not seen it.
- Josh explained that a preemptive opposition generally would not be considered until after the motion is filed.
- Mark then described his allegations in detail, including claims involving:
  - copyright access and use of his work from mid-2019 onward,
  - relationships between Riot Games, Curtis Brown Group, and United Talent Agency,
  - alleged connections involving Johnny Geller and Felicity Blunt,
  - alleged use of his material in *Arcane* and other Riot-related projects,
  - and side-character comparisons he believes match his work.
- Josh noted that the number Mark submitted appeared to be only a copyright application number, not an approved registration.
- Josh explained that the copyright office had not yet acted on the application, but also said that even if registration occurs later, it would not change their view on access or infringement.
- Josh stated they do not believe the allegations support a legal finding of access or copyright infringement under U.S. law.

### 4) Josh's Request for Materials and Mark's Refusal to Send Manuscript
- Josh invited Mark to send additional documents, including whatever he had submitted to the copyright office and copies of his manuscript.
- Josh said he did not have Mark's manuscript and needed it to evaluate the comparisons Mark had been making.
- Mark declined to send his manuscript voluntarily, saying he was concerned about further misuse of his work and that he would only provide it if ordered by the court.
- He said the alleged misuse was not limited to one incident and referred to multiple Riot-related uses, including *Arcane*, the music video *Blood, Sweat and Tears*, and another project he called "Noxus Bite" or similar.
- Josh again said they disagreed and did not view these as mere legal technicalities.

### 5) Scope of Inquiry and Allegations About "Roy"
- Mark asked whether Josh had investigated where "Roy" got the material from.
- Josh declined to discuss any investigation and said he was only addressing the visibility and legal sufficiency of Mark's claims.
- Mark referenced *Bridging the Rift* and claimed Riot Games admitted to soliciting scripts to find people to bring in, suggesting this supported his position.
- Josh said he disagreed and reiterated that they would move forward with the motion.

### 6) Motion to Dismiss Timeline and Procedure
- Josh explained that the motion to dismiss the original complaint was now "moot" because Mark filed an amended complaint.
- He clarified that the prior motion would not proceed, and only the new motion addressing the amended complaint would matter.
- Josh said the new motion would be filed in one week, which he described as their deadline under the federal rules.
- After filing, Josh said they would serve Mark a copy by email and mail.
- He explained the expected process:

  - Mark would have time to file a written opposition under the federal and Central District of California local rules.
  - Greenberg Traurig would file a reply brief.
  - The court would then either schedule a Zoom hearing or decide based on the papers.
  - The court would ultimately grant or deny the motion.

### 7) Mark’s Stated Intent to Continue Litigating
- Mark said that if the case were dismissed on technical grounds, he would continue filing again and again, including in the UK if needed.
- He said he was not going to stop until he got results and suggested it would be better for the other side to negotiate an outcome.
- Josh responded that they were proceeding with their motion and that what Mark did afterward was up to him.
- Mark asked again whether Josh had investigated whether Roy was lying, but Josh declined to discuss that.

## Action Items / Follow-Ups
- Josh and Greenberg Traurig will file the motion to dismiss the amended complaint in about one week from the call.
- Josh will email and mail Mark a copy of the filed motion.
- Mark may submit additional documents if he chooses, but he refused to provide his manuscript at this time.
- Mark will have the opportunity to file a written opposition after the motion is filed.
- The court will then decide whether to hold a hearing or rule on the papers.

---

Speaker A (0:04): Hello, this is Josh.

Speaker B (0:05): Hi Josh, you're right, it's Mark won home. Hello.

Speaker A (0:09): How you doing?

Speaker B (0:10): Yeah, not too bad. Yeah. How's fires over there?

Speaker A (0:14): Oh, everything's good here, thanks for asking.

Speaker B (0:16): Has the fires chilled out a bit now?

Speaker A (0:20): Yeah, yeah, they're. Everything's died down at least so people are returning to their homes and yeah, things are looking a little better.

Speaker B (0:29): Cool. Did your home get evacuated?

Speaker A (0:32): No, we were, we lost power for a couple days but otherwise we were, we were fine. We were safe at least. So. Yeah, nothing, nothing too serious.

Speaker B (0:42): Oh yeah, I watched that 65 year video. Oh that's all right, mate. I watched the 65 year old, the 65 year anniversary video of Greenberg Leicester. But yeah, it was quite.

Speaker A (0:54): Yeah, yeah, that's great. Yeah, we've been around for a while.

Speaker B (0:58): Yeah. Seems like it's got a nice EFOs, the company.

Speaker A (1:04): Yeah, certainly. I love it here. I think it's a great law firm. I'm lucky to be here, so. Yeah.

Speaker B (1:10): Cool. Did you, have you got, have you had the list of preligation discovery that I've requested?

Speaker A (1:20): So we're not prepared to discuss any of that because we're not going to, we're not going to engage in any preliminary discovery. We're not, we're not going to do any of that. So the purpose of the call today from my perspective is just to talk about the grounds for our motion to dismiss the amended complaint which you know, I sent you the case. I know you responded in your email. I'm happy to answer any questions or discuss that. But we're, we're planning to go forward with that motion. Yeah.

Speaker B (1:48): Have you seen, have you seen the preemptive document that I sent to the court on that?

Speaker A (1:59): No. So whatever you sent, it hasn't been registered there. The court has not processed it yet. So we haven't seen it. I will say procedurally, you know, it's not really a thing you can do a preemptive opposition until you've seen the motion. I mean you could file whatever you want to file but I don't think the court's going to consider that until we file our motion.

Speaker B (2:20): Oh, okay. Yeah, well I've answered all those questions on there anyway. Yeah, but I've seen since, I've seen since other things I should have put in there but like I sent partials out and I didn't put that in to that preemptive motion. I could send it you if you want but it pretty much answers all, all of that. It's got, got the Number in for the. The copyright stuff. It shows you. Shows you how loads of different avenues that right. Could have got my. I know how they got it anyway. I think I do but how they could have had access to my work from mid-2019. And then it shows you some of the. The. The relationships that Riot has with Curtis Brown Group and who. Who are now owned by the United Talent Agency and how the Curtis between Curtis Brown Group and the United Talent agent. Curtis Brown Group is the one Johnny Geller. I know he's got the same surname as you but that's probably. I don't. I don't know if you related but anyway Johnny Geller is the guy that I've had trouble with Johnny Geller and Felicity Blunt who is the sister of Emily Blunt who the people I've been sending my work to for a number of years and, and they're the ones that I've been having copyright issues with. So there's going

to be more allegations in the UK coming to UK courts. But anyway so that those two, those people they now sold their company to United Talent Agencies so they already had a working relationship with them. They. It took over it finalized in 2022. So pretty much a year after Arcane show first aired. But also what Arcane the four main of the. Of all the air time. I don't know if you've seen this what I've put in there as well. Of all the airtime in Arcane main actors. Well, four of the four of the five main actors are from that agency and, and they've got. They've got an esports communication between the two of them. So they've got a working relationship. I've shown that and I've shown that they had. I've shown that they had my documents and everything. Anyway I could send it you now in a minute. I'm about to send off to the Court another just a character comparison of. Of two of the side supporting characters who are Milo and Clagger, who in my book are Matteo and McCauley. It's the same characters down to. Down to everything. They just, I've just put it together basically for you to show. Show the court and show yourself. But I think, I think that I've. I've answered all of all of those queries that you've put forth there. The only thing is, I'm sure as a litigant in person from the UK and with my vulnerabilities, I'm sure the court will give me a bit of leeway. But the only thing that could be said is I was a bit late getting the copyright. But for the Burns Conventions from the uk, we already have copyright in the uk, Know what I mean? But obviously the Burns Convention gives us copyright. But within California, you're required to register before the federal case is taken out, aren't you? So I've registered right at the beginning of the federal case. So obviously I ain't pleading ignorance to that. I'm pleading that I'm doing the best to catch up with to your litigations across water. So, yeah, I don't know if you want me to send you that document.

Speaker A (6:30): I know. I appreciate you walking through. I mean, I'll just say on a couple of those points, as far as the registration, from what I can tell from the number you submitted, I think that was an application for registration. Yeah, I think that's an application number.

Speaker B (6:44): That's right.

Speaker A (6:47): Right. So that means it hasn't actually been registered yet until the copyright office acts on it, which can take some time. And that's a case for. In any event, you know, you can register after the fact. It has to be before the mitigation. That doesn't change anything on the access issues. Look, we don't think those allegations under the case law would support a finding of access. It's just, you know, that kind of web of that you're alleging first that as a factual matter, it's just what happened. But as a legal matter that doesn't support a finding of access, the kind of comparisons you've been highlighting between the two works, that they don't support a copyright infringement claim under United States property law. I mean, it's just. That is what it is. You disagree. We disagree.

Speaker B (7:41): Yeah,

Speaker A (7:45): I know. Look, I know in your, some of your emails, I guess, you know, kind of there's technicalities and all that. From our perspectives, they're not, they're not technicalities. What, what you're claiming is not something that gives rise to any claims under the United States law. And so we have to move forward with our motion as it says.

Speaker B (8:00): Yeah, well, maybe if I send you this document, mate, it might clear up a lot of what I've just, just told you, basically.

Speaker A (8:10): And yeah, I mean, feel free to send that along. The other thing, if you have what you've submitted to the copyright office, you know, the copies of your manuscript, you can send those along, because I don't have those. So I don't know what your manuscript is. I don't know what you know. All I always see are the comparisons you email. But I don't have a copy of your manuscript, so if you want to send that along. Yeah, we can take a look at that too, based on what we have.

