# EXHIBIT C

## LOS ANGELES COPYRIGHT SOCIETY RECORDS

## Aaron J. Moss, Joshua Geller, and Riot Games

Records concerning Aaron J. Moss's 2019-2020 presidency of the Los Angeles Copyright Society and his 2020 analysis and moderation of professional discussion concerning Ninth Circuit treatment of substantial-similarity claims, including pleading-stage dismissal, discovery, and expert testimony.

The exhibit also includes the Society's 2025-2026 officer record identifying Joshua Geller of Mitchell Silberberg & Knupp as Treasurer and Dan Nabel of Riot Games as Immediate Past President, together with the Society's past-presidents record identifying Dan Nabel as President for 2024-2025.

Also included is the 28 July 2026 preservation report concerning an anonymous contact who referred to Joshua Geller, the Los Angeles Copyright Society, Mitchell Silberberg & Knupp, Riot Games, and the pending litigation. The report expressly records that the sender's identity and allegations were unverified.

The exhibit further includes an earlier anonymous Squarespace contact directing Appellant to Joshua Geller and seven identified cases, stating: "The pattern is easy to spot if you know what you are looking for." The communication is preserved as evidence of what was received and does not establish the truth of any allegation concerning those cases or their outcomes.

*Pay Dues* | *Help* | *CLE Forms*

LOS ANGELES COPYRIGHT SOCIETY

# PRESIDENTS OF

# THE LOS ANGELES COPYRIGHT SOCIETY

**2024-2025**



**DAN NABEL**

**2023-2024**



**VIVIAN S. LEE**

**2022-2023**



**ANDREW J. THOMAS**

**2021-2022**



**JOEL TANTALO**

**2020-2021**



**CATHERINE BRIDGE**

**2019 – 2020**



**AARON MOSS**

**2018 – 2019**



**JAMES GLADSTONE**

Case: 25-3163, 10/02/2026, DktEntry: 45.4, (3 of 36)

2017 – 2018



CATHY PAUL

2016 – 2017



GARY BOSTWICK

2015 – 2016



JAMES LICHTMAN
(1965 – 2017)

2014 – 2015



PAT DUNCAN

2013 – 2014



GAIL MIGDAL TITLE

2012 – 2013



DAVID ARONOFF

2011 – 2012



MICHAEL PERLSTEIN

2010 – 2011



LARRY STEINBERG

2009 – 2010



AIMEE WOLFSON

2008 – 2009



LOIS FISHMAN

2007 – 2008



MARK MEYERSON

2006 – 2007



REX S. HEINKE

2005 – 2006



LINCOLN D. BANDLOW

2004 – 2005



JANE SHAY WALD

2003 – 2004



JEFFREY MAUSNER

2002 – 2003



2001 – 2002



2000 – 2001



1999 – 2000



1998 – 1999



Case: 25-3163, 10/02/2026, DktEntry: 45.4, (4 of 36)

STACEY BYRNES | PAUL SUPNIK | AMANDA SEWARD | MARY O'HARE | ROBERT ROTSTEIN

1997 – 1998 | 1996 – 1997 | 1995 – 1996 | 1994 – 1995 | 1993 – 1994







RICHARD THOMPSON | JAY DOUGHERTY | STEPHEN KROFT | MAREN CHRISTENSEN | ANDREA GREFE

1992 – 1993 | 1991 – 1992 | 1990 – 1991 | 1989 – 1990 | 1988 – 1989







ROGER SHERMAN (1932 – 2000) | JOSHUA WATTLES | VINCENT CHIEFFO | DONALD ZACHARY | KEITH FLEER

1987 – 1988 | 1986 – 1987 | 1985 – 1986 | 1984 – 1985 | 1983 – 1984







LOU PETRICH | JOEL BEHR | EDITH TOLKIN (1923 – 2016) | LAWRENCE VAN DAM | PETER NOLAN

1982 – 1983 | 1981 – 1982 | 1980 – 1981 | 1979 – 1980 | 1978 – 1979



A. FREDRIC LEOPOLD
(1919 – 2008)



ROSELYN BRASSELL



JEFFREY NAGIN



HERMIONE BROWN
(1917 – 2004)



KENNETH KULZICK
(1927 – 2007)