Speaker B (8:37): Yeah. At the moment, I'm not going to send you my manuscript because of. It's just more ways of getting out of things, basically, with the work. The way that my manuscripts been abused before, I'm not going to give it out to more people. You know, I mean, and then, and then, then it's more down the line because this isn't just one copyright incident I'm dealing with. There's just one from Riot Games and it's not even just one from Riot Games. Riot Games have used it for three different things, as you've seen, and they've used it for Arcane, for the. The music video Blood, Sweat and Tears, and now for their new Noxus Bite, whatever it's called, Bite Mark or whatever it's called. So it's, it's prolific. It's not just one. One time. So I'm restricting who I'm sending anything out to. Even now when I'm querying. I'm not sending work because of. Because of what I've faced within this industry. So if, when the court orders me to, I'll send you the. Send you the whole thing as it was then, when, when Roy received it. And I can show it from them because I've sent it to a number of people so you can get it straight from what was sent back then, as opposed to like getting the updated versions or whatever. But I'll send you what, what I've answered to them. But it's. Mate, it's so clear, it's so obvious that it's ridiculous. It's ridiculous what they've done. They've just basically cut it.

Speaker A (10:13): All right, yeah, we disagree. I certainly disagree. I mean, this is. I don't. I don't view these as legal technicalities.

Speaker B (10:21): Have you, have you asked, have you investigated or done any investigations into

Speaker A (10:30): where

Speaker B (10:30): Roy got this stuff from?

Speaker A (10:33): Yeah, I'm not prepared to talk to you about that. I'm just saying I'm looking at the visibility of your claims.

Speaker B (10:40): Yeah. Do you know, do you know in the Bridging the Rift, Royal Games admit going out, what you call it, basically soliciting for scripts to get people. To get people in. Did you know that?

Speaker A (10:59): Yeah. I disagree. I think we've explained the basis of the motion. You'll send me over if you have anything else that you think, you know, addresses any of our legal issues and we'll go forward. We're going to have to file it a week from today. That's our deadline under the federal rules. So send over what you have. But we're going to be filing in a week.

Speaker B (11:20): Do you know when you say mute, is that. Does that mean that you're not going forward with that anymore?

Speaker A (11:28): Which. What are you referring to?

Speaker B (11:31): The last one that I sent you that cleared it up. You said this is mute.

Speaker A (11:36): Yeah. So what? Basically, what it means, because you filed an amended complaint, the motion to dismiss against your original complaint is no longer moving forward because now all that matters is the amended complaint. Oh, our first motion is out the window, and the only thing that's going to matter is the new motion we file a week from now. That's what that means.

Speaker B (11:56): Okay, and so then after that, would it be I won't speak to you again before the. The hearing?

Speaker A (12:07): Well, there won't really be anything to discuss. So the way it'll work is we'll file our motion in a week. We will serve you a copy. We'll email it the same day. We'll also send you a copy in the mail. But the version we email you will be the, you know, official version we filed. We'll email it to you. You will have some time under the federal rules and the central district in California local rules to file a written opposition. You'll file a written opposition with the court. We will file what's called a reply brief, or we will briefly respond to your opposition, and then the court will either set it for a hearing where we'll all appear, you know, by zoom, and argue the motion, or the court may decide just to rule on the motion based on the papers we filed. And that'll be, you know, the court will rule, and either the court will grant the motion or deny the motion, and we'll go from there.

Speaker B (12:58): Yeah. Do you know that I think you should tell Rowan that if they do get this kicked out on technicalities, I'm just gonna change it up and come it again and again and again, and then I'm going to come in the UK and do it all in the UK and get it kicked out of the UK So I'm not gonna stop. I'm gonna keep going and going and going until I get results, and I'll change it up as much as I have to, because that's what I'm gonna get. I'm gonna get results for what they've done. I know what they've done. They know what they've done. And at the end of the day, it'd be better for everyone, for. For them to come to the big board table and go, let's sort it out. What do you want? Or, you know, I mean, I'll come with a counter offer rather than having to put me through all the stress all the time. So. Yeah.

Speaker A (13:41): Yeah. All I can tell you is we're moving forward with. What do you do after that is, you know, up to you.

Speaker B (13:48): Yeah. Have you done any investigation to see whether Roy's telling you the lies?

Speaker A (13:52): Yeah. I'm not going to discuss that with you today. We're just talking about the motionless silence.

Speaker B (13:57): Yeah.

Speaker A (13:58): So I. I think. I think we've gone through what we're going to do. So you'll get, you know, send over anything else you have. Feel free to. I. I'll take a look at it. But we'll likely be filing our motion a week from today, and then you'll have an opportunity to file an opposition with the court.

Speaker B (14:10): Okay. All right. Josh. Case.

Speaker A (14:13): Al, I appreciate it. Thank you for taking us time to discuss. Have a good day.

Speaker B (14:17): No worries. See you in a bit. Bye.

Speaker A (14:18): Bye. Bye.

## C-2: Pre-Settlement Conference Before Magistrate Judge

*20 March 2025*

1

00:00:00,240 --> 00:00:31,530

You guys together, because I saw your filings, and today we're not going to try to settle this case today. What we are going to try to do is just kind of talk about a timeline and some procedures for how we can move this case forward. And, you know, I will put an additional question on the table, which is, given the stage of the case, is this realistically a good time for us to proceed to settlement or is it time to go back and talk to your district judge, who is olguin in this case. Right.

2

00:00:31,770 --> 00:00:32,250

Correct.

3

00:00:32,410 --> 00:01:34,620

About whether this timeline for settlement works? So that's to convene Mr. Wilson home. I saw that you were asking if you needed to prepare anything or anything really. That's all I'm hoping to do today. And so this is not the settlement. This is the get ready for the settlement settlement call. And so that's really all we're going to do today. So I guess, you know, I saw your. The filings that you each have made, Mr. Wilsonholm. I received the additional document you sent our chambers just a bit ago. So I have all that in mind. And I guess kind of to start, I have. I see kind of two different sets of things you're asking for. Right. One is that is some very practical questions. Right. Defendants haven't answered the second amended complaint yet. Mr. Geller, if I'm looking correctly, that response is going to come fairly soon, correct?

4

00:01:34,620 --> 00:01:35,500

That's April 4th.

5

00:01:36,140 --> 00:02:04,090

Yeah. So you're going to have an answer to that question fairly soon. You have certain discovery requests, and in particular, the one I saw mentioned in a couple different filings of yours was information about insurance policies. And So I guess, Mr. Geller, let me ask you, is there a pending discovery request for those that's in the works, or what's the status of that request?

6

00:02:04,170 --> 00:02:30,650

Yeah, so we're getting the insurance policy. That's not an issue. And there was discovery served last Friday. So our response deadline is something mid April. So the dates we proposed, and I have a couple observations I want to make for the court. And later, the dates we proposed would be both after we'll file our response plea into the second amended complaint, which I anticipate to be a motion to dismiss. And after responding to those discovery requests.

7

00:02:30,890 --> 00:05:26,900

Okay, so some of the kind of practical things you're asking for, Mr. Wolsterholm, I think are already in the works. And we can certainly, within the timeframe that Judge Ogin has already given us, which I think is not. Is till through June, we can probably accommodate that. I'll make another general Observation, and then I'll hear from both of you. My experience has been that it's not particularly productive to say, I'm not willing to come to settlement until you do this or that. Now, separating aside discovery, right, certainly a case cannot settle if there are certain fundamental questions about the case outstanding, if there are certain fundamental discovery requests that are outstanding. Nobody is going to make you go forward to settlement when you don't have answers to those questions that are properly asked in discovery. But these kind of, I won't come until they apologize. I won't come until they've promised they're going to. That I'm not sure is a particularly productive conversation for us to have. What generally is going to happen when I do settlement conferences is I will issue an order that kind of guides the discussion and kind of guides the process. So let me tell you what that's going to look like and see if that potentially helps with any of the questions that you have. So generally what I do is I issue an order. And it requires you to exchange first offers, right? Maybe you haven't sat down to talk about kind of where your numbers are, what it would take for you to walk away from this case. And so the order says, plaintiff, make them an offer. What would it take for you to walk away? It then requires them to say no or yes, usually no, the first time around, and say, but this would be our counteroffer. Now all of a sudden, we have kind of bookends, right? We say, okay, here's your offer in one place. Here's your offer on the other side. Okay? And then what I do, once we kind of have those brackets around these numbers is then I ask you each to submit your settlement memo just to me. It doesn't go to Judge Olgim. It does not go to either side. Sorry. It's not going to go to opposing counsel. It's not going to go to their client. It's just between you and me. And it tells me, what is it you really want out of this case? You can tell me what you think of the strengths of your case, you can admit in that document, because it's not going to go to opposing counsel or to Judge Olguin if you think there's some problem with your case. It talks about what you picture the strongest points of your case to be, and it

tells me, what do you really want out of the case?

8

00:05:27,310 --> 00:05:27,750

Yes, ma'.

9

00:05:27,750 --> 00:10:01,180

Am. At the same time you're doing that, Mr. Geller is going to be doing that on behalf of his client. He's going to be saying things like this. I think we're particularly strong here. We're not going to give much because we think we've got this winning motion. Right. All of that stuff. But it's just between him and me. Once I have all of that information, then we will have an actual settlement conference. And given your geography, it will probably be back in a Zoom Room that looks kind of like this. And at that point, here's. This is what I generally do. I start with one of you, and I say, this is what I think is right about what you're saying. But I have some concerns, and I'm not sure this is going to happen the way you think it's going to happen. And I'm not sure the jury might see it the same way you think you're going to. Right. I'm going to try to talk to you about some of the issues in your case. I'm then going to do the same thing with Mr. Geller and his side and say, you're really confident on this part, but I'm not sure you should be so confident. And what I'm going to be trying to do is bring those brackets together slowly, slowly, slowly, and hopefully we can get them together at a place where the case could settle in my order. I have certain requirements about who has to be a part of that settlement conference. And so, for example, Mr. Geller is going to have to have somebody from his client's chain of command, whoever it is, that could actually settle the case, because I don't want to get to a point where Mr. Geller says, well, I'll have to take it back to my client and see. Right. The goal is to settle it that day in the Zoom Room and not have to kind of go back through these other processes. And so in that. In that order that I issue, I also tell everybody that they have to come to this process in good faith, and I'm the enforcer of that. Right. So if somebody. If, for example, Mr. Geller were to come and say we're unwilling to accept or even consider any settlement offer unless he pays us a million dollars, then I might question whether he's really participating in good faith. Obviously, I don't know anything about the case, so I'm not actually telling you anything, Mr. Geller, about your position. What I'm saying is I am going to be there in making sure that everybody is participating in the process in good faith. And so I guess for that reason, I'm not sure that saying I'm not willing to Come until they promise to be good is going to get us. It's going to move the ball very much. And kind of the same thing about apologies, right? Apologies are kind of tricky in the law in general. What I often tell folks is that money is generally how the legal system says they're sorry. And so, you know, putting things on the table that say this is, I'm not settling without X, or I would never consider dismissing without Y. It's just going to be a barrier to this discussion that I hope to have and help to resolve this case. So those are kind of just general comments about the settlement process in general. One other thing I do want to say, which is that I am the magistrate judge in this case and also your settlement officer. So one reason that I am not going to engage in settlement conversations today is generally if I'm going to be the person settling the case, I like to do it closer to the discovery cutoff, because if there's discovery, I don't want to be at the same time your settlement officer and your discovery judge, because if you've got discovery questions and they may come up in this case, I don't want to be operating in a situation where I know that one of you thinks a particular claim is not valid or unlikely to succeed, because I'm your settlement judge. And so that's why, I guess I'm particularly loathe in this case. Mr. Geller, to set this in the next month, I would far prefer that we look out further and even if we need to talk, to consider sending you back to Judge Olguyen for a different date for your settlement cutoff for that reason. So I've now talked a bit. I want to hear from both of you in terms of kind of how we can move this process forward.