1977 – 1978



HOWARD BARTON

1976 – 1977



KENNETH ZIFFREN

1975 – 1976



BRUCE RAMER

1974 – 1975



CHARLES SILVERBERG

1973 – 1974



SOL ROSENTHAL

1972 – 1973



DIXON DERN

1971 – 1972



ERIC WEISSMANN

1970 – 1971



AVERILL PASAROW
(1917 – 2004)

1969 – 1970



LEON KAPLAN
(1908 – 2003)

© 2020 Los Angeles Copyright Society | All Rights Reserved

PRIVACY POLICY

Pay Dues | Help | CLE Forms

LOS ANGELES COPYRIGHT SOCIETY

LOS ANGELES COPYRIGHT SOCIETY

The Society, whose roots trace back for 50 years, is a members-only organization of attorneys who practice in copyright, trademark, communications and related areas. LACS's members include outside lawyers, lawyers at motion picture studios, media companies and other corporations and entities dealing with intellectual property. Members and guests enjoy and learn through the society of others who have common interests and skills. The group meets monthly over dinner during the months of September through June to hear speakers present on varied topics of vital and current interest to practitioners in the fields listed. Frequently, the topic for an evening is one of the leading issues of the moment and, on many occasions, about a case just argued or currently pending in the Supreme Courts of the United States or California. The meetings occur in a setting designed to encourage professional and intellectual exchange about the topic as well as other areas of common intellectual and professional interest. Members and guests exchange views and debate differing positions. The meetings are frequently sold out.

Although membership requires showing an acceptable level of experience in the fields, an associate members' program opens the meetings to attorneys who do not meet the criteria (space allowing). The Society also exerts significant efforts in passing on its experience in these areas to a wider audience and, in particular, to encouraging students through several of its programs to explore this exciting and vital area of the law, meeting experienced professionals and potential mentors and learning in a relaxed and convivial environment.


## 2025-2026 OFFICERS & TRUSTEES

### Officers

President
**Ian Slotin**
*NBCUniversal*

President-Elect
**Jacqueline Charlesworth**
*Frankfurt Kurnit Klein & Selz*

Vice President
**Elaine Kim**
*Mitchell Silberberg & Knupp*

Treasurer
**Joshua Geller**
*Mitchell Silberberg & Knupp*

Secretary
**Jeffrey A. Payne**
*Jassy Vick Carolan*

### Trustees

**Samantha Kantor**
*Sony Pictures Entertainment*

**Jef Pearlman**
*Boston University School of Law*

**Andrew Sullivan**
*Jenner & Block*

**Xiyin Tang**
*UCLA School of Law*

**Joel Weiner**
*Katten Muchin Rosenman*

**Lauren Greene**
*Jenner & Block*

**Arwen Johnson**
*King & Spalding*

**Molly Lens**
*O'Melveny*

**Tina Salvato**
*Davis Wright Tremaine*

**Elizabeth Schilken**
*Ballard Spahr*

**Immediate Past President**

**Dan Nabel**
*Riot Games*

© 2020 Los Angeles Copyright Society | All Rights Reserved

PRIVACY POLICY

LOS ANGELES COPYRIGHT SOCIETY

Back

Add to my calendar

# SUBSTANTIAL CONFUSION: THE NINTH'S CIRCUIT'S APPROACH TO EARLY DISMISSAL OF LITERARY WORKS CASES

When **October 14, 2020**
7:00 PM - 8:30 PM (PDT)

Location Virtual [Zoom]

Registration

Guest – $20.00

Invited Judges and Judicial Law Clerks

Invited Student

Members & Associates

With beaches, movie theaters and amusement parks closed for business, the Ninth Circuit spent its summer vacation deciding four substantial similarity cases involving "The Shape of Water," "Pirates of the Caribbean," "Inside Out" and "Empire." In unpublished opinions, the Court affirmed early dismissals in two of the cases, but reversed in the other two, leaving copyright lawyers and district court judges trying to make sense of it all.
On October 14, the Los Angeles Copyright Society will host a panel of experts who will explore the Ninth Circuit's approach to substantial similarity, tackling such issues as when lawsuits can be dismissed prior to discovery, the role of expert witnesses, and the process district court judges may use to decide these cases going forward.

We'll be joined by ***Elaine Kim***, partner at Mitchell Silberberg who's represented defendants in many substantial similarity matters, as well as ***Peter Afrasiabi***, partner at One LLP who's handled these cases on the plaintiffs' side. Moderating the panel will be LACS immediate past president ***Aaron Moss***, who chairs the litigation department at Greenberg Glusker and has covered these cases for his blog ***Copyright Lately***.