10

00:10:03,170 --> 00:10:05,330

Mr. Wilson wants to start, but I'm happy to.

11

00:10:06,610 --> 00:10:08,290

Yeah, why don't we start with you, Mr. Go?

12

00:10:09,170 --> 00:11:35,700

Sure. So to the question of timing, I mean, that all makes perfect sense. I think we're in alignment on almost all of that. I do think this is a unique kind of case where an early settlement conference is going to be very, very valuable. Obviously, Mr. Wolstenholmes is not an attorney representing himself pro se, and he has strong beliefs about the merits of his case. And we believe on our side, they don't really align with United States law and the procedures of this court. Mr. Wolstonovis filed a 1200 page second amended complaint. We are going to move to dismiss that. I don't know the timing when that motion will be heard. We think there are a number of issues there that an early discussion with your honor would be helpful, especially before we do get too deep into discovery, because there are a lot of issues buried in that complaint that are really not cognizable. Claims don't go to anything that, you know, the United States judiciary can even hear. I mean, really, really kind of far afield stuff. So I do think this is a unique situation where it's not like there's some discrete discovery questions that we can just, oh, let's go get this. And this is going to help. We're dealing with some kind of fundamental threshold issues that I think we may not have a one and done situation, but I think we would really benefit from an early hearing.

13

00:11:36,900 --> 00:11:58,520
Okay, that's helpful to hear. And obviously we in the court side of things always like to settle things early if it's going to settle. So it's not that I'm averse to that. It was more just this concern about not wanting to be put in a position where I'm, you know, where I'm deciding on discovery stuff in a world where I know too much.

14
00:11:59,480 --> 00:12:00,120
Understood.

15
00:12:01,240 --> 00:12:33,070
So the one other off, the one other thought we can at least consider. So certainly I have done cases where I have. If both parties want, understand the risk of me doing that and want to proceed anyway, I can do that. The other thing that I've sometimes done is ask one of my colleagues to step in and do an early settlement if that's how the parties would prefer to proceed. So both of those options would be at least theoretically available. Mr. Wolstenholm, did you understand everything that Mr. Geller just said?

16
00:12:33,070 --> 00:15:26,330
Yeah. Ma', am, I'd like to say thank you very much for clearing a lot of that up for me. Obviously I have got concerns. A lot of the concerns have been because of the behaviours of Roy Games, its community and its legal team up to now telling me they're gonna tell me lies, basically, which I've proven to be lies. All kinds of stuff which you've seen some of. Threats to my door, all kinds of horrible stuff that's ongoing still. Bomb threats, all kinds of stuff. But you did put a lot of my anxieties there to rest, telling me that it's obviously in your hands. I suppose a lot of what I was asking there in terms of the apology and stuff, you did explain some of that, but it was, it was a lot. I want some kind of closure from this as well. You know, it's been three and a half years. The writing is trauma. Writing very personal to myself and it's. The way I've been treated is not. Is not very nice. And I know from past experience that the best way to get through these things is to try and bury the hatchet as. And to actually settle in some kind of humanistic form rather than just going there, you've got, we've got loads of money, there you go, go away kind of thing. If that's not on the table, then so be it. I'm willing to come to the table, but this is. My book has been used. There's no ifs, no buts. The evidence is there. And I don't see the. If Riot Games are saying that they're not, then I think we need to see the case on its merits and not on legalities and this and that, which they've been trying time and time and time again, and it's just causing myself further harm and this process further harm. So I want to get to somewhere where we can go, okay, we're going to settle or we're not going to settle. We're either coming to settlement or we're not coming to settlement. You know, we're not coming to use this as to waste further time with further court processes. We're coming to discuss where we are. Wright knows where I am. I've sent them lots of ADRs, lots of stuff in the past. They know for a fact the characters that have got the story. They know the characters have got less of my POVs. So that they know where it is, they've used it. They know for a fact they have. There's no getting away from it. There's so much in it that it would be stupid for them to. To come in front of a jewelry with that much evidence and say that they didn't copy that, that, that, that stuff that my material. Sorry, Mom. That's where I.

17
00:15:27,860 --> 00:15:29,460
Sorry. Finish.

18
00:15:29,860 --> 00:15:41,860
Sorry. Yeah, yeah. So. So my position is that we're either coming for a settlement or we're not coming for a settlement. It's. Does it, does that make sense? I don't know if I'm.

19
00:15:42,900 --> 00:15:58,780
Well, so I guess the one thing that I was going to say is in our court, the. It's not quite as we're either coming or we're not. Our court requires that no case will go to a jury trial until there's been a serious effort at settlement.

20
00:15:58,780 --> 00:15:59,460
Yes, ma'. Am.

21
00:16:00,930 --> 00:18:12,520
And the truth is, you know, there's a reason that almost all cases in federal court settle. You know, trials are expensive. They're Expensive for parties that are paying an attorney by the hour. But it's not that it's free to a person who doesn't isn't paying an attorney. You're spending a lot of your time in your life and your energy and your anxiety and your mental space. That has a cost, too. Coming here and putting your life into the hands of judges and or juries at the end of the day involves risk. Right. And it usually ends up being a kind of all or nothing game. You say, well, this shouldn't be about the technicalities. If it goes forward to motions to dismiss and summary judgment motions or trials, that's exactly what this will be about. Right. Will be about kind of are the legal niceties all complied with. And so settlement sometimes offers a way to kind of take a more

holistic or early view of the case before you have to expend all of that energy and time on a case. And so, you know, I would encourage you, Mr. Wolsenholm, to keep your, keep your. Keep an open mind about what settlement could be in the case. And, you know, I think it's productive to kind of keep everything on the table as long as possible, because you might be surprised, maybe you won't be, but there's times, you know, quite a few times I've been in settlements where I think parties are surprised when they have a more candid conversation, both with a settlement officer and through the settlement officer with the other side, to kind of see where that side is. And so I guess I'm just, I'm encouraging you to keep an open mind about the process.

22

00:18:13,080 --> 00:18:13,800

Yes, Ma.

23

00:18:14,440 --> 00:18:57,510

Can I make one observation? I don't want to talk obviously about the merits, so we'll save that for another day. But I just want to make clear for Mr. Wolsenholm and that we don't intend a settlement conference to, you know, stall out the case. I mean, these are things that happen on a separate track. We're going to proceed forward with discovery. We're going to proceed forward with responding to the pleadings, doing everything according to the rules. So having a settlement conference for, you know, April or for May, I just want to make sure Mr. Wolstenholm understands that that's not something that's slowing down the rest of the case or preventing it from proceeding. And so I think our view is that an early settlement conference is still very valuable. And if Mr. Wolsenholm just wants to, you know, head straight towards trial, those things aren't mutually exclusive.

24

00:18:57,750 --> 00:21:08,520

Yeah, that's a good point. And what Mr. Geller is saying is correct. Right. These are kind of two separate paths that go their own separate ways. Whatever Judge Olvean is going to do on what it sounds like is going to be a forthcoming motion to dismiss, the complaint is running on a separate path. And that will continue to go kind of while we are doing these things on the side, sometimes almost too much. Right. I've had a case where I was in settlement and the judge was issuing an order on summary judgment during our settlement conference. This is not the most productive way to have a settlement conference, but it's. But we're running entirely separately, and I'm not talking to Judge Olguin about what he's going to do about the merits. He's not having a conversation with me about what's going on in settlement intentionally. We are keeping our processes separate because I don't want to have inside information about, oh, he's about to deny that motion or grant that motion to dismiss or the summary judgment or whatever. And so, unfortunately, sometimes we keep it too separated and we don't. The left hand doesn't know what the right hand's doing. But that's. If you're concerned about delay, it's a separate process. And Judge Olguin's going to do what he's going to do on the kind of trial track of the case, a settlement officer is going to be doing it separately. Again, I'm using settlement officer intentionally because I do, especially with a pro se party, you know, Mr. Wilson home, for you to understand that it might. I love settling cases. It's one of my favorite parts of this job. But you won't offend me at all if you say, given the fact that you have this other role in our case, we'd rather have somebody who's truly independent and on an entirely separate track. Because the other role that I play in your case is that to the extent that there are discovery requests that can't be worked out between you, those would come to me for a hearing and I would be the one deciding those things.

25

00:21:08,920 --> 00:21:09,520

Yes, ma'.