***Elaine Kim***

***Peter Afrasiabi***



***Aaron Moss***

HOME • JOIN US

copyright lately

— COURT DECISIONS

# The Ninth Circuit's Quest to Bring Substantial Similarity Claims Back From the Dead

by **Aaron Moss** · July 27, 2020




Pirates of the Caribbean / The Shape of Water

## As the court reverses early studio

# are dueling experts and lengthy litigation the shape of things to come?

In 2010, plaintiffs'-side copyright lawyer Steven Lowe wrote an article called "The Death of Copyright," in which he proclaimed that "copyright infringement claims against motion picture studios and television networks, for all intents and purposes, are dead."

Lowe's support for this provocative assertion was pretty convincing. Within the Second and Ninth circuits, studios and networks had prevailed in all 48 of the "substantial similarity" cases that resulted in final judgments during the twenty years before the article was written. Almost all of these victories were on summary judgment.

The trend has continued, more or less unabated, over the past ten years, with courts ruling in favor of copyright defendants roughly 95% of the time. Indeed, during that stint, district courts have grown increasingly comfortable granting substantial similarity dismissals at the pleading stage, before any discovery is taken.

Interestingly, while the Ninth Circuit has affirmed district court dismissals in nearly a dozen copyright infringement cases over the past decade or so, none of these cases has been published. This leaves the circuit as one of the few that (as recognized by Judge Kim Wardlaw in a 2018 concurrence), "has never affirmed dismissal of a case alleging infringement of a literary work without discovery in a published opinion."

While it's common for any successful TV show or motion picture franchise to spawn a host of copyright infringement claims, many of these cases are pretty weak and deserve to be thrown out quickly. Jim Cameron and Fox were famously named in *over a dozen* copyright and idea theft cases filed by different plaintiffs, each of whom claimed to have created *Avatar*. All of these cases were tossed before trial.

None of this, however, has dissuaded plaintiffs' lawyers from continuing to file new lawsuits. And now, despite the impressive track record achieved by studios and networks, there are signs that several judges within the Ninth

In similarly unpublished opinions rendered within weeks of each other, two Ninth Circuit panels reversed district court dismissals in high-profile copyright cases. One involves Guillermo del Toro's Academy Award-winning film "The Shape of Water" (Zindel v. Fox Searchlight Pictures, Inc.). The other involves Disney's billion dollar "Pirates of the Caribbean" franchise (Arthur Lee Alfred II v. Walt Disney Co.).

In each instance, the panel ruled that the case should not have been dismissed so soon—at least not until expert witnesses could analyze the extent and importance of the similarities alleged by the plaintiff.

In July 2020, *The Shape of Water* director del Toro and Walt Disney's Searchlight Pictures filed a petition urging the full Ninth Circuit to review the panel's ruling in *Zindel*, arguing that the ruling will chill free speech by promoting "protracted, meritless lawsuits." Like most *en banc* petitions (especially those involving unpublished opinions), the court refused to reconsider its opinion, leaving the parties to continue their battle before the district court.

Disney is expected to file a similar petition in *Alfred* in order to try to clear up confusion between that case and previous decisions. For example, the "Pirates" panel faulted the lower court for disregarding "unprotected generic, pirate-movie tropes"—such as "treasure stories that take place on islands and in jewel filled caves"—even though the Ninth Circuit has previously approved of this "filtering" practice. In addition, the unpublished appellate decision in the "Pirates" case relied on a "selection and arrangement" theory that the larger circuit seems to have largely disavowed since deciding *Metcalf v. Bochco* in 2002.

In *Metcalf*, the Ninth Circuit held that even if the alleged similarities between a plaintiff's and defendant's work are too generic to be protectable when considered individually, the copying of the "original selection and arrangement" of these otherwise unprotectable elements may give rise to a viable infringement claim.

However, almost immediately after first applying the selection and arrangement test to literary works, the Ninth Circuit started to backtrack. The court's decisions in *Rice v. Fox Broadcasting* and *Funky Films v. Time Warner* suggested that *Metcalf*'s selection and arrangement

case. *Skidmore* also held that a "selection and arrangement copyright" is only infringed if the two works share the *same* particular combination of unprotectable elements. In other words, isolated or cherry-picked similarities won't suffice. In light of *Skidmore*, the *Alfred* panel's reliance on the selection and arrangement test is somewhat surprising.