26

00:21:09,520 --> 00:22:34,520

Am. And so if it's going to be a really a truly early settlement conference, you know, I will either encourage you to find one of my colleagues to do it or. And I can help you with that, obviously, or I'm going to take a waiver from both of you that you understand that I'm still the judge who's going to be here and discovery matters in your case. Okay, so it sounds like the, the Mr. Wolstenholm, you're going to get the response to the second amended complaint. You're going to get the insurance information. I. I'm hoping to facilitate with you a conversation about whether, you know, it sounds like Mr. Geller thinks that an early settlement conference might be useful and there could be some benefit to that in that for you as well, Mr. Wolsenholm. Because obviously if there is a motion to dismiss file and Judge Odin were to grant it, then at that point there is nothing more to do. Right. The case is over. And of course, it's unlikely that Riot is going to settle with you after the case dismissed. And so there, there can be benefits to early settlement. We do, though, sometimes want to make sure that there's enough. Everybody has enough information about the case for it to be a productive conversation.

27

00:22:35,960 --> 00:22:36,680

Sorry, Mom.

28

00:22:37,320 --> 00:22:51,010

No, so I was just saying that I don't know, Mr. Geller thinks an early settlement is useful. I want to hear from you about what you think about that. And also perhaps if there's particular things you feel like you need to have happen before settlement's going to be productive.

29

00:22:51,330 --> 00:22:59,410

Well, if Mr. Geller is saying that he wants an early settlement, what we going to talk about if everything's still outstanding?

30

00:23:00,530 --> 00:24:04,010

So in theory, here's how this would go. And again, I'm going to continue to say what a settlement judge would do at an early settlement. Right. What a settlement judge would do would be to look at the second amended complaint, look at the motion to dismiss if it's filed, and say. And look at the party's statements, particularly the statements of damages. Right. And have a conversation about whether the party's positions are realistic. So, for example, if I think that it is very unlikely that Judge Ogin is going to dismiss the case, then I might lean on Mr. Geller to settle for a higher number or a higher percentage of the damages that you're seeking. If I think that Judge o' Dean is very likely to dismiss your case, I, or a settlement judge could give you some feedback about that because it might suggest to you that it would be wise for you to consider a lower settlement.

31

00:24:04,170 --> 00:24:04,690

Yes, ma'.

32

00:24:04,690 --> 00:26:04,430

Am. And so you don't have to have cases, don't only settle right before trial starts. Right. Now Mr. Geller knows somewhat about his case, and I should say I know nothing about your case. So you shouldn't take anything I'm saying today, apart from reading your notes, and I looked at the complaint real quickly, you know, so don't take anything I say to reflect on the merits today. But if this case went forward to settlement the settlement judge would look at all of the plea meetings, look at the law that applies, look at the motions to dismiss, look at the statement of damages and try to give both sides some honest feedback about what's likely to happen in the case. And so quite often what that looks like, you know, I can't predict the future any more than you can. That's why case is settled, by the way. Right. Because you can't predict the future and neither can I. But what a settlement conversation might look like is to say, well, I think there's a fairly low chance of this being granted, but you've got a decent chance it's going to go away at summary judgment. And so. Right. And if it went to trial, there's, you know, some, these are some of the good outcomes, but here are some of the things that could happen. The jury could find that there's no element copied. The jury could find that the copying isn't worth as much as you think it is. And for all of those reasons, think about settlements. Right. So there is something to be done in an early settlement. Obviously, the closer you get to trial, the fewer variables there are. Right. But both sides have at that point spent a lot more money and time and energy on the case. And so given to the extent that there's, you know that, you know what kind of damages you're looking for right now that you know what your claims are, it's not entirely out of the question that a case settles early.

33

00:26:05,470 --> 00:26:44,230

Well, I'd like to say a lot of my anxieties are a lot more settled now. I didn't expect it to be so involved with the judges, obviously I've never been in that in the UK is different. Obviously. It seems that you're more of a party if you in between rather than just residing over proceedings. So I'm a lot more settled with that. I will say the quicker we settle, obviously the less I'll be wanting because it'd be less demand on me. It's been three and a half years already.

34

00:26:45,910 --> 00:26:52,000

I can tell just from the docket that it's taking a lot of your mental energy if nothing else.

35

00:26:52,000 --> 00:26:55,040

Yes, well, yeah, and I've got a five year old daughter.

36

00:26:55,040 --> 00:26:56,080

Get worse from here.

37

00:26:56,560 --> 00:27:35,180

Yeah, I've got a five year old daughter and I want to move on, I want to go back to writing. This is preventing me from continuing my writing, which I love and it's therapeutic writing for me and I haven't written since I reopened this case, so that's a big thing for me, really. I want to. I want to put this aside. I don't enjoy this. I love writing, so I want to get back to that. But it doesn't seem to me that Ryder are in a position to. There is some kind of element in me that wants him to take responsibility for it. So

38

00:27:37,740 --> 00:27:51,910

I don't know anything about the case, and I don't know anything about riot. Yeah, let's just put that on the table. But I think there's a settlement discussion is to talk about all of these things.

39
00:27:51,990 --> 00:27:52,510
Yes, ma'.

40
00:27:52,510 --> 00:28:16,930
Am. Right. A settlement in a way that, frankly, a civil case in the US Courts can't. Right. It is not within a jury's authority to order an apology. Just not a thing that happens in civil cases. That's why I was saying that money is the way that parties generally say they're sorry. If they're sorry.

41
00:28:17,010 --> 00:28:17,410
Yeah.

42
00:28:17,410 --> 00:28:37,530
And I don't mean to assume, Mr. Geller, you are, but settlements are a broader conversation, which is not to say that I think or make any representation that I could ever get anybody to apologize, but it is a broader conversation about how parties can move on from the case.

43
00:28:37,930 --> 00:28:38,450
Yes, ma'.

44
00:28:38,450 --> 00:29:05,800
Am. And so when you say they have to take responsibility, that's what settlement is for. Right. It's to have a conversation about the claims and the damages. And how does everybody move forward without spending the next year to two years of their life sucked into this miter of discovery requests and motion filings and all of that stuff.

45
00:29:06,520 --> 00:29:37,610
I think also if you go the whole way to. Even if you get. Go the whole way to the jury trial and you win, they still. Because you've had to do that, that long process, is still some kind of resentment lingering. I'd rather get to a position where we could. There's no resentment, which is what I've said to Mr. Geller from the start, but at the minute there ain't. Because it's my trauma writing.

46
00:29:38,250 --> 00:29:50,090
And that's another good reason to consider settlement. The longer people are dug into positions on both sides, the harder it is to move.

47
00:29:50,490 --> 00:30:05,810
Yes, ma'. Am. Can I just ask a question about Mr. Geller's insurance? Is that involved already or is it. Is your insurance been triggered already or has it still not got to that position?

48
00:30:07,010 --> 00:30:16,130
Look, I can say. I'm not actually sure whether I can or should say this, but I can. I can say, given my understanding of the retention of the policies, I don't anticipate insurance ever being involved in this case.

49
00:30:20,620 --> 00:30:37,020
Are there other concrete things that you, Mr. Wolstenholm, feel that you need or Mr. Geller that you feel like you need from Mr. Wolstenholm in terms of discovery before there's going to be a useful settlement proceeding.

50
00:30:38,460 --> 00:30:57,290
I have filed discovery already. I think it was Friday. And obviously the insurance and there's a few other things that I've asked Mr. Geller for, and that's all I feel that I need right now.

51
00:30:58,090 --> 00:31:07,770
Okay. And I know, Mr. Geller, you just got the discovery request. Does it seem like in general they're going to be things you're able to provide?

52
00:31:09,130 --> 00:31:55,260

Yeah, I mean, there are. So there are, you know, document requests are request for admission and interrogatories. I think the interrogatories are going to be. Yeah, I think the interrogatories and the request for admission will be pretty easy to answer. I don't think Mr. Wolstenholm will necessarily like the responses, but yes, I think those will be mostly answerable. All of the requests, we think, have some issues in our over broad. I mean, it's a, you know, we're dealing with a very large second amendment complaint that we feel is will based on some of the legal issues. So there are going to be issues that come up, especially on the document front. The requests are very much so. Yeah, I don't think it's going to be. You'll probably be hearing from us again if I, if I'm, you know, looking at my crystal ball.

53

00:31:55,740 --> 00:32:02,140

Yeah. And do you think it's valuable to try to settle any of that stuff first?

54

00:32:03,420 --> 00:32:18,900

I personally don't. I think it's very wrapped up to the legal issues of the case where there are just things, some things that are just not cognizable claims. And so I think it's going to be hard to, you know, when we're dealing with relevance issues, it's kind of going to all get tangled up together.

55

00:32:19,460 --> 00:32:21,620

Okay. Okay.

56

00:32:22,020 --> 00:32:40,680

Yeah. So that's why I think an early settlement is still going to be valuable. And I think, you know, the position we'll put in our settlement papers is probably going to be very similar to the position we'll put in our, you know, in an opposition to a motion to compel papers. I really think our position is going to be pretty uniform in that respect. So. Yeah.

57

00:32:40,680 --> 00:32:56,960

Okay. All right. So then what I think I'm inclined to do is I don't want to put either of you on the spot in terms of whether you want to go forward in front of me or whether you want me to try to find someone else to do this.

58

00:32:58,880 --> 00:33:12,440

Mom, it sounds so to me that I don't know if Mr. Geller is saying, oh, we're just going to keep trying to kick it out on this and kick it out on that. Why are we even trying to settlement if he's not. If they're not willing to come to the settlement.

59

00:33:12,600 --> 00:34:46,270

I guess here is what I took and Mr. Geller, you can tell me if I'm on base or not. I think their view is that there are parts of your complaint that. That don't have any sort of legally cognizable claim. Right. And so I don't know what he's talking about because again, I only skimmed the second amended complaint in preparation for this. Even when. And again, I'm not speaking specifically about Mr. Geller here. I'm speaking about settlement. There are cases where a party might say, even though I don't think certain claims or all claims are going to get all the way through this case, go to a jury trial and win, I am willing to consider settling this case. And so there can be there. This is why we were talking about these kind of two separate tracks. Right. A party can be telling Judge Ol Dean, I think you should dismiss the complaint in whole and still be participating in good faith settlement discussions and even potentially settling a case. Plenty of cases settle even though one side or the other says, I think there's nothing here. So that's what I think. That's what I read Mr. Geller to be saying. I hope that was accurate to you.