The Ninth Circuit's resistance to early copyright dismissals has been foreshadowed for several years. In addition to the court's refusal to affirm a pleading-stage victory in *any* case that it has deemed fit to publish, several circuit judges have signaled their view that the "Death of Copyright" may have been premature. For example, in her 2018 concurrence in *Astor-White v. Strong*, a copyright infringement case concerning Fox's television series "Empire," Judge Wardlaw declared that "judges have no particular expertise in determining what is and is not generic" in cases involving literary works. She also opined that discovery, as well as the use of experts "would have greatly informed the decision as to substantial similarity." (And yes, *Astor-White* was also unpublished.)

Judge Wardlaw reiterated her earlier *Astor-White* concurrence in the *Zindel* "Shape of Water" opinion, in which she and her fellow panelists wrote that a pleading stage dismissal should be limited to situations in which the similarities between two works were "only in uncopyrightable material or are de minimis." The panel also suggested that expert testimony would assist in conducting the literary analysis needed to determine the extent and qualitative importance of the alleged similarities between the two works.

In the *Alfred* "Pirates of the Caribbean" opinion, the panel likewise held that "expert testimony would aid in determining whether the similarities Plaintiffs identify are qualitatively significant."

So where do these cases leave us? Will discovery and expert testimony become mandatory before courts will dispose of all but the most facially frivolous literary works cases? If so, these cases are about to get exponentially more expensive—which may be good for lawyers but not so good for anyone else.

The biggest problem, however, is the lack of any real guidance from the circuit that deals with more of these types of cases than any other federal

to know. Despite the fact that unpublished decisions aren't binding, stakeholders and lower courts regularly rely on them.

And besides, any news as important as the health status of copyright is surely worth putting on the record.

UPDATE —check out our new post on the Ninth Circuit's recent unpublished *affirmance* of a substantial similarity case involving the film "Inside Out," which adds some additional confusion and intrigue to an already confusing and intriguing landscape.

UPDATE TO THE UPDATE —the Ninth Circuit has upheld a dismissal in yet another unpublished case, this time in connection with a copyright infringement claim involving the Fox television series "Empire." Check out our new post for the scoop on the "Empire" ruling.

# You Might Also Like:



Public Domain Day 2026 Is Coming: Here's What to Know



Public Domain Day 2025 is Coming: Here's What to Know



Inside the Strange Copyright Fight Over America's Most...



Public Domain Day 2024 is Coming: Here's What to Know



What's Up With Copyright Lately?: Summer Breeze Edition




Two New Top Gun Rulings Map Copyright's Danger Zone

TAGS: Motion Pictures Ninth Circuit Selection and Arrangement Substantial Similarity

SHARE TWEET SHARE



## Aaron Moss

**LEAVE A REPLY**

Your email address will not be published. Required fields are marked *

Comment *

Name *

Email *

Website

☐ Save my name, email, and website in this browser for the next time I comment.

POST COMMENT

‹ — PREVIOUS ARTICLE

## Why Celebrities Who Don't Want to Live in California Might Still Want to Die There

# Is it Legal to Film Architectural Works in Public?

SUBSCRIBE TO MY NEWSLETTER

## Please subscribe for exclusive content and the latest copyright news!

Enter your name

Enter your email

SUBSCRIBE

☐ Check your spam folder if you don't see a confirmation email. By clicking here, you agree to our Privacy Policy

## Aaron Moss



FOLLOW ME

POPULAR POSTS

## Public Domain Day 2026 Is Coming: Here's What to Know



## Judge's First Take Favors Denims—But Will It Survive the Recut?



## After 6,000 Romantasy Pages, Judge Hands Crave Plaintiff the Bill



## The 5 Worst Copyright Decisions of 2025




## Mondrian Entered the Public Domain. The Estate Disagrees.



**FROM THE ARCHIVES**



## Judge Recommends Approving New Phanatic Mascot Despite Termination




## Copyright Termination and "Harmless Error"



## Vetter v. Resnik: Second Shot, Same Mistake

**CATEGORIES**

- COURT DECISIONS
- LAW LAW LAND
- LEGAL FILINGS

Case: 25-3163, 10/02/2026, DktEntry: 45.4, (18 of 36)

Q&A

WEIRD STUFF

WHAT'S THE DEAL?