60

00:34:47,140 --> 00:34:48,500

I think that that's fair. That's fair.

61

00:34:49,300 --> 00:34:49,700

So

62

00:34:52,180 --> 00:34:52,540

yeah.

63

00:34:52,540 --> 00:35:16,200

Okay. So I don't see how we're. Right now. There's. With everything outstanding and Mr. Geller's. I've just obviously got to work towards whatever he's gonna put as a motion to dismiss again. So I think we just have to deal with that then. And so see what he's got to say and then sort that out.

64
00:35:17,080 --> 00:35:18,920
And so you said that that's due April.

65
00:35:19,480 --> 00:35:27,240
April 4th. And again, I do think it would be productive to have a settlement conference even while that motion is pending. I think there's plenty.

66
00:35:28,520 --> 00:36:07,280
What I was actually going to propose is that if you file it on April 4th and if I or a different settlement officer could go. If you could build in enough time in the motion schedule so that you could. So that we could have a settlement conference after that motion is filed so Mr. Wilson can see more concretely what the claims are, but before the motion is decided. So somewhere in that gap that could be. That could be a productive time to settle.

67
00:36:08,080 --> 00:36:31,440
I would agree. I also. So two of the dates we proposed were April 17th and April 24th. That would also be after we serve our responses to the discovery request. Now obviously some of those responses will be objections, some of them won't be. And I do think that's an opportune time for an early settlement. Recognizing that you may not settle, Mr. Wilson may not be satisfied. That's fine.

68
00:36:31,740 --> 00:36:32,140
Yeah.

69
00:36:32,140 --> 00:36:35,420
But I think that timing winds up actually pretty well.

70
00:36:35,740 --> 00:36:54,060
Okay, well, so why don't. Why don't I do this again? My goal is not to put you on the spot in trying to decide if you want to go forward with me or someone else. But. But I do think, Mr. Wolstomholm, that it might be advantageous for you to consider at least a first attempt at settlement sometime in late April.

71
00:36:54,460 --> 00:36:54,980
Yes, ma'.

72
00:36:54,980 --> 00:37:08,480
Am. And so what I'll ask each of you to do is. I'm happy to even do it such that you don't have to tell me who didn't want me. I'm not going to be offended.

73
00:37:09,120 --> 00:37:10,480
I'm happy to have you, Mom.

74
00:37:11,440 --> 00:37:14,480
Okay, so are we for the rest? Yeah.

75
00:37:15,680 --> 00:37:33,520
Okay. Well then let's. Here's what I'll do. We'll pick a date. But I will give you both another chance. If you get off this, call Mr. Wilson home and you think maybe it would be better to have someone else, then we'll find somebody else.

76
00:37:33,680 --> 00:38:01,450
Can I ask a couple of questions just about the actual settlement conference? Because obviously I haven't been to one before. Maybe a part of the problem here is I am a litigant proser. I'm doing it myself. It's very different because I'm from the uk So I have been involved with litigation before, but it's completely different in the uk. So could I ask.

77
00:38:02,410 --> 00:38:06,170
This is a good time for you to get any questions asked about the kind of process?

78

00:38:06,570 --> 00:38:35,750
Yeah, I'm a bit. I don't really know what to expect. If the situation is there, they're going to try and get it kicked out anyway, which I don't think they're going to be able to. So how are we going to come to any agreement when they're saying their position is they're not coming to the table? My position is I'm coming to the table if they put a half decent offer in. So how. I don't understand.

79
00:38:36,870 --> 00:38:45,810
I think that's where you're maybe misconceiving the fact that they are going to move to dismiss.

80
00:38:46,210 --> 00:38:46,690
Yes.

81
00:38:46,690 --> 00:38:50,290
Does not mean that their final settlement position is zero.

82
00:38:50,930 --> 00:38:51,570
Okay.

83
00:38:51,810 --> 00:39:09,580
Right. It may not be anywhere near as high as what you would like it to be. It won't be. Right. Because that's especially on the beginning. Right. They're not going to come in and say it is unlikely that they're going to come in and give you everything that you want.

84
00:39:09,810 --> 00:39:10,930
Want. Right.

85
00:39:11,410 --> 00:40:47,890
But again, this is what I. What I was kind of explaining about these kind of bookends. Right. You're gonna tell me what your very best, your sincerest wish would be, and they will, too. And then what I will try to do is, in general, and again, generally speaking, because I don't know anything about the case in general, both sides may have some misperceptions about the structure, strengths, and weaknesses of their case. Right. And really what settlement is about is talking to both parties about those misperceptions. Right. So settlement conferences are confidential. And so I'm not going to use too close of an example. Right. But I just did a settlement conference with a party without an attorney and a represented party, and I thought that both sides in that particular case had part of it right and part of it wrong. Right. I thought that there were certain parts. I thought that, you know, one side was wildly optimistic about how much their case was worth, and the other side was really in denial about the likelihood of liability. And so I worked on both sides of the case to try to bring them to some greater understanding of the strengths and weaknesses of their case. That's kind of what settlement is. Right. And so it wouldn't be in a zoom room like this. What will happen is I will put both of you in separate zoom rooms so that I can have a candid conversation with both of you.

86
00:40:48,130 --> 00:40:48,650
Yes, ma'.

87
00:40:48,650 --> 00:40:51,730
Am. And try to talk about the strengths and weaknesses of the case.

88
00:40:51,890 --> 00:40:52,490
Yes, ma'.

89
00:40:52,490 --> 00:41:25,300
Am. And talk about kind of what a reasonable settlement would be. And sometimes in settlement, one side will say, well, but what about this thing? And I'll say, well, have you told the other side that that's a thing? Because maybe you haven't yet. And so maybe there's something. Maybe their position is unrealistic because they don't know something about your case and vice versa. Right. That's how settlement works. It can work even if a party is taking the position in court that the entire case should get thrown out.

90
00:41:25,610 --> 00:41:26,050
Yes, ma'.

91

00:41:26,050 --> 00:41:27,210
Am. Okay.

92
00:41:27,770 --> 00:41:28,290
Yes, ma'.

93
00:41:28,290 --> 00:41:33,770
Am. So. So let's look. Let's. Let's get this process started.

94
00:41:34,170 --> 00:41:34,570
Yes.

95
00:41:34,570 --> 00:43:16,210
All right. Mr. Wilson home. And then we'll see how it works. But if it turns out that there's some delay or something that makes these dates unrealistic. We can always move them, but at least we'll have something. We'll kind of get the ball rolling. The first step is for you to exchange your settlement offers. Not. Not to me, not filed anything in court, but to exchange some offer. And if that's the point, Mr. Wilson home. You can say, I would walk away from this case for x. And Mr. Geller will say, we Riot would walk away from this case for Y. Yeah. Right. And then both of you will send to me, not to opposing counsel, not put on the docket a statement about your case and why you're so confident. Right. In every case, if both sides are really confident that they're going to win and run the table and get everything they want, somebody's not. Right. Right. And so the only way to start that conversation is for you to stay in your settlement. This is why I'm so confident. Right. And then Mr. Geller and his client are going to say, this is why we're so confident. And I, as a neutral, can look at it and try to figure out, usually the truth is that neither side is quite right. Sometimes the truth is closer to one side than the other. But in general, everybody can purchase. Can learn something from. From hearing from a neutral party some perspective on their case.

96
00:43:16,690 --> 00:43:17,410
Yes, ma'. Am.

97
00:43:17,410 --> 00:43:19,090
Okay. All right.

98
00:43:20,450 --> 00:43:28,530
I've already. I've already put an offer to riot, so they know my position. But.

99
00:43:30,130 --> 00:44:17,100
So I think that's. Obviously, if you've already done that, that's fine. My. My instructions have some kind of guidance. Right. In general, a good faith offer is not what you would win on your very best day if everything between now and your verdict and appeal went your way. Right. Right. Because it's unlikely that if you. If you truly are interested in settling the case, which I take you at your word that you are. Are. It's unlikely that riot is going to settle for exactly what would happen on your very best day with. With a jury of people from. Shoot. You're from Coventry.

100
00:44:17,100 --> 00:44:20,620
What's the Coventry, mom? Coventry.

101
00:44:20,700 --> 00:44:29,670
Coventry. Yes. I was close. It's unlikely they're going to settle for what would happen if you got 12 of your cousins on the jury and one on appeal. Okay.

102
00:44:29,670 --> 00:44:30,230
Yeah.

103
00:44:31,190 --> 00:45:06,170
It's also unlikely that the case is going to settle. If Judge Olguin is a huge. Right. Is the worst possible draw for you. It's likely to settle somewhere between. So even though you've complied, even though you've put out an offer, it's worth looking at that Instruction and thinking about not what, not your offer shouldn't be the very everything you possibly hope to get, but at least a starting place of what it would take for you to walk away.

104

00:45:06,650 --> 00:45:15,450
Yeah, well, I've got a minimum of. Minimum which I. It's not worth anything below that. I wouldn't. I wouldn't.

105
00:45:15,450 --> 00:45:19,930
So look at the instructions and follow them.

106
00:45:20,490 --> 00:45:22,090
Have you already sent that, mom? Or you.

107
00:45:23,250 --> 00:45:26,930
No, I'm gonna do it right now, once I have a date. So let's talk about dates.

108
00:45:27,250 --> 00:45:27,770
Yes, ma'.

109
00:45:27,770 --> 00:45:27,850
Am.

110
00:45:27,850 --> 00:45:42,210
And in particular for you, Mr. Wilson Home. What's the ideal time for us to start? California time, so that you don't fall asleep partly through what works for your work schedule and also for the time difference.

111
00:45:43,250 --> 00:46:13,960
I'm a writer, Mum, so my work schedule is whatever I want. But this actually happens to be okay for me. Just not on a Tuesday. And then this around this time, myself and Mr. Geller have had calls around 5pm here, which is 9, 10 o' clock in the morning there for you. That also works. But yeah, maybe what I might suggest

112
00:46:13,960 --> 00:46:49,310
is that we start a little earlier. Right. Than. Right. We want to make sure we have enough Runway. I will tell you that my personal view of being a settlement officer is that I'm going to do everything I can to settle the case. I've had settlement conferences that have gone 30 minutes because it's just not going to settle, but I've had ones that have gone all day because if we're making progress, if we're coming together, if we're making progress, then I try to keep everyone here. So I think if you can start earlier than one o', clock, I would. I would do it.