**SEARCH**

Enter your search topic SEARCH

FEATURED IN

copyright lately
creative law for curious people

COPYRIGHT © 2026 AARON MOSS
ALL RIGHTS RESERVED

PRIVACY POLICY

copyright lately

C — COURT DECISIONS

# Inside Out: The Ninth Circuit's Head-Scratching Approach to Substantial Similarity

by **Aaron Moss** · August 9, 2020



Inside Out (Disney / Pixar)

## With yet another unpublished

# court continues to create more questions than answers.

If it seems like only a few weeks ago that the Ninth Circuit reversed district court dismissals in two substantial similarity cases, that's because it was. In July, I wrote about unpublished decisions involving "The Shape of Water" and "Pirates of the Caribbean," and how they could send a signal to district courts to put the brakes on pleading-stage dismissals of copyright cases involving literary works.

This past week, in a case involving the animated film "Inside Out," the court issued yet another unpublished opinion (*Masterson v. Disney*). This time, however, the panel *affirmed* the district court's ruling granting Disney's motion to dismiss.

## The Opinions Compared

Let's play a little game of compare and contrast (which, I should point out, is still one of the least popular games on the App Store):

### *Alfred*: "Pirates of the Caribbean"

In *Alfred*, the plaintiffs claimed that Disney's "Pirates of the Caribbean" film franchise infringed their screenplay for a movie based on Disneyland's Pirates of Caribbean ride. The district court compared the works, setting aside what the judge found to be generic pirate-movie cliches. The court held that the remaining "random similarities scattered throughout the parties' works" could not support a viable claim and dismissed the case.

The Ninth Circuit reversed. It found that it was too early in the litigation for the district judge to have determined whether the so-called "unprotected generic pirate-movie tropes" were indeed unprotectable. The appellate panel also held that the question of substantial similarity would be assisted by "additional evidence" and "expert testimony."

### *Zindel*: "The Shape of Water"

In *Zindel*, the plaintiff claimed that "The Shape of Water" distributor Fox Searchlight and director Guillermo del Toro infringed his father's short play "Let Me Hear You Whisper." The district court analyzed and compared the works, and found that "despite some superficial similarities and some shared basic plot points" the stories were different. The court dismissed the case.

The Ninth Circuit reversed. It held that "reasonable minds could differ" on whether the works were substantially similar, and that "additional evidence, including expert testimony," would help in determining the extent and qualitative importance of the similarities. The court also suggested that experts would be needed to determine whether the alleged similarities were made up of unprotectable literary tropes or *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject).

## *Masterson*: "Inside Out"

In *Masterson*, the plaintiff claimed that Disney's "Inside Out" infringed her copyrights in a poetry book and a movie script, both of which, like defendants' film, featured depictions of childhood emotions. The district court compared the works and filtered out unprotectable elements, including general themes and *scènes à faire*. The court found that the protectable elements were not substantially similar, whether alone or in combination, and dismissed the case.

This time, the Ninth Circuit *affirmed* the district court's pleading-stage dismissal. The court held that the district court did not err by considering substantial similarity on a motion to dismiss, even though the copyrights at issue were both in literary works. Nor would expert testimony be required; the lower court could instead rely on its "judicial experience and common sense." The panel also did not hesitate to identify and filter out unprotectable elements—such as ideas and concepts, public domain material and *scènes à faire*—before comparing the two works. Once the court excluded these unprotectable elements, it was left with only "random similarities scattered throughout the works," which would not support the plaintiff's "selection and arrangement" theory.

## Making Sense of the Opinions

So what accounts for the different outcomes on appeal between *Alfred* and *Zindel*, on one hand, and *Masterson* on the other? At first blush, it's tempting to point to the fact that different circuit court judges decided the three cases. Interestingly, however, Judge Kenneth Lee was a member of both the *Masterson* and *Zindel* panels.

One could also argue that the similarities alleged in *Masterson* were more commonplace or generic than those in *Alfred* or *Zindel*. However, the fact is that in *Masterson* the court first filtered out these unprotectable elements before conducting a comparison. Conversely, in *Zindel*, the court suggested that "additional evidence" would be needed before any unprotectable elements could be even be *identified*, let alone compared. The *Alfred* panel echoed this sentiment, noting that, at the pleading stage it was "difficult to know" whether similarities such as "treasure stories that take place on islands," "skeleton crews," and the "redemption of a young, rogue pirate" constituted unprotectable material. *Alfred* held that expert testimony "would be particularly useful" in determining the extent to which these similarities were in fact "pirate-movie tropes."