113
00:46:50,350 --> 00:47:05,190
Yeah. I can start. Which would be 6 o' clock here would probably be good for me. Which 6pm which would be 10pm As 10am 10am okay for you?

114
00:47:05,190 --> 00:47:12,750
All right. That's a much better time to start here than than 1pm so let's look at. And you said not Tuesday.

115
00:47:13,620 --> 00:47:18,980
Not Tuesday. That works because everyone here would have went home and then I couldn't use my friend's office.

116
00:47:19,620 --> 00:47:58,430
Sure. So. And Ms. Howard, my courtroom deputy is here too. She's going to help us with the scheduling piece of it. I don't see any reason we couldn't do the 24th. Your Honor, we have a scheduling conference at 10:00 on April 24th. Okay, which case it's in? Maroquin versus Porsche cars north America. Interesting. That's going to be pretty quick. So we could probably start here at 10:30 on the 24th. Does that sound good to you, Mr. Wilsoner home?

117
00:47:58,590 --> 00:47:59,190
Yes, ma'.

118
00:47:59,190 --> 00:47:59,270
Am.

119
00:47:59,270 --> 00:48:02,190

On the map. Okay. And Mr. Geller, does that work for you?

120
00:48:02,190 --> 00:48:04,910
Yes, that works. And I. And I know my client is available that day, too.

121
00:48:05,150 --> 00:48:07,230
Is it. Is that 24th of March, Mom.

122
00:48:08,040 --> 00:48:53,400
The 24th of April? Yeah, we want to put it a little bit out, Mr. Wolferholm, because in the meantime, Mr. Geller is going to get you some of the stuff that you. That you've asked for in terms of your discovery requests. He's also going to have filed his response to your pleading. Sounds like that's going to be a motion to dismiss, and that's going to give you a lot of information about why. Why they think that certain or all claims are not legally viable. And so that's good information for you to have. And it's also good information for me to have because that helps me kind of evaluate the strength of their claims and their confidence that certain things are going to be dismissed.

123
00:48:53,800 --> 00:48:59,280
How long do I have to respond to those Claims? Is it 14 days?

124
00:48:59,280 --> 00:49:11,780
Yeah. So our local. Our local rule gives certain. Basically what it does is it requires Mr. Geller to set a motion hearing and it keys your response off of that date.

125
00:49:12,260 --> 00:49:12,900
Okay.

126
00:49:12,900 --> 00:49:13,380
Yeah.

127
00:49:13,860 --> 00:49:28,830
So the local rules tell you what it is and it's based on. Unless Judge Olgeen has different rules in particular. And Mr. Geller, you might know in particular, but his are standard.

128
00:49:28,830 --> 00:49:39,910
He does have a pretty tight. Like, we kind of have to set it pretty close to the minimum. But we're happy. I mean, if we need a stipulation to give Mr. Woolston home some more time, that's absolutely not a problem, so we can discuss it.

129
00:49:40,550 --> 00:50:12,800
So I think if you get the response and you talk to Mr. Geller and the response time is not going to be enough, particularly if the reason is. We'd like to try to squeeze in a settlement between the time of the motion and the hearing. Judge Olvean may be willing to change that schedule so that everybody has a little bit more time in it. But in the first instance, you can talk to Mr. Geller about that, because I think he would probably be amenable to helping you file a stipulation to change that schedule to facilitate.

130
00:50:12,800 --> 00:50:13,400
Absolutely.

131
00:50:15,080 --> 00:50:19,280
When you get the motion, talk to Mr. Geller if you think it's. The timing isn't going to quite work.

132
00:50:19,520 --> 00:50:20,320
Yes, ma'. Am.

133
00:50:20,960 --> 00:50:45,910
Okay. So I'm going to issue an order today. It's going to have information about kind of that it forces the timing in terms of when those settlement, mediation briefs are due to me. Just to reiterate this, Mr. Wilson Home. You're not going to file this on the docket. Okay. You're just going to send this by email to me and you

don't. It's the one time in court you're not going to see. See your opposing counsel when you contact the court.

134
00:50:46,070 --> 00:50:46,630
Okay.

135
00:50:47,190 --> 00:51:10,180
It's a wonky system, but what it's meant to do is to make sure that you feel like you can speak freely. Obviously, if the motion was. Or if the brief was going to go to Mr. Geller, too, you'd want to be more guarded in what you said. And the goal is to make sure that you feel comfortable having a candid. Starting a candid conversation with me about your claims.

136
00:51:10,260 --> 00:51:14,740
Mom, is that the Christina Howard email that I got? Yes, ma', am, but it's.

137
00:51:14,740 --> 00:51:19,540
Well, no, it's going to be. It's BFM Chambers, but it's going to be in the order.

138
00:51:19,860 --> 00:51:20,460
Yes, ma'.

139
00:51:20,460 --> 00:51:20,660
Am.

140
00:51:21,300 --> 00:51:30,020
Yeah, it's. It's important just when Ms. Howard is out or something like that, that one goes to a broader range of people to make sure it doesn't get missed.

141
00:51:30,180 --> 00:51:30,780
Yes, ma'.

142
00:51:30,780 --> 00:52:29,220
Am. Okay, so we'll issue the order on timing today. And to the extent that the timing ends up not working, you can reach out to me and let me know. Or if something happens in the case that makes it no longer quite the right timing, you can let me know that because I certainly don't want to waste your time or mine if there's some development in the case that makes settlement unlikely. But otherwise, I would just encourage you, Mr. Wilson Home in particular, come into this with an open mind. And the thing about settlement is, unlike a motion hearing or a trial, it's within your control. Nobody's going to trick you into settling or force you to settle against your will. And so. But it works best when everybody kind of comes in with a little bit of an open mind about what they're. What their case is. All right.

143
00:52:29,620 --> 00:52:37,340
Could I just say it has lessened the burden, speaking to you and understanding more about the process.

144
00:52:37,340 --> 00:52:57,720
That's what I was hoping. You can continue to lob things on the docket all day, but settlement is kind of a different proceeding. It's meant to facilitate a conversation. So that was my hope in getting you on Zoom, and I'm glad it's relieved. Maybe some of your concerns about what the process is, is. And let's see where it goes. Okay?

145
00:52:57,880 --> 00:52:59,880
Yes, Ma. Thank you very much.

146
00:53:00,440 --> 00:53:06,360
I'll let you go and get to bed, Mr. Wolse. Or, you know, maybe if you're a writer and you stay up all night.

147
00:53:06,360 --> 00:53:07,720
I gotta pick my dog up.

148
00:53:08,840 --> 00:53:13,160

Or at least you can get get home to your 5 year old if she's a night owl.

149
00:53:14,600 --> 00:53:15,800
All right. Thank you.

150
00:53:16,200 --> 00:53:17,240
Thank you, your honor.

151
00:53:17,320 --> 00:53:17,960
Thank you.

152
00:53:18,040 --> 00:53:19,480
Okay, bye then. Bye.

153
00:53:19,480 --> 00:53:36,110
Bye. Take care. It's.

## C-3: Later Meet-and-Confer with Riot Games' Counsel

*May 2025*

1
00:00:00,640 --> 00:00:01,360
Not too bad.

2
00:00:02,560 --> 00:00:18,160
Okay. Excellent. So I wanted to just get started on some of the easy stuff on our end, which I think will be pretty quick. So the issues we want to discuss. No, I'll just get done with mine real quick.

3
00:00:20,480 --> 00:00:24,000
Predate that. And I need. I've got a few things. Okay.

4
00:00:24,000 --> 00:00:30,190
That's. Okay. So the first thing we're going to be moving to have your ETF filing privileges revoked.

5
00:00:30,590 --> 00:00:55,070
Do you consent to start talking over me and going ahead. We're not going to get anywhere like this. So I want to rules first, and then let's do it in a systematic order. And you've got all the questions. You've got all the things that have been outstanding, that you've been ignoring. So we either go through that. You don't just shout over me and tell me what you're going to do, we'll do it properly, or we ain't doing it. Simple as that.

6
00:00:55,790 --> 00:00:59,870
Mr. Wolstenhelm, do you consent to having your ECF filing privileges revoked?

7
00:01:00,030 --> 00:01:21,590
No. But stop asking me questions. Because you're doing. You're just going ahead with your stuff and not doing again. Ignoring mine all of the time. So what I'm gonna do is I'm gonna go through the chart and the questions that I've given you and you keep ignoring every time. And then we can go on to your stuff because these predate yours.

8
00:01:21,590 --> 00:01:24,270
Got it. So, Mr. Then just one last question.

9
00:01:24,430 --> 00:01:24,830
No.

10
00:01:24,830 --> 00:01:31,450
No. Got one last question. Do you consent to not contact Riot employees any further?

11
00:01:31,610 --> 00:01:34,010
I'm not answering your questions until you answer mine.

12
00:01:35,210 --> 00:01:37,010
Okay. So you're not willing to discuss that. Anything.

13
00:01:37,010 --> 00:02:11,520
You're not willing to discuss anything. Are you refusing that? I'm gonna have this on record and I'm making notes. Are you refusing to discuss this meet and confirm matters? Is that what you're doing? Are you refusing? I'm giving you all the questions. You just keep skirting around it and still talking over me. So we either do it in a systematic answer and you start listening and you start. You start actually doing what the meeting confers for, or we're not doing anything. So are you refusing your positions on meet and confer?

14
00:02:12,480 --> 00:02:23,280
I'm not refusing. I'm not refusing at all. I just wanted to make sure I had a clear statement of what your position was on the two motions we're going to bring. And I have your clear position. So I'm satisfied that we've met and conferred on the issues.

15
00:02:23,360 --> 00:02:32,990
We haven't met and conferred. I haven't. I don't think we Would have to either of them. You're just talking over me and saying, I've done my meta convert. But when you haven't. You clearly haven't.