The truth is that, whatever rationale could be offered to reconcile these opinions will not provide much clarification going forward, whether for the parties, counsel or the district court judges deciding these cases.

And, as I've previously noted, the fact that all of these decisions are unpublished makes it even more difficult to rely on them for guidance. While unpublished memorandum dispositions are not supposed to be precedential, that didn't stop the *Masterson* panel from citing no less than *ten* of these dispositions for the proposition that the Ninth Circuit has "repeatedly" affirmed pleading-stage dismissals of cases involving literary works.

So, when are motions to dismiss warranted in literary works cases alleging substantial similarity? When are discovery and expert witness testimony necessary? Unfortunately, until definitive guidance from the Ninth Circuit arrives, copyright lawyers will need to provide the response no client likes to hear: It depends.

UPDATE —the Ninth Circuit has upheld a dismissal in another unpublished case, this time in connection with a copyright infringement claim involving

# You Might Also Like:



Public Domain Day 2026 Is Coming: Here's What to Know




Fifth Circuit Rejects the Server Test, Then Reinvents It



Public Domain Day 2025 is Coming: Here's What to Know



What's Up With Copyright Lately?: Summer Breeze Edition



What's Up With Copyright Lately?: Spring Cleaning Edition



Inside the Strange Copyright Fight Over America's Most...

TAGS: Motion Pictures Ninth Circuit Substantial Similarity

SHARE TWEET SHARE



## Aaron Moss

---

#### LEAVE A REPLY

Your email address will not be published. Required fields are marked *

Comment *

Case: 25-3163, 10/02/2026, DktEntry: 45.4, (24 of 36)

Name *

Email *

Website

Save my name, email, and website in this browser for the next time I comment.

POST COMMENT

‹ — PREVIOUS ARTICLE

## Is it Legal to Film Architectural Works in Public?

NEXT ARTICLE — ›

## Making Sense of Neil Young's Lawsuit Against the Trump Campaign

**SUBSCRIBE TO MY NEWSLETTER**

**Please subscribe for exclusive content and the latest copyright news!**

Enter your name

Enter your email

SUBSCRIBE

☐ Check your spam folder if you don't see a confirmation email. By clicking here, you agree to our Privacy Policy


## Aaron Moss




**FOLLOW ME**

**POPULAR POSTS**

### Public Domain Day 2026 Is Coming: Here's What to Know



### Judge's First Take Favors Denims—But Will It Survive the Recut?



### After 6,000 Romantasy Pages, Judge Hands Crave Plaintiff the Bill



### The 5 Worst Copyright Decisions of 2025



Case: 25-3163, 10/02/2026, DktEntry: 45.4, (26 of 36)

## Mondrian Entered the Public Domain. The Estate Disagrees.



**FROM THE ARCHIVES**



## Court to Revisit Fair Use in Tattoo Infringement Case




## What's Up With Copyright Lately?: Spring Cleaning Edition




## Paramount Flies Clear of Copyright Turbulence in “Top Gun” Lawsuit

#### CATEGORIES

- COURT DECISIONS
- LAW LAW LAND
- LEGAL FILINGS
- LEGISLATION
- LISTS
- Q&A
- WEIRD STUFF
- WHAT'S THE DEAL?

#### SEARCH

Enter your search topic SEARCH

## FEATURED IN

CNN
Los Angeles Times
billboard
Smithsonian MAGAZINE
PUCK
theguardian
THE Hollywood REPORTER

copyright lately
creative law for curious people

COPYRIGHT © 2026 AARON MOSS
ALL RIGHTS RESERVED

PRIVACY POLICY

**Report of Anonymous Contact Concerning Riot Games, Joshua Geller, and Alleged Arcane Development Material**

**Prepared by:** Marc Wolstenholme
**Date of report:** 28 July 2026
**Purpose:** To preserve a contemporaneous record of anonymous communications received through the M.W. Wolf's Megaverse website and a subsequent temporary Chatzy conversation.

**1. Initial anonymous contact**

On 27 July 2026, I received two Squarespace form submissions through the contact form hosted on the M.W. Wolf's Megaverse website.