16
00:02:32,990 --> 00:02:34,990
No, we've now addressed them. You've told me your position.

17
00:02:35,070 --> 00:02:40,990
I haven't told you any position. You're just talking over me. I'll just submit.

18
00:02:41,230 --> 00:02:44,430
I'll just submit the evidence then. So now you can go on with your matters.

19
00:02:44,830 --> 00:02:45,270
Okay.

20
00:02:45,270 --> 00:02:49,470
And go on with what you have. We've already addressed what I needed to address. Now we can address what you need to address.

21
00:02:49,790 --> 00:03:21,780
Okay, let me just get my stuff up. Obviously, you've already had all my requests for. Sorry, I'm just getting up. Okay, so the first thing is the initial disclosures that you still haven't given me. So when does Wright intend to comply with the obligations to meet personal documentation?

22
00:03:23,460 --> 00:03:25,860
You're mistaken. We served those quite a long time ago.

23
00:03:27,380 --> 00:03:34,820
Circled around them. Do you intend to actually give me any meaningful answers to any of that?

24
00:03:35,860 --> 00:03:42,820
We served our responses to. We served our initial disclosures. I think maybe. I don't know if you've forgotten that, but we served them.

25
00:03:42,820 --> 00:03:57,620
No, you just. You just denied everything. Will Royer agreed to produce in a timeline with his internal documentation of arcane showing when the key scripts and production material was created.

26
00:03:59,460 --> 00:04:08,020
Your discovery requests are the subject of an informal discovery conference that scheduled on May 15, and we'll be happy to address discovery issues there.

27
00:04:09,860 --> 00:04:21,630
May 15 is not an intent we don't have to attend, do we? Because I'm not going to it. Because obviously I've put in the judge recusal request.

28
00:04:23,470 --> 00:04:26,110
I'll be attending it. What. What you do is your choice.

29
00:04:26,510 --> 00:04:34,030
I'll put a judge recusal request. I'm not going near that judge that you've obviously got to. That didn't do the conference.

30
00:04:34,430 --> 00:04:42,680
Sir, if you're gonna. If you're gonna accuse me of acting unethically or doing anything improper, I'm going to terminate this call. You do that one more time, we're done.

31
00:04:43,000 --> 00:04:46,120
Stop threatening me. I didn't do anything. You're just making things up.

32
00:04:46,840 --> 00:04:54,360
You just accused me of getting to the magistrate judge. That's unethical. If you accuse me of unethical conduct again, I'm terminating the call.

33
00:04:55,560 --> 00:05:01,800
If you're not willing to act sensibly and answer the questions, then I'll just have to put that to the judge.

34
00:05:02,680 --> 00:05:06,960
You can go back to your list. But I'm just telling you, next time you accuse me of unethical behavior, when

35
00:05:06,960 --> 00:05:18,490
will Riot produce Internal logs showing access to Roy forged submissions platform including IP addresses, timestamps and uploaded content.

36
00:05:20,410 --> 00:05:23,290
I'm sorry. It's hard to understand you when you're shouting. Could you try that again?

37
00:05:23,370 --> 00:05:27,530
When Will Riot produce internal server logs.

38
00:05:27,770 --> 00:05:34,650
It's hard to understand you when you're shouting. When will Riot. It's a little hard to understand you when you're shouting. Can you speak in a normal voice for a second?

39
00:05:34,650 --> 00:05:35,690
When will Riot.

40
00:05:37,450 --> 00:05:44,920
I'm sorry, I'm just. I'm having. No, because you're shouting at me, so I'm having trouble understanding you, so if you could just talk to me. I'm not shouting. Then we could try again.

41
00:05:44,920 --> 00:05:58,760
When Will Riot serve its internal logs of access to Riot Forge submission platform, including IP addresses, stamps, timestamps and uploaded content.

42
00:06:00,680 --> 00:06:06,920
If you have a legitimate discovery request that's been served, we're going to address those at the discovery conference on May 15.

43
00:06:07,320 --> 00:06:14,430
Has one searched the material ready for and its servers for Bloodborg.

44
00:06:15,310 --> 00:06:21,310
We're going to address the scope of your discovery requests at the informal discovery conference that the court has ordered on May 15.

45
00:06:21,710 --> 00:06:23,310
So you're just going to say that to. Everything?

46
00:06:24,830 --> 00:06:26,270
I'm going to say where it's applicable.

47
00:06:26,830 --> 00:06:36,140
So do you agree to ask the judge to recuse herself? Because I'm going to do it anyway. No.

48
00:06:36,140 --> 00:06:38,100
You obviously don't have any legal basis for that, so.

49
00:06:38,100 --> 00:06:51,980
No, I obviously do. In terms of the harassing culture around Royer, it's. It's both yourself, your behaviour. Do you agree to stop being harassing and agreeing to stop acting in bad faith?

50
00:06:53,660 --> 00:06:58,860
I have not acted in bad faith. I have not harassed you. And if you accuse me of something like that again, call in. Very simple.

51
00:06:59,100 --> 00:07:04,470
Okay, see you later then. Do you agree to. Are you still there?

52
00:07:06,150 --> 00:07:06,910
I'm still here.

53
00:07:06,910 --> 00:07:26,840
Oh, well, you called. Didn't end then, did it? Right. The culture around Royer and all the people that keep harassing me is willing to do anything about that. Hello? What's that?

54
00:07:26,840 --> 00:07:29,120
Sorry, I didn't understand you. Can you say that again?

55
00:07:29,520 --> 00:07:42,720
So Riot's culture around it is very toxic. Their community keep harassing me and threatening me. Bomb threats, threats of iepo. You've seen a lot of it. Do let me.

56
00:07:43,440 --> 00:07:45,200
I have not seen. I have not seen that.

57
00:07:46,240 --> 00:07:48,960
We have. Because it's all been filed. A lot of it's been filed.

58
00:07:49,760 --> 00:07:57,040
No, I have not seen any threats to you from Riot's community. I've not seen any bomb threats. I have not seen anything like that.

59
00:07:57,120 --> 00:07:58,880
You have because it's been it's been filed.

60
00:07:59,440 --> 00:08:01,040
No. No, you're not correct.

61
00:08:01,520 --> 00:08:02,640
It has been filed.

62
00:08:03,600 --> 00:08:10,640
Well, whatever. I mean, the things you're writing, you filed them. But I haven't seen any threats from Riot's community, and I don't believe there have been any.

63
00:08:11,120 --> 00:08:15,840
So you. So you haven't. Are you saying that you haven't read any of.

64
00:08:15,840 --> 00:08:20,320
Well, I've read. I've read the. Not. I've read the gibberish you file, but there's no penalty threats against.

65
00:08:25,690 --> 00:08:32,250
So Wright does not intend to do anything about the threats.

66
00:08:34,570 --> 00:08:35,930
I'm not aware of any threats.

67
00:08:37,450 --> 00:09:04,660
Do you just lie all the time? So I need to speak about Curtis Brown Group and your motto agency, Johnny Geller and Phil. Felicity Blunt's involvement in all of this. So are they denying that Curtis Brown Group, United Talent Agency, Johnny Geller or Felicity Blunt had any involvement in the production of Arcade?

68
00:09:08,020 --> 00:09:24,080
Again, any discovery requests, properly served and within the scope of discovery, will address at the informal discovery conference. You've served a number of discovery requests. We've responded to them. We have disputes about the scope, and we're going to address that at the discovery conference and proceed from there.

69
00:09:24,080 --> 00:09:32,240
Okay, so Johnny Geller and Felicity Blunt. Their names crop up a lot of times in the filings. Do you agree that.

70
00:09:33,120 --> 00:09:34,080
Sorry, say that again.

71
00:09:34,400 --> 00:09:42,920
Johnny Geller and Felicity Blunt. Their names have cropped up a lot. The filings. Do you agree that.

72
00:09:44,200 --> 00:09:46,760
I've seen you say that many times, yes.

73
00:09:47,000 --> 00:09:55,960
Yeah. So have they been informed that they. That their names are in these filings?

74
00:09:57,320 --> 00:10:00,280
I don't know. These are public filings. I don't know.

75
00:10:01,000 --> 00:10:02,760
Has Roy informed them?

76
00:10:04,040 --> 00:10:06,040
I'm not prepared to answer that. I don't know.

77
00:10:15,650 --> 00:10:37,020
So for a long time now, even before these were open, I've told you about my intent to open criminal procedures against Christian Link and maybe Forte, maybe Alan Forte as a defendant. Has Christian Link been told of these proceedings and that intent?

78
00:10:38,380 --> 00:10:39,660
I'm not going to answer that question.

79
00:10:44,940 --> 00:10:48,380
Are you prepared to actually answer any of my questions?

80
00:10:49,740 --> 00:10:52,780
I've answered many of them already. Depends what your questions are.

81
00:10:52,780 --> 00:10:57,900
With any in depth or usable knowledge at all?

82
00:10:59,030 --> 00:11:03,590
I don't know. That's what is usable to you? I don't know what you'll use. I don't know.

83
00:11:05,270 --> 00:11:12,230
So Amanda Overton submitted material independently. Is that correct?

84
00:11:14,470 --> 00:11:15,910
I don't know what you mean.

85
00:11:16,630 --> 00:11:19,110
So do you know who I mean by Amanda Overton?

86
00:11:19,670 --> 00:11:21,030
I've seen you use that name.

87
00:11:22,310 --> 00:11:23,350
Do you know who it is?

88
00:11:26,160 --> 00:11:32,320
My knowledge is not important. What's your question?

89
00:11:32,960 --> 00:11:49,550
So has Amanda Overton been involved in independent submissions to games or was she involved with submissions through utmost.

90
00:11:51,620 --> 00:12:04,900
And it sounds like you're asking me a discovery question. If you've propounded legitimate discovery, we've responded. We have disputes about the scope and we're going to address those at the informal discovery conference between the magistrate judge on the 15th.

91
00:12:05,619 --> 00:12:08,500
Is that the same formal request for admissions?