The sender entered the email address:

**geller@family.com**

The identity of the sender remains unknown and unverified. The use of the name "Geller" does not establish any connection to attorney Joshua Geller, his relatives, Riot Games, or any other person or organisation.

**2. Raw email and form-submission data**

**First Squarespace submission**

**Email subject:** Form Submission - Welcome To The Wolf Pack
**Classification shown in Gmail:** External / Hate Mail
**Sender shown:** Squarespace
**Date and time:** Monday 27 July 2026, 13:27
**Recipient:** Marc Wolstenholme
**Form email entered:** geller@family.com
**Marketing consent:** false

**Raw message:**

Dude. We need to talk. Urgently. I will try to contact you around 6:00 to 6:30 pm UTC. If you can not answer I will try again tomorrow at the same time.

**Second Squarespace submission**

**Email subject:** Form Submission - Welcome To The Wolf Pack
**Classification shown in Gmail:** External / Hate Mail
**Sender shown:** Squarespace

**Date and time:** Monday 27 July 2026, 17:42
**Recipient:** Marc Wolstenholme
**Form email entered:** geller@family.com
**Marketing consent:** false

**Raw message:**

fuck I don't think I'll be able to make it today, I need a to confirm something first. I'll try to reach out tomorrow at 6:00 PM UTC

**3. My written responses**

At 18:07 on 27 July 2026, I sent the following email to the address entered by the sender:

how are you contacting me?

At 20:55 on 27 July 2026, I sent a second email:

Hello,

You said you needed to speak with me urgently. What do you need to discuss?

Please explain the subject in writing and identify who you are before contacting me through any other method.

Regards,
Marc Wolstenholme

No delivery-failure notice or immediate bounce-back was received. The absence of a bounce-back does not verify the sender's identity or prove the mailbox belongs to any person connected with Joshua Geller.

**4. Chatzy invitation**

On 28 July 2026, I received a further Squarespace form submission.

**Email subject:** Form Submission - Welcome To The Wolf Pack
**Classification shown in Gmail:** External / Inbox
**Sender shown:** Squarespace
**Time:** 19:20
**Recipient:** Marc Wolstenholme
**Form email entered:** invite@fuckgeller.com
**Marketing consent:** false

**Raw message:**

Chatzy.com/92908808410749

The entered address differed from the earlier address. The invitation directed me to a Chatzy room associated with the following URL:

https://us22.chatzy.com/92908808410749

**5. Chatzy conversation**

The anonymous participant used the name:

**FuckGeller**

I entered the room using the name:

**m.w. wolf**

The participant opened the conversation by expressing concern for my safety and asking whether a person called "Daniel Reyes" had contacted me with either:

- a 150-page PDF containing concept art and 3D models; or
- a 36-minute unrendered version of Arcane episode 4 with art-direction commentary.

The participant later described the PDF as approximately 146 pages long.

The participant alleged:

- "Daniel Reyes" worked as a member of Riot Games' cleaning staff;
- he allegedly entered a restricted office or archive;
- he allegedly accessed an unlocked computer;
- he downloaded a PDF and video onto removable storage;
- Riot allegedly detected the download;
- Riot allegedly disabled his computer, dismissed him, caused police to attend his home, confiscated devices, issued legal threats, and later returned wiped equipment;
- the alleged PDF contained Arcane concept art and creative-direction commentary;

- the alleged video contained an unrendered episode with producer comments;
- the participant believed Reyes may have attempted to contact me;
- Riot may have monitored my computer if I had received any material.

The participant supplied no document, case number, arrest record, police record, employment record, device record, phone record, verifiable identity, or other independent evidence supporting these allegations.

**6. Allegations involving Joshua Geller and others**

The participant claimed to work "near" Joshua Geller or within the same professional environment. The participant also referred to:

- Joshua Geller;
- Hannah Shepherd;
- Molly Dwyer;
- the Los Angeles Copyright Society;
- Silberberg & Knupp;
- unnamed lawyers and assistants;
- alleged professional and family contacts in Argentina and Europe.

The participant alleged these persons had relationships which could influence my litigation and claimed my appeal would be dismissed. The participant also repeated earlier allegations involving purported communications between Joshua Geller and Molly Dwyer.

No evidence was provided to verify any alleged telephone call, private communication, family relationship, judicial influence, professional favour, or court corruption.

**7. References to earlier anonymous communications**

The mention of a **146-page PDF** is notable because it resembles earlier anonymous messages I received offering what was described as early Arcane concept art, creative-direction notes, producer notes, handwriting, and fragments of earlier scripts.

The earlier sender also used anonymous contact methods and encrypted or temporary file-sharing services.

This similarity may indicate:

- the same person returned under a different identity;
- different persons were repeating the same story;
- the later sender had knowledge of earlier communications;
- or the story was being repeated to increase credibility.

No conclusion can presently be drawn.

**8. Conduct and tone of the anonymous participant**

The participant repeatedly used urgent, alarming, and fear-based language. The participant warned of:

- monitoring;
- spyware;
- court corruption;
- police action;
- professional retaliation;
- computer interference;
- and possible danger to anonymous sources.

The participant also offered to locate "Daniel Reyes'" home address or telephone number.

I should not request, receive, publish, or act upon any private residential address. Any future communication should be limited to lawful, independently verifiable information.

**9. Evidential assessment**

At present, the communication proves only the following:

1. Anonymous form submissions were sent through my website.
2. The sender or senders used the addresses geller@family.com and invite@fuckgeller.com.

3. A Chatzy invitation was sent.
4. An anonymous individual entered a Chatzy room under the name "FuckGeller."
5. The individual made extensive allegations concerning Riot Games, Joshua Geller, alleged Arcane materials, and my pending litigation.
6. The individual supplied no independently verifiable proof.

The communication does not presently prove:

- the identity of the sender;
- employment near Riot Games or Silberberg & Knupp;
- the existence of Daniel Reyes;
- the existence or authenticity of the alleged PDF or video;
- any police raid;
- any court interference;
- any contact between Joshua Geller and Molly Dwyer;
- any relationship between the sender and Riot Games;
- or any connection between the sender and earlier anonymous whistleblower communications.

**10. Preservation steps**

The following material should be preserved:

- the original Squarespace notification emails;
- full email headers;
- sent replies;
- the Chatzy invitation;
- the complete Chatzy transcript;
- screenshots showing dates, times, sender addresses, and the room URL;
- browser history associated with the Chatzy room;
- any later messages from the same addresses;

- any attachments, files, or links;
- and a contemporaneous note recording when each communication was received and viewed.

**11. Conclusion**

The communications appear designed to present the sender as an insider with access to information involving Riot Games, its legal representatives, alleged internal materials, and my litigation. Several claims repeat themes found in earlier anonymous contacts, particularly the alleged 146-page Arcane document.

The identity, motives, access, and reliability of the sender remain unknown. The allegations should be recorded and preserved but treated as unverified unless supported by lawful, independently authenticated evidence.

**Statement of accuracy**

I have prepared this report from the emails, form submissions, Chatzy transcript, and records available to me. It records what was communicated and does not adopt the anonymous sender's allegations as established fact.

**Signed:**
Marc Wolstenholme
M.W. Wolf

Gmail

Blumhouse

Mail
Chat
Meet

Compose

Inbox 7
Starred
Snoozed
Sent
Drafts 38
Categories
Purchases 1
More

Labels

Book Submissions & Stuff
CBG Court claims
Hate Mail 122
M.W. Wolf Company & a...
RECO
Reporting Abuse
Riot Games
Tips

# Form Submission - Welcome To The Wolf Pack

External Hate Mail ×

**Squarespace** <form-submission@squarespace.info>
to me

Sent via form submission from *M.W. Wolf's Megaverse*

**Email:** friens@helpeachother.com, accepts marketing: false

**Message:** You are looking in the wrong places. You want to know where is the actual thread that connects it all? It's no

It's Joshua Geller. Look into the following cases:

Devan Featherstone v. Warner Bros. Discovery, Inc. (2:25-cv-04314)

Hunter v. Netflix, Inc. (6:25-cv-00360)

Goldner v. Norris (1:23-cv-04078)

Deroux v. Johnson (1:25-cv-01566)

RG Media Properties, LLC v. Blumhouse Productions, LLC (2:25-cv-08926

Nexon Korea Corporation v. Ironmace Co. Ltd. (23-35600)

Royal Palm Filmworks, Inc. v. Fifty-Six Hope Road Music, Ltd. (2:17-cv-02336)

The pattern is easy to spot if you know what you are looking for. And I think you do ;)

Manage Submissions

Does this submission look like spam? Report it here.

Reply | Forward | Share in chat