92
00:12:11,380 --> 00:12:22,630
Well, I don't know what issues you have with discovery. We've served our discovery responses. If you have issues with them, you're going to address those with the judge at the informal discovery conference. I don't know what your issues are.

93
00:12:22,710 --> 00:12:28,870
Will Riot commit to producing written responses to the questions I've sent to you already in good faith?

94
00:12:31,190 --> 00:12:35,670
We respond to discovery requests that comply with the Federal Rules of Civil Procedure.

95
00:12:37,270 --> 00:12:54,430
You've just skirted around everything I've said. And also you've skirted around the insurance disclosures that I still haven't had. Is right going to. Has Wright got insurance and is it going to disclose those insurance details?

96
00:12:54,590 --> 00:13:12,370
We've said we'd make policy available for inspection in our initial disclosures subject to a stipulated protective order, and we're going to address the protective order with the judge at the May 15 discovery conference. Unless you're willing to to a protective order right now. But you've previously told me you're not willing to.

97
00:13:12,370 --> 00:13:18,930
I don't believe that we should. Anything should be protected unless it's. There's a reason for insurance.

98
00:13:19,090 --> 00:13:20,930
What about your. What about your manuscript?

99
00:13:21,330 --> 00:13:31,330
Yeah, my manuscript. That's a reason for protection, though. Not insurance. Isn't a reason for protection. But.

100
00:13:32,690 --> 00:13:33,090
But.

101
00:13:36,380 --> 00:13:58,620
Sorry, mate, I'm just typing. So, In terms of spoliation of evidence, has Roy Gaines retained its evidence?

102
00:14:01,670 --> 00:14:09,030
There's been no spoilation. I'm not going to get into any further details than that. But your accusations of sporiation are 100% baseless.

103
00:14:09,830 --> 00:14:12,790
Has riot even looked at its servers yet?

104
00:14:13,430 --> 00:14:18,950
Yeah. I'm not going to get into details about Riot's search and document collection efforts. I'm not going to get into that.

105
00:14:19,750 --> 00:14:22,870
Whose idea was it to produce the Wayback Machine?

106
00:14:23,830 --> 00:14:25,110
I'm not going to get into that.

107
00:14:25,500 --> 00:14:29,260
Do you agree that it doesn't show what you pretended it does?

108
00:14:30,460 --> 00:14:31,980
I'm not gonna argue with you, sir.

109
00:14:32,620 --> 00:14:33,260
Does it?

110
00:14:34,220 --> 00:14:41,180
I'm not gonna argue. I know what it shows. You have your own beliefs about a lot of things. I'm not gonna argue with you and try and persuade you about facts.

111
00:14:41,499 --> 00:14:46,060
So have you seen that in 2023? I actually tested it

112
00:14:48,220 --> 00:14:52,040
I don't know what you have or you make a lot of claims that I don't believe are true.

113
00:14:52,270 --> 00:15:04,670
So. Have you looked at the evidence that I've produced that says that shows that in 2023? I actually tested and I said the, the ticket number as well. I tested that route and it was still open.

114
00:15:05,550 --> 00:15:11,950
I think you and I have very different definitions of evidence. The things you believe are, are not the thing.

115
00:15:13,630 --> 00:15:19,120

Sorry, sir, I got a thing. I'm think you broke off things you.

116
00:15:20,960 --> 00:15:24,480
No, I'm just saying I, I, I, I don't know what you believe.

117
00:15:25,280 --> 00:15:40,880
Yeah, I know in 2023 and I've shown you the evidence of this and I've shown the ticket number. I actually pressure tested that test and sent it off and I've produced that in the.

118
00:15:43,380 --> 00:15:44,580
You can believe what you want to believe.

119
00:15:46,820 --> 00:15:51,700
So. What do you mean I can believe? Have you look. Have you actually looked at the filings that we're talking about today?

120
00:15:54,500 --> 00:15:56,260
I'm familiar with the filings in this case.

121
00:15:56,260 --> 00:16:05,140
Okay. So in those filings, do you know that there is a ticket number from the Royal Forge submission portal in 2023?

122
00:16:08,260 --> 00:16:12,760
I'm not going to argue with you about the facts. You have a very different view of the facts than I do.

123
00:16:13,160 --> 00:16:15,880
Have you seen that? I've submitted that.

124
00:16:19,400 --> 00:16:27,720
I see your filings. I don't know that anything in any of your filings is true. In fact, I believe the vast majority of what's in your filings is not true.

125
00:16:41,330 --> 00:16:48,050
Okay. Do you know the wider allegations surrounding some of the people mentioned in these filings?

126
00:16:51,810 --> 00:16:53,570
Are you asking me if I've read your filings?

127
00:16:55,010 --> 00:16:59,890
Have you heard of the wider allegations in, in the industries of these people?

128
00:17:01,340 --> 00:17:11,660
Mr. Wilson, you're not deposing me today. If you have some motion you intend to bring and you want to meet and confer about some motion you're planning to bring, do that. But this is not an interview.

129
00:17:15,340 --> 00:17:40,630
Sorry. This. So have you seen the access routes that I have submitted?

130
00:17:46,230 --> 00:17:48,630
All right. Is there something in particular you're meaning?

131
00:17:48,630 --> 00:17:49,110
Yes.

132
00:17:49,110 --> 00:17:54,500
Bring about? What's the. Why are you asking that question? Do you understand what this process is?

133
00:17:54,500 --> 00:17:57,220
Yeah. So have you seen the access routes that are submitted?

134
00:17:59,380 --> 00:18:08,900
Why are you asking that? I do understand what a meeting confers. A meeting confers an opportunity for us to discuss disputed issues regarding to a, an anticipated motion.

135
00:18:09,220 --> 00:18:09,780
Yeah.

136
00:18:10,740 --> 00:18:13,300
That, that one of the parties plans to bring.

137
00:18:13,380 --> 00:18:13,820
Yeah.

138
00:18:13,820 --> 00:18:19,990
So I've addressed the motions that Riot intends to bring. What motions are you intending to bring? That any these issues go To.

139
00:18:20,070 --> 00:18:34,110
So I'm going to put address. I'm going to put a motion to make a settlement on. Make a. Sorry. To. To make an order on access routes showing that.

140
00:18:34,110 --> 00:18:36,150
Yeah, that's not a motion. That's not a real thing.

141
00:18:36,390 --> 00:18:37,750
Yeah, that's not.

142
00:18:37,750 --> 00:18:52,910
That's not a thing that exists procedurally under the federal rules of civil procedure or the local rules of this court. I any. If you continue to file motions that don't have any basis in procedure, either the court's going to strike it or we're going to ask the court to strike it.

143
00:18:53,470 --> 00:19:02,990
You're saying that. What? You're saying that it isn't a valid motion. I asked for a motion for a more definite statement on access, on your position for access routes.

144
00:19:04,750 --> 00:19:16,850
Correct. As you're articulating right now. That's not a procedure that I'm aware of. I don't believe that's a proper motion. I'm not your lawyer. I can't tell you what to do. But from my perspective, that's not a proper motion.

145
00:19:45,420 --> 00:19:50,540
Well, it doesn't look like you're actually going to answer anything. That's going to be use of me. Are you?

146
00:19:51,660 --> 00:19:55,020
I don't know. I don't know what's going to be of use to you. That's. That's. I can't say.

147
00:19:55,100 --> 00:20:31,440
What I need to know is. What I really need to know is discovery. When you're going to produce all that. Do you think, Josh, it's worth asking for the juice to bring forward the trial date because at the end of the day, you're just going to keep doing the same things, same stupid old bifurcation. Let's bifurcate and let's put this new motion for whatever new motion. You're just going to keep abusing the. SO system, abusing the process till we get.

148
00:20:33,200 --> 00:20:52,240

Let me stop you there. You are not familiar with litigation. You have not done this before. What you think is an abuse of the system is not an abuse of the system. This is how every litigation proceeds. This is normal stuff that you take offense to. You don't believe me, but if you wanted to go out and hire a lawyer, they would tell you the same thing.

149

00:20:52,400 --> 00:20:54,550

Okay, so are you going to answer my question?

150

00:20:55,510 --> 00:20:59,910

Well, I didn't understand your question. What's your question? I thought I didn't understand so.

151

00:20:59,990 --> 00:21:24,240

Because you didn't listen, mate, that's why. So it's going to be like this. So it's going to keep doing this. You're just going to keep putting motion to dismiss on every other week, wasting its course time on my time. You're not going to write. Doesn't intend to. It's going to be obstructive to as much as it can, isn't it?

152

00:21:26,080 --> 00:21:37,200

I strongly disagree with that. We're not obstructing anything. This is how normal litigation works. You file a pleading that is defective and fails to state a claim, we will move to dismiss. That. That is very simple.

153

00:21:37,840 --> 00:21:48,250

But do you intend. If it's in the way it should be in. Will Royal give me that information, or is it going to keep trying to hide it?

154

00:21:49,210 --> 00:21:51,930

What? We're not hiding anything. I don't know what.

155

00:21:54,170 --> 00:22:01,050

So are you gonna submit? Are you gonna foil the discoveries I'm asking for?

156

00:22:02,650 --> 00:22:10,160

We've served our discovery responses. Whatever issues you have with them, we're gonna address at the informal discovery conference that the judge ordered.

157

00:22:11,430 --> 00:22:28,950

So you're not going to answer anything? Do you think that what we should do is just ask the judge to bring that trial forward into this year to stop the waste of all the time? Because at the end of the day, most of what's happening is just a waste of time.

158

00:22:31,430 --> 00:22:34,310

I don't agree. It's not a waste of time. This is how litigation works.

159

00:22:36,000 --> 00:22:38,160

This is how abusive litigation works.

160

00:22:38,400 --> 00:22:45,360

No, you're mistaken. You genuinely are mistaken. And it's offensive. I mean, you're accusing me of abuse. That's offensive. But you don't know any better.

161

00:22:52,400 --> 00:22:58,520

Well, you're obviously just going to skirt around everything and not fucking answer anything and not take responsibility for it.

162

00:22:58,520 --> 00:23:01,940

Okay? No, you're going to. You're going to use profanity. We're done. Goodbye. It